*Adnan Syed v. Young Lee, as Victim's Representative*, *et al.*, No. 7, September Term, 2023. Opinion by Biran, J.

**APPELLATE JURISDICTION – MOOTNESS – ENTRY OF NOLLE PROSEQUI AFTER VACATUR OF CONVICTION –** The Supreme Court of Maryland held that the entry of a nolle prosequi ("nol pros") by the State's Attorney did not moot the appeal by a crime victim's representative of an order vacating a defendant's convictions under Maryland Code, Criminal Procedure ("CP") § 8-301.1 (2018 Repl. Vol., 2023 Supp.) (the "Vacatur Statute"). The lawful vacatur of the defendant's convictions was a condition precedent to the State's Attorney regaining the authority it had prior to entry of final judgment to nol pros the charges. A prosecutor may not use the nol pros power to divest a victim of the right to appeal what the victim contends is an unlawful vacatur order.

**VICTIMS' RIGHTS – MOTION TO VACATE – VICTIM'S RIGHT TO BE HEARD –** The Supreme Court held that a victim has the right to be heard at a vacatur hearing. Although the Vacatur Statute itself does not reference a right to be heard at a vacatur hearing, a more general victim's rights statute, CP § 11-403, provides a right for a victim to be heard at a hearing where the "alteration of a sentence" is considered, which includes a vacatur hearing. In addition, Article 47 of the Maryland Declaration of Rights mandates that the General Assembly implement a victim's right to be heard at a criminal justice proceeding where it is practicable to do so. The General Assembly may not create a new criminal justice proceeding without affording victims the rights to notice, attendance, and to be heard at such new proceeding unless the General Assembly makes clear on the face of the legislation or in unambiguous legislative history that it finds it would not be practicable to provide one or more of those rights to victims with respect to the new criminal justice proceeding. If, as is the case with CP § 8-301.1, there has not been a legislative finding of impracticability, a reviewing court must consider whether the new criminal justice proceeding is similar to one or more extant criminal justice proceedings where the General Assembly has previously granted victims the right(s) that is missing with respect to the new criminal justice proceeding. The Court held that a hearing where the "alteration of a sentence" is considered is similar enough to a vacatur hearing to require the provision of a right to be heard at the latter proceeding. The Court also held that a victim has the right to be heard on the merits of a vacatur motion after hearing the parties' presentations in support of the motion, including the right to speak through counsel if the victim is represented by counsel. However, a victim does not have the right to participate as a party at a vacatur hearing.

**VICTIMS' RIGHTS – MOTION TO VACATE – VICTIM'S RIGHT TO ATTEND A VACATUR HEARING –** The Supreme Court held that a victim has the right to attend a vacatur hearing in person. A court must ensure that a victim receives a reasonable opportunity to attend a vacatur hearing in person.

**VICTIMS' RIGHTS – MOTION TO VACATE – VICTIM'S RIGHT TO NOTICE OF A VACATUR HEARING –** The Supreme Court held that a victim has the right to reasonable notice of a vacatur hearing. Reasonable notice is notice that is sufficient to permit the victim to attend the hearing in person.

**VICTIMS' RIGHTS – NECESSARY SHOWING OF PREJUDICE –** The Supreme Court held that, in order for a victim to be entitled to a remedy, the victim must show that an error prevented the victim from exercising their rights in a meaningful manner.

IN THE SUPREME COURT

OF MARYLAND

No. 7

September Term, 2023

ADNAN SYED

v.

YOUNG LEE,
AS VICTIM'S REPRESENTATIVE, ET AL.

Watts
*Hotten
Booth
Biran
Gould
Eaves
Battaglia, Lynne A.
    (Senior Justice, Specially Assigned),

JJ.

Opinion by Biran, J.
Hotten, Booth, and Battaglia, JJ., dissent.

Filed: August 30, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After her retirement, she was recalled pursuant to Maryland Constitution, Article IV, § 3A, she also participated in the decision.

Pursuant to the Maryland Uniform Electronic Legal Materials Act (§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Gregory Hilton, Clerk

The Maryland Constitution requires that crime victims and their representatives be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process. It also grants victims and their representatives specific rights, including in some instances the rights to be notified of, to attend, and to be heard at criminal justice proceedings. The General Assembly has enacted a number of statutes that implement these constitutional requirements. In this case, we consider the scope of a crime victim's rights at a hearing on a motion to vacate a conviction.

In September 2022, the State's Attorney for Baltimore City moved to vacate Adnan Syed's 2000 conviction for the murder of Hae Min Lee under a recently enacted statute that allows a court to vacate a conviction if certain conditions are met. *See* Md. Code, Crim. Proc. ("CP") § 8-301.1 (2018 Repl. Vol., 2023 Supp.). The prosecutor gave the crime victim's representative, Young Lee (Ms. Lee's brother), less than one business day's notice of an in-person hearing on the motion to vacate. As the prosecutor and the presiding judge were aware, Mr. Lee lives in California. The court denied Mr. Lee's request for a one-week postponement of the hearing, which would have allowed Mr. Lee to attend the hearing in person in Baltimore.

The requested postponement having been denied, Mr. Lee observed the hearing remotely. Mr. Syed appeared in person. The court allowed Mr. Lee to make a statement at the beginning of the hearing, prior to the presentations by the prosecutor and defense counsel. After Mr. Lee completed his remarks, the court denied Mr. Lee's attorney's request to be heard briefly.

At the conclusion of the hearing, the court granted the motion to vacate and ordered the State's Attorney within 30 days either to schedule a new trial for Mr. Syed or to enter a nolle prosequi ("nol pros") of the charges. Mr. Lee subsequently noted an appeal of the order vacating Mr. Syed's convictions and moved for a stay of the circuit court proceedings. Shortly before Mr. Syed's response to Mr. Lee's motion to stay was due to be filed, the State's Attorney entered a nol pros of the charges against Mr. Syed.

A divided panel of the Appellate Court of Maryland vacated the circuit court's order and remanded for a new hearing. The Majority first held that the entry of the nol pros did not moot Mr. Lee's appeal. On the merits, the Majority concluded that Mr. Lee had a right to reasonable notice of the vacatur hearing as well as a right to attend the hearing in person, and that Mr. Lee had been denied both of these rights. However, the Appellate Court held that crime victims and their representatives do not have a right to be heard at a hearing on a motion to vacate a conviction. We subsequently granted Mr. Syed's petition for writ of certiorari and Mr. Lee's cross-petition.

As discussed below, we agree with the Appellate Court that the entry of the nol pros did not moot Mr. Lee's appeal. We also agree that Mr. Lee had the right to attend the hearing on the motion to vacate in person, and that he did not receive sufficient notice of the hearing to reasonably permit him to do so. We further conclude that a crime victim (or victim's representative) has the right to be heard at a hearing on a motion to vacate, including on the merits of the motion, through counsel (if counsel has been retained).

Because Mr. Lee's rights as the crime victim's representative were violated and Mr. Lee has made a sufficient showing of prejudice, this case will be remanded to the Circuit

2

Court for Baltimore City for further proceedings. On remand, the parties and Mr. Lee will begin where they were immediately after the State's Attorney filed the motion to vacate.

# I

## Background

### A. Crime Victims' Rights

The victim's role in the criminal justice system has changed over the course of history. In contrast to the criminal justice system as it exists in the United States today, criminal justice systems in ancient times were marked by a lack of State involvement. *See Grey v. Allstate Ins. Co.*, 363 Md. 445, 451 (2001) (citing STEPHEN SCHAFER, THE VICTIM AND HIS CRIMINAL 8 (1968)). In earlier periods, when a victim was harmed, the offender or offender's family would make personal reparations to the victim. *Id*. Both the Code of Hammurabi and the Book of Exodus contained provisions for restitution from offenders to victims, while the Twelve Tables, an early codification of Roman law, provided that an offender "could avoid retribution to himself or his family by providing compensation to the victim or the victim's family." *Id.* at 452. This restitution was viewed "more as recompense for the damage or injury inflicted on the victim than as a punishment for an offense against the State or the Sovereign." *Id.* at 453. In England in the early Middle Ages, it was common for a victim to organize a "crime patrol" to track down the offender, physically punish him, and demand that he pay restitution. *See* Juan Cardenas, *The Crime Victim in the Prosecutorial Process*, 9 Harv. J.L. & Pub. Pol'y 357, 359 (1986).

In colonial America, following English practice, private prosecutions were common. *See* William F. McDonald, *Towards a Bicentennial Revolution in Criminal*

3

*Justice: The Return of the Victim*, 13 Am. Crim. L. Rev. 649, 651 (1976). Under a private prosecution system, law enforcement was conducted by individual victims. Victims were responsible for arresting their offenders and bore the burdens of investigation and prosecution. *See id.* at 651-52. Upon a successful prosecution, the victim was entitled to damages or, if the offender was indigent, the victim was often authorized to sell the offender into service. *Id.* at 653.

Public prosecution became the predominant method of criminal law enforcement in America after the Revolution. *Id.* at 661. This change was prompted by several factors, including the popularity of Enlightenment notions of crime as a societal concern and the increasing urbanization of American life, which made private prosecution impracticable. *See id.* at 653-654; Cardenas, *supra*, at 369; Peggy M. Tobolowsky, *Victim Participation in the Criminal Justice Process: Fifteen Years After the President's Task Force on Victims of Crime*, 25 New Eng. J. Crim. & Civ. Confinement 21, 26 (1999). Under the public prosecution system, crime is "conceived of entirely in terms of an offense against society[,]" and the criminal case "belongs solely to the state and public officials." McDonald, *supra*, at 650; *see also* 4 WILLIAM BLACKSTONE, COMMENTARIES 5 (1769) ("[P]ublic wrongs, or crimes and misdeme[a]nors, are a breach and violation of the public rights and duties, due to the whole community, considered as a community, in [its] social aggregate capacity."). In our country's shift from private to public prosecution, the justice system likewise shifted its focus from the interests of individual victims to the interests of the larger society. Tobolowsky, *supra*, at 26.

However, beginning in the 1960s, the pendulum began to swing back toward recognizing the interests of victims, with California becoming the first state to enact a statute providing compensation to victims of violent crime in 1965. Frank Carrington & George Nicholson, *The Victims' Movement: An Idea Whose Time Has Come*, 11 Pepp. L. Rev. (Symposium Issue) 1, 2 (1984). Throughout the 1970s, grassroots movements promoted the victim's role in the criminal justice system, and the victims' rights movement began to receive national attention in the 1980s. *See* Tobolowsky, *supra,* at 21-22. In 1982, the President's Task Force on Victims of Crime was established, and two pieces of national victims' rights legislation were enacted soon thereafter: the Omnibus Victim and Witness Protection Act in 1982 and the Victims of Crime Act in 1984. Carrington & Nicholson, *supra*, at 7-8; Paul G. Cassell, *Treating Crime Victims Fairly: Integrating Victims into the Federal Rules of Criminal Procedure*, 2007 Utah L. Rev. 861, 866 (2007). Federal action on the issue of victims' rights continued with the Victims' Rights and Restitution Act, passed in 1990, and the Crime Victims' Rights Act, passed in 2004. Cassell, *supra*, at 863-64, 866. This federal legislation, among other things, provided for victim impact statements to be read at sentencing, provided a statutory right for victims to be notified of and to attend court proceedings, and conferred standing on victims to assert their rights. *Id.* at 866-67, 869-70.

At the same time, states were also taking action to recognize victims' rights. By 1984, 39 states, the District of Columbia, and the U.S. Virgin Islands had approved legislation for victim compensation. Carrington & Nicholson, *supra*, at 2. By 2007, approximately 30 states had added victims' rights amendments to their constitutions.

Cassell, *supra*, at 866. Maryland was no exception to these trends, as the General Assembly began enacting victims' rights legislation in the 1980s, and Maryland voters approved a victims' rights amendment to the Maryland Constitution in 1994.

At first, the rights the General Assembly granted to crime victims were somewhat limited. For example, in 1982, the General Assembly passed legislation that required presentence investigations to include a victim impact statement when a defendant committed certain crimes that injured the victim. 1982 Md. Laws 3109-10 (ch. 494); *see also* 1983 Md. Laws 1049 (ch. 297) (requiring consideration of presentence investigation reports containing victim impact statements in cases where the death penalty is requested). In 1986, the General Assembly broadened the ways in which a victim could be heard by permitting victims to address the sentencing court or jury, or have a victim impact statement read by the judge or jury, before the imposition of the sentence or at any hearing to consider altering the sentence, upon request of the State's Attorney and in the discretion of the sentencing judge. *See* 1986 Md. Laws 669 (ch. 125), *then codified at* Md. Code, art. 27, § 761(12) (1957, 1987 Repl.). In the same legislation, the General Assembly also established that a victim should "[b]e notified in advance of dates and times of trial court proceedings," "be notified if the court proceedings to which they have been summoned will not proceed as scheduled[,]" and, upon written request, be notified of post-sentencing proceedings. *Id.* at 667-68.

In the same time period, the General Assembly also enacted statutes concerning victims' attendance at criminal proceedings and subsequently broadened those provisions. A 1985 statute provided that the victim of a crime of violence did not have to be sequestered

after testifying, but allowed judges to remove victims from trial "for cause." 1985 Md. Laws 2761-62 (ch. 563). In 1989, the General Assembly amended this provision and established that a victim was "presumed to have the right to be present at the trial" and could be sequestered from any part of the trial "only after a finding of good cause." 1989 Md. Laws 3101 (ch. 486).

In 1994, the General Assembly passed, and Maryland voters overwhelmingly approved, Article 47 of the Maryland Declaration of Rights. 1994 Md. Laws 1195-96 (ch. 102); *see* General Election Returns, Nov. 8, 1994, Constitutional Amendments, Question 1 (reporting 1,072,914 votes in favor of the victims' rights amendment, compared with 87,861 votes against the measure, *i.e.*, 92.4 percent voted in favor of the amendment), available at https://perma.cc/56YT-HJP4. We have previously described this constitutional amendment as having "establishe[d] a crime victims' bill of rights[.]" *Cianos v. State*, 338 Md. 406, 413 (1995). Article 47 first mandates that crime victims "shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process." Md. Decl. of Rts. art. 47(a). It then provides victims the right, "upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms 'crime', 'criminal justice proceeding', and 'victim' are specified by law." Md. Decl. of Rts. art. 47(b). Shortly after Article 47 was ratified by Maryland's voters, this Court summed up the reasons for the various victims' rights provisions that had been enacted up to that point: "It is clear that over the past several decades the Legislature has had growing concerns that victims of

7

crime are often neglected by the criminal justice system in the processing of criminal cases." *Cianos*, 338 Md. at 412.

In the Victims' Rights Act of 1997 (the "VRA"), the General Assembly made significant changes to Maryland's victims' rights laws. *See* 1997 Md. Laws 2262-2313 (ch. 312). The purpose of the VRA was to "expand[] the scope of current provisions relating to victims of crimes." Dep't of Fiscal Servs., Fiscal Note, Senate Bill 173, at 1 (1997 Sess.). For example, prior to the VRA, only a victim of a crime of violence or a crime that resulted in serious injury and who had testified as a witness (or the representative of a victim, if the victim was deceased or disabled by a crime of violence or a crime resulting in serious injury) was presumed to have the right to attend the alleged perpetrator's trial. *See* 1989 Md. Laws 3100-01 (ch. 486); 1996 Md. Laws 3324 (ch. 585). The VRA expanded this right, defining a "victim" as "any person against whom a crime or delinquent act has been committed or attempted[,]" and establishing that any victim who has filed a notification request form "shall have the right to attend, if practicable, any proceeding in which the defendant has the right to appear." 1997 Md. Laws 2267, 2304 (ch. 312).

The VRA also implemented Article 47's right to be heard, providing in pertinent part: "In the sentencing or disposition hearing of a criminal or juvenile case, the court … shall, if practicable, permit the victim or victim's representative under oath or affirmation to address the judge before the imposition of sentence or other disposition … if the victim has filed a notification request form[.]" 1997 Md. Laws 2275 (ch. 312), *then codified at* Md. Code, art. 27, § 780(b)(1)(ii) (1957, 1996 Repl., 1997 Supp.). This provision defined a "sentencing or disposition hearing" as "a hearing at which the imposition of a sentence,

8

disposition in a juvenile delinquency proceeding, or alteration of a sentence or disposition in a juvenile delinquency proceeding is considered." *Id.*, *then codified at* Md. Code, art. 27, § 780(a)(2). Previous legislation had made the ability of a victim to address the sentencing judge or jury before the imposition of a sentence subject to "the request of the State's Attorney and in the discretion of the sentencing judge" and was applicable only to cases "resulting in serious physical injury or death[.]" 1996 Md. Laws 3330 (ch. 585), *then codified at* Md. Code, art. 27, § 780 (1957, 1996 Repl.); *see also* Judiciary Comm., Bill Analysis, Senate Bill 173, at 3 (1997 Sess.) (noting that, "[u]nder current law, victims and their representatives may address the sentencing judge or jury in cases resulting in serious physical injury or death").

Title 11 of the Criminal Procedure Article now contains a number of broadly applicable victims' rights provisions. CP § 11-403 provides essentially the same right to be heard at sentence-related hearings that was first enacted as part of the VRA: "[T]he court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition[.]" *Id.* § 11-403(b). This right applies at hearings "at which the imposition of a sentence ... or alteration of a sentence ... is considered." *Id.* § 11-403(a).

CP § 11-102 and § 11-302 concern the right to attend proceedings. Under CP § 11-102, "[i]f practicable, a victim or victim's representative who has filed a notification request form under § 11-104 of this subtitle has the right to attend any proceeding in which the right to appear has been granted to a defendant." *Id.* § 11-102(a). Under CP § 11-302, victims and their representatives have the right to attend the trial of the defendant, may

9

continue attending after initially testifying at trial, and can be sequestered only after a finding that there is reason to believe they may testify at a later point in the trial and that their presence would influence their future testimony in a way that would materially affect the defendant's right to a fair trial. *See id.* § 11-302(c), (d). The court also may remove a victim or victim's representative from the trial for the same causes and in the same manner as the law provides for the exclusion or removal of the defendant. *Id.* § 11-302(e).

CP § 11-104 and § 11-503 concern the right to be notified of proceedings. "Unless provided by the MDEC system,[1] the prosecuting attorney shall send a victim or victim's representative prior notice of each court proceeding in the case[.]" *Id.* § 11-104(f).[2] A victim or victim's representative also has the right to notice of a "subsequent proceeding," including "a hearing on a request to have a sentence modified or vacated under the Maryland Rules" or "any other postsentencing court proceeding." *Id.* § 11-503(a)(2) & (a)(7).[3]

---

[1] MDEC is the electronic case management processing and record-keeping system used in the State of Maryland's court system. *Attorney Grievance Comm'n v. Weinberg*, 485 Md. 504, 540 n.22 (2023).

[2] A victim must have filed a notification request form or followed the MDEC system protocol to be entitled to notice of court proceedings. *See* CP § 11-104(e)(3). However, whether or not a victim has filed a notification form or followed the MDEC system protocol, the prosecutor may give the victim information about the status of the case if the victim asks for such information. *Id.* § 11-104(f)(4). Victim notification request forms are not at issue in this case.

[3] As Ms. Lee's brother, Mr. Lee is acting as the crime victim's representative in this case. *See* CP § 11-104(a)(5); *id.* § 11-401. Maryland law generally provides the same rights to a crime victim's representative as it does to a victim. *See, e.g., id.* § 11-102(a) (giving right to attend proceeding to a victim or victim's representative); *id.* § 11-403(b) (giving right to address the court to a victim or victim's representative); *id.* § 11-104(f) (victim or

## B. The Vacatur Statute and Implementing Rule

In 2019, the General Assembly enacted CP § 8-301.1 (the "Vacatur Statute"). 2019 Md. Laws 4084 (ch. 702). The legislative history of the Vacatur Statute indicates that its enactment was a response to two recent developments: the decriminalization of marijuana, *see* House Bill 874, Bill Summary at 2-3 (2019 Sess.), and revelations concerning misconduct of the Baltimore Police Department's Gun Trace Task Force. *See* House Bill 874, Floor Rep. at 4-5 (2019 Sess.). These developments led the General Assembly to create a post-conviction remedy that a prosecutor may invoke to vacate convictions, as an alternative to requiring convicted defendants to seek relief through other procedures. *See id.* at 2-3.

The Vacatur Statute allows a court with jurisdiction, upon the State's motion at any time after the entry of a judgment of conviction in a criminal case, to vacate the conviction if two conditions are met. *First*, "there is newly discovered evidence that ... could not have been discovered by due diligence in time to move for a new trial under Maryland Rule 4-331(c)" and the newly discovered evidence "creates a substantial or significant probability that the result would have been different"; *or* "the State's Attorney received new information after the entry of a … judgment of conviction that calls into question the

---

victim's representative entitled to prior notice of each court proceeding). Going forward in this opinion, for the sake of readability, at times we will use the term "victim" when referring to a person to whom Maryland law provides rights either as a crime victim or as a victim's representative.

integrity of the … conviction[.]" CP § 8-301.1(a)(1). *Second*, "the interest of justice and fairness justifies vacating the … conviction." *Id.* § 8-301.1(a)(2).[4]

The State must file a motion to vacate in writing. *Id.* § 8-301.1(b)(1). The motion must "state in detail the grounds on which the motion is based" and, where applicable, "describe the newly discovered evidence[.]" *Id.* § 8-301.1(b)(2) & (b)(3). The motion must contain or be accompanied by a request for a hearing. *Id.* § 8-301.1(b)(4).

The court may dismiss a motion to vacate without a hearing if the court finds that the motion fails to assert grounds on which relief may be granted. *Id.* § 8-301.1(e)(2). Otherwise, the court must hold a hearing on the motion. The Vacatur Statute states that, before such a hearing, "the victim or victim's representative shall be notified, as provided under § 11-104 or § 11-503 of this article." *Id.* § 8-301.1(d)(1).[5] In addition, the statute provides that a victim "has the right to attend a hearing on a motion filed under this section, as provided under § 11-102 of this article." *Id.* § 8-301.1(d)(2).[6] The Vacatur Statute does not mention a victim's right to be heard at a vacatur hearing.

---

[4] A court also may vacate a probation before judgment if these same two conditions are met. *See* CP § 8-301.1(a).

[5] As mentioned above, CP § 11-104(f) requires that the prosecuting attorney send a victim prior notice of each court proceeding in the case (unless the victim receives such notice through MDEC). And CP § 11-503(a)(2) & (a)(7) provides a victim with the right to notice of a "subsequent proceeding," including "a hearing on a request to have a sentence modified or vacated under the Maryland Rules" or "any other postsentencing court proceeding."

[6] As stated above, CP § 11-102 provides that, if practicable, a victim who has filed a notification request form under CP § 11-104 has the right to attend any proceeding in which the right to appear has been granted to a defendant. CP § 11-102(a).

At the hearing, the State has the burden of proof. *Id.* § 8-301.1(g). In ruling on the motion to vacate, "the court, as the court considers appropriate," may either vacate the conviction or deny the motion. *Id.* § 8-301.1(f)(1). The court "shall state the reasons for a ruling under this section on the record." *Id.* § 8-301.1(f)(2).

In 2019, the Standing Committee on Rules of Practice and Procedure proposed, and this Court adopted, Maryland Rule 4-333, which implements the Vacatur Statute (the "Vacatur Rule"). Among other things, the Vacatur Rule specifies that notice to a victim must: (1) be in writing; (2) contain a brief description of the proceeding; (3) inform the victim of the date, time, and location of the hearing; and (4) inform the victim of their right to attend the hearing. Md. Rule 4-333(g)(2). After setting forth provisions related to the conduct of a vacatur hearing, the Vacatur Rule cross-references CP § 11-403, which, as discussed above, gives victims the right to be heard at sentence-related proceedings: "**Cross reference**: For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see [CP] § 11-403." Md. Rule 4-333(h).

## C. This Case

### 1. Procedural History: 1999-2019

On February 9, 1999, the body of Hae Min Lee was discovered buried in Leakin Park in Baltimore City.[7] Ms. Lee's ex-boyfriend, Petitioner/Cross-Respondent Adnan Syed, was eventually charged with first-degree murder and related crimes. The State's key

---

[7] The underlying facts and proceedings have been detailed in prior opinions. *See, e.g.*, *Syed v. State*, 236 Md. App. 183 (2018), *rev'd*, 463 Md. 60 (2019). We will not repeat them at length here.

witness at Mr. Syed's trial in the Circuit Court for Baltimore City was Jay Wilds, who testified, among other things, that Mr. Syed confessed to him that he had murdered Ms. Lee and that he (Mr. Wilds) assisted Mr. Syed in burying Ms. Lee's body in Leakin Park. *See Syed v. State*, 236 Md. App. 183, 200, 202-03 (2018), *rev'd*, 463 Md. 60 (2019). The State also introduced records which, according to the State, showed that Mr. Syed's cellphone received an incoming call around the time that Mr. Wilds testified he and Mr. Syed were burying Ms. Lee's body, and that this call registered with a cell tower which was the strongest cell site for the location of Ms. Lee's body in Leakin Park. *See id.* at 203. Mr. Syed's palm print was found on the back cover of a map book found inside Ms. Lee's abandoned vehicle. *Id.* at 205. The map showing the location of Leakin Park had been removed from the map book; that torn out piece was found in the rear seat area of Ms. Lee's car. *Id.*

On February 25, 2000, Mr. Syed was convicted of first-degree murder, kidnapping, robbery, and false imprisonment. Mr. Syed was sentenced to life in prison plus 30 years. The Appellate Court of Maryland affirmed Mr. Syed's convictions in an unreported opinion. *Syed v. State*, No. 923, Sept. Term, 2000 (filed March 19, 2003), *cert. denied*, 376 Md. 52 (2003).

In 2010, Mr. Syed filed a petition for post-conviction relief. He alleged ineffective assistance of counsel concerning his trial, sentencing, and appeal. The post-conviction court initially denied Mr. Syed's petition. Mr. Syed then filed an application for leave to appeal, which the Appellate Court granted. The Appellate Court subsequently granted Mr. Syed's request for a remand to consider a newly obtained affidavit from a potential alibi

witness. On remand, the post-conviction court granted Mr. Syed a new trial. The State then filed an application for leave to appeal, and Mr. Syed filed a conditional cross-application for leave to appeal, both of which were granted. In 2018, the Appellate Court affirmed the grant of a new trial. *Syed v. State*, 236 Md. App. 183 (2018). After granting the State's petition for writ of certiorari, this Court reversed the judgment of the Appellate Court and held that Mr. Syed was not entitled to a new trial. *State v. Syed*, 463 Md. 60 (2019).

2.  The Motion to Vacate Mr. Syed's Convictions

*The Joint Investigation*

In 2021, Erica Suter, Mr. Syed's current counsel, approached Assistant State's Attorney Becky Feldman about pursuing a Juvenile Restoration Act motion on behalf of Mr. Syed.[8] The discussions between Ms. Feldman and Ms. Suter eventually led them to conduct a joint investigation concerning the integrity of Mr. Syed's convictions. As part of that investigation, on March 10, 2022, the State and Mr. Syed filed a Joint Petition for Post-Conviction DNA Testing of Ms. Lee's clothing, using procedures that were unavailable at the time of Mr. Syed's trial. In addition, on May 12, 2022, Ms. Feldman requested Mr. Syed's trial file from the Maryland Attorney General's Office. In the course of reviewing the State's trial file, Ms. Feldman discovered what she believed to be exculpatory information in the form of two handwritten documents that detailed two separate

---

[8] The Juvenile Restoration Act ("JRA"), CP § 8-110, allows certain individuals to file a motion for a sentence reduction. To qualify for potential relief under the JRA, an individual must have been: (1) convicted as an adult for an offense committed when the individual was a minor; (2) sentenced for the offense before October 1, 2021; and (3) imprisoned for at least 20 years for the offense. *Id.* § 8-110(a).

15

interviews. According to Ms. Feldman, these interviews included information concerning two suspects other than Mr. Syed who had a possible motive to harm Ms. Lee. Ms. Feldman informed Ms. Suter of the discovered documents. Ms. Suter told Ms. Feldman that copies of the two documents were not in the defense file and that nothing in the defense file resembled in any way the information contained in the two documents.

*The Vacatur Motion*

On September 12, 2022, Ms. Feldman informed Ms. Lee's brother, Respondent/Cross-Petitioner Young Lee, that the State would be filing a motion to vacate Mr. Syed's convictions. Ms. Feldman was aware that Mr. Lee lived in California. In a telephone conversation on September 13, Ms. Feldman reviewed the motion with Mr. Lee and told him that there would be a hearing on the motion to vacate. She also provided her contact information to Mr. Lee. Ms. Feldman followed up with Mr. Lee via email on the afternoon of September 13:

> Attached is a draft of the motion that we are likely filing tomorrow. The motion outlines the information we uncovered about the alternative suspects. I am happy to share with you the status of the investigation as we move forward. Of course, if you have any questions, please do not hesitate to reach out to me at any time.

Mr. Lee replied to Ms. Feldman's email later on September 13:

> To be clear, [a]s a family we disagree with your course of action and stand against the motion to vacate judgement [sic]. We believe that there is overwhelming evidence, and the court convicted the right person.
>
> I hope you understand the emotional turbulence this trial is causing us. It seems there is never an end to it. But we understand your position as an attorney to do due diligence and cover all possibilities.

On September 14, Ms. Feldman replied by email: "I very much understand your family's position. I am so sorry for the pain this case is causing you." Ms. Feldman "promise[d] to keep [Mr. Lee] updated with all new developments."

The State's Attorney, through Ms. Feldman, filed the motion to vacate Mr. Syed's convictions in the Circuit Court for Baltimore City on September 14, 2022 (the "Vacatur Motion"). In the Vacatur Motion, Ms. Feldman asserted that the State's Attorney's Office had received new information after the entry of Mr. Syed's judgment of conviction that calls into question the integrity of the conviction, and that the State therefore was proceeding under CP § 8-301.1(a)(1)(ii). Specifically, Ms. Feldman represented: "[T]he parties have uncovered *Brady*[9] violations and new information, all concerning the possible involvement of two alternative suspects. Additionally, the parties have identified significant reliability issues regarding the most critical pieces of evidence at trial."

With respect to the alternative suspects, the motion recited:

> The parties have developed evidence regarding the possible involvement of two alternative suspects…. In the State's reinvestigation of this matter, new information was learned about these individuals that suggest motive and/or propensity to commit this crime. However, in order to protect the integrity of the on-going investigation, the names of the suspects, which suspect in particular, and the specific details of the information obtained will not be provided at this time.

The motion further explained:

> The State located a document in the State's trial file, which provided details about one of the suspects. A person provided information to the State

---

[9] In *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."

that one of the suspects had a motive to kill the victim, and that suspect had threatened to kill the victim in the presence of another individual. The suspect said that "he would make her [Ms. Lee] disappear. He would kill her."

The State also located a separate document in the State's trial file, in which a different person relayed information that can be viewed as a motive for that same suspect to harm the victim.

This information about the threat and motives to harm could have provided a basis for the defense to present and/or bolster a plausible alternative theory of the case at trial. Due to the on-going investigation, further details of this information will not be provided at this time.

The motion stated "that considering the totality of evidence now available, the information about an alternative suspect would have been helpful to the defense because it would have helped substantiate an alternative suspect defense that was consistent with the defense's strategy at trial."

Ms. Feldman further recited that, in 2022, the State's Attorney's Office discovered "[t]hrough investigation of property records and other media" that the location where Ms. Lee's car was found in Baltimore City was known to one of the alternative suspects, that a "person related to the family" owned a house near that location for many years, and "[t]hat person lived at that location in 1999."

In addition, according to the motion, the defense "located formally-documented evidence unavailable at the time of the trial, that one of the suspects had, without provocation or excuse, attacked a woman unknown to him while she was in her vehicle." The State further recited that this incident occurred after Mr. Syed's trial and that the suspect "was convicted of this offense." Further, the motion stated that the parties had "obtained credible information that one of the suspects had engaged in multiple instances

18

of rape and sexual assault of compromised or vulnerable victims in a systematic, deliberate and premeditated way" and that the "suspect was convicted of this offense[,]" which also occurred after Mr. Syed's trial.

The motion further stated that the defense "located formally-documented evidence of allegations that one of the suspects had engaged in aggressive and/or violent acts toward a woman known to him and forcibly confined her. It was also alleged that this suspect made threats against the life of this person." According to the motion, "[t]hese events happened prior to the trial in this case, and this information was known to the State. Given the circumstances of [Ms. Lee's] death, this evidence would have been consequential to the defense's theory of the case."

The motion also recounted that police had improperly cleared one of the suspects in the course of the initial investigation as a result of errors in administering and interpreting polygraph tests that were administered to the suspect. The motion also pointed to discrepancies between Mr. Wilds's statements to police and his trial testimony, and expressed concerns about the reliability of the incoming cellphone records upon which the State had relied at trial.

The motion made clear that the State's Attorney was not then asserting that Mr. Syed was innocent, but rather that it no longer had confidence in the integrity of the convictions and that Mr. Syed, at a minimum, should be afforded a new trial.

Later on September 14, 2022, Mr. Syed filed a response to the Vacatur Motion in which he joined in the State's Attorney's request for relief.

*The September 16 Hearing in the Court's Chambers*

On the afternoon of Friday, September 16, 2022, the circuit court held an off-the-record, *in camera* hearing in the court's chambers. Ms. Feldman and Ms. Suter were present at this hearing. Mr. Lee received no notice of the *in camera* hearing and, consequently, did not request to attend it. At the *in camera* hearing, Ms. Feldman and Ms. Suter provided the court with copies of the two documents that the State's Attorney's Office believed contained *Brady* material, neither of which was included with the Vacatur Motion or otherwise placed in the record. The record indicates that the date and time for an in-court hearing on the Vacatur Motion – the following Monday, September 19, at 2:00 p.m. – was also set during this hearing in the court's chambers.

*The Prosecutor's Communications with Mr. Lee Following the Scheduling of the September 19 In-Person Hearing*

At 1:59 p.m. EDT on Friday, September 16 – immediately following the hearing in chambers – Ms. Feldman emailed Mr. Lee:

> The court just scheduled an in-person hearing for **Monday, September 19th** at 2:00 PM (EST). It's an in-person hearing, but I asked the court for permission for you and your family to watch the proceedings virtually (if you would like). So, if you would like to watch, the link is below. Please let me know if anybody from your family will be joining the link, so I will make sure the court lets you into the virtual courtroom.... Please let me know if you have any questions.

Mr. Lee did not respond to this email. Because Ms. Feldman did not receive a reply from Mr. Lee, she texted him at 1:22 p.m. EDT on the afternoon before the hearing, Sunday, September 18, 2022: "Just wanted to make sure you got my email about the hearing schedule[d] for tomorrow. I sent a video link in case you want to watch." Mr. Lee

20

responded to Ms. Feldman's text message at 4:08 p.m. on September 18: "Yes, I got the email. I will be joining. Thank you."

*The Motion to Postpone the September 19 Hearing*

At approximately 6:00 p.m. EDT on Sunday, September 18, Mr. Lee retained counsel in connection with the Vacatur Motion. On Monday, September 19, Mr. Lee's attorneys entered their appearances in the case. At the same time, Mr. Lee, through counsel, filed a motion for postponement and demand for rights. In his motion, Mr. Lee requested that the hearing on the Vacatur Motion be postponed seven days to allow him and his family to travel to Baltimore from their residence in California. Mr. Lee explained: "Based on the potentially dispositive nature of this hearing and the right of victims and surviving families to meaningfully participate in such proceedings, the family wishes to be physically present at the in-person hearing. The notice provided was patently insufficient to permit that to happen." Mr. Lee also asserted that even if he and his family had been able to attend that day in person, they "could not meaningfully participate and be heard" because Ms. Feldman had not disclosed the factual basis supporting the Vacatur Motion and because the motion did not name any alternate suspects.

*The September 19 Hearing*

On the afternoon of Monday, September 19, the circuit court conducted the in-court hearing on the Vacatur Motion (the "Vacatur Hearing"). Mr. Syed, members of his family, members of the press, and spectators attended the Vacatur Hearing in person, as did Mr. Lee's counsel, Steven Kelly. Mr. Lee did not attend the hearing in person. After the court was called to order, the court asked Ms. Feldman to state "specifically what notice the State

21

gave to the victim's family in this case[.]" After explaining that "counsel and I met with [the court] on Friday and the hearing was scheduled for today[,]" Ms. Feldman advised the court of her communications with Mr. Lee by email and text on the preceding Friday and Sunday. She also explained that she had provided Mr. Lee with a copy of the Vacatur Motion prior to its filing. The court subsequently asked Ms. Feldman: "Now, attendance, as far as your understanding from the victim's family, the attendance was going to be done how?" Ms. Feldman responded: "So I did not know until he texted me back yesterday whether he was going to attend via Zoom and he indicated that he would. He had not indicated to me that he wished to travel to be here today."

The court then asked if Mr. Lee was "on the Zoom[.]" Hearing no response from Mr. Lee, the court then heard from Mr. Kelly. He asserted that the notice given to Mr. Lee on Friday afternoon was "patently unreasonable" in that it provided no opportunity for Mr. Lee to be present. Mr. Kelly also objected to Mr. Lee's lack of "meaningful participat[ion] in this proceeding." Mr. Kelly further complained about the State's "failing also to give any kind of notice as to what it is that has caused the concern on the part of the State's Attorney's Office" regarding the validity of Mr. Syed's convictions. Mr. Kelly reiterated that Mr. Lee was seeking a seven-day postponement so that Mr. Lee could attend the hearing in person and meaningfully participate in the hearing.

The court responded by noting that "electronic proceedings are allowed in the Circuit Court for any Circuit Court. And we do them here every day." The court continued: "I was told that [Mr. Lee] lived in California and that [he] would be present by Zoom. Now, it appears that since Friday, Mr. Lee has changed his mind. And … he wishes to be present

22

here in Baltimore City for this hearing." The court also stated that it saw no basis in the statutes and rules Mr. Lee had cited in his motion to conclude that "the victim's family would have a right to be heard" at the hearing. However, the court immediately continued: "Now, of course, if Mr. Lee was present today on the Zoom and he wanted to speak, I would allow him to speak."

Mr. Kelly then confirmed that Mr. Lee would travel to Baltimore for the hearing if it were postponed for seven days, after which the court stated:

> Wait a minute. Are you not aware that him – by him telling us on Friday that he was going to appear via Zoom is why we set this hearing today? Because had we known that on Friday then, of course, we would have scheduled this hearing according to when he was planning to arrive within a reasonable amount of time. So he didn't do that.

Mr. Kelly responded that Mr. Lee "did not state on Friday at any time that he would participate." Mr. Kelly acknowledged that, in a text to Ms. Feldman at 4:08 p.m. on Sunday, Mr. Lee had said he would participate by Zoom. But, Mr. Kelly continued, that was shortly before Mr. Lee retained Mr. Kelly to represent him. Mr. Kelly observed that Mr. Lee "is not a lawyer and he has every right to be counseled by an attorney as to his rights and then to act accordingly." The circuit court responded:

> Well, you did see the confusion? … Mr. Lee told the State through text that he would participate by Zoom. Now, counsel and I have been in close communication about this case procedurally since Friday. So had he told Ms. Feldman that he didn't want to participate via Zoom and wanted to be in person, she would have communicated that to me and then we would have taken the appropriate steps.

Mr. Kelly then asserted that what Mr. Lee had received was "not adequate notice under Maryland law." The court replied, "Nothing says that it has to be a [particular[10]] time period. It says notice…. In 8-301.1, which is the statute for motion to vacate it says notice. It doesn't have anything about reasonable notice." Mr. Kelly responded that "reasonableness is a standard that's been long applied by the Maryland Supreme Court" and reiterated that "one day's notice is [not] adequate." According to Mr. Kelly, Ms. Feldman had an affirmative obligation to apprise Mr. Lee that he had a right to participate in the hearing beyond observing, and that she failed to do so.

Mr. Kelly further argued that, under CP § 11-403, Mr. Lee had a right to speak at the hearing. The circuit court disagreed, stating that § 11-403 "has to do with sentencing or disposition hearings. That's not what this is…. This is a motion to vacate."

The court denied Mr. Lee's motion for a postponement, but allowed Mr. Kelly time to have Mr. Lee join the hearing by Zoom. Mr. Kelly then called Mr. Lee, following which he reported to the court that Mr. Lee was at work, but "would just request 30 minutes to get home and to a private place where [he] can participate." The court granted that accommodation and recessed the hearing.

The proceedings resumed 50 minutes later. At that time, the court said to Mr. Lee, who was watching the proceedings by Zoom: "You're here today to make a statement and the Court is ready to hear from you." Mr. Lee thanked the court for the opportunity to speak

---

[10] The transcript of the hearing at this spot refers to "a participate time period." We assume that this is a transcription error, and that the court referred to "a particular time period."

24

and then described how he had "been living with this for 20 plus years and every day when I think it's over … [i]t always comes back. And it's not just me, killing me and killing my mother and it's really tough … just going through this again and again and again…. [I]t's living a nightmare over and over again." He said that he believed the State had done a "fine job of prosecuting Mr. Syed" and that he "always thought the State was on [his] side" but now felt "betrayed" by the Vacatur Motion. He further stated that he was not "against an investigation" but that the Vacatur Motion was "really tough for [him] to swallow[.]" Mr. Lee noted that he had wanted to make his statement "in person, but … didn't know [he] had the opportunity[.]"

After Mr. Lee finished speaking, the court said it was "mindful how difficult this day is for you" and that it appreciated Mr. Lee "joining the Zoom this afternoon to make this statement because it is important to hear from the victim or the victim's representative." After Mr. Lee thanked the court, Mr. Kelly requested permission to "just say a couple of sentences[.]" The court declined Mr. Kelly's request, stating that it did not "think that's appropriate at this time, sir. We've heard from the victim and I heard from you earlier."

The court then said that it was "satisfied that all the requirements under … Criminal Procedure 8-301.1 [have] been met by the State, therefore, the hearing will commence now." The court then heard from Ms. Feldman. In addition to repeating the information contained in the Vacatur Motion, Ms. Feldman stated:

> What is unusual in this case, unlike all of the other motions to vacate my office has filed in the past, is that should this motion be granted, we will

25

be continuing our investigation and we will not be asking the Court to dismiss the case at this time. Instead, we are requesting that a trial be set in.

The State's ultimate decision to proceed with a new trial or ultimately dismiss the case is contingent upon the results of the ongoing investigation. However, the State is requesting the defendant be released on his own recognizance, pending the investigation, should the Court grant this motion.

Ms. Feldman did not introduce into evidence the alleged *Brady* material that the parties had provided to the circuit court during the *in camera* hearing on September 16.

After Ms. Suter made brief remarks, the court read the text of an order granting the Vacatur Motion. Next, the court stated: "At this time, we will remove the shackles from Mr. Syed, please." After a pause to allow the unshackling to occur, the court continued: "All right. Ladies and gentlemen, it is my understanding that the State and all counsel will hold a press conference outside the courthouse this afternoon. So I will, at this time, … excuse the press to go down first." After the press and spectators left the courtroom, the court directed a person who was present in the courtroom to apply an ankle transmitter to Mr. Syed for purposes of electronic monitoring. The hearing then concluded.

The court entered a written order granting the motion to vacate (the "Vacatur Order") later in the afternoon on September 19. The Vacatur Order stated, in part:

> Upon consideration of the papers, in camera review of evidence, proceedings, and oral arguments of counsel made upon the record, the Court finds that the State has proven grounds for vacating the judgment of conviction in the matter of Adnan Syed. Specifically, the State has proven that there was a Brady violation…. Additionally, the State has discovered new evidence that could not have been discovered by due diligence in time for a new trial under Md. Rule 4-331(c) and creates a substantial or significant probability that the result would have been different.

The Vacatur Order further stated that Mr. Syed was to be released on his own recognizance and placed on home detention with GPS monitoring. The Vacatur Order also directed "that the State shall schedule a date for a new trial or enter nolle prosequi of the vacated counts within 30 days of the date of this Order."

### 3. Mr. Lee's Notice of Appeal and Motions to Stay

On September 28, 2022, Mr. Lee noted an appeal of the Vacatur Order. On September 29, 2022, Mr. Lee filed in the circuit court a motion to stay the proceedings in the circuit court pending appeal. Mr. Lee also filed a motion in the Appellate Court of Maryland to stay the circuit court proceedings pending appeal. On October 6, 2022, Mr. Syed filed a notice in the circuit court stating that he intended to file a response to Mr. Lee's motion to stay.

### 4. The Entry of the Nol Pros

On October 11, 2022, after DNA testing of items of Ms. Lee's clothing yielded a mixed profile from which Mr. Syed was excluded as a contributor, the State's Attorney entered a nol pros of Mr. Syed's vacated charges.

### 5. Appeal

On October 12, 2022, the Appellate Court denied Mr. Lee's motion to stay and ordered Mr. Lee to show cause why the appeal should not be dismissed as moot.[11] The parties filed responses to the show cause order, and on November 4, 2022, the Appellate Court ordered that the appeal would proceed.

---

[11] Also on October 12, 2022, the circuit court denied Mr. Lee's motion to stay the proceedings pending appeal, concluding that the nol pros rendered the motion moot.

The Appellate Court subsequently issued a reported opinion in which it vacated the Vacatur Order, reinstated Mr. Syed's convictions, and ordered a remand for a new vacatur hearing. *Lee v. State*, 257 Md. App. 481, 550 (2023). The panel Majority first held that Mr. Lee's appeal was not moot because the nol pros "was entered with the purpose or necessary effect of preventing Mr. Lee from obtaining a ruling on appeal regarding whether his rights as a victim's representative were violated." *Id.* at 526 (internal quotation marks and citations omitted). According to the Majority, "[t]his action conflicted with 'the State's interest in procuring justice,' which requires it 'to ensure that the constitutional rights of crime victims are honored and protected.'" *Id.* (quoting *State v. Casey*, 44 P.3d 756, 764 (Utah 2002)). The Majority continued: "[T]he State of Maryland has given constitutional and statutory rights to crime victims, and the State's Attorney should not be allowed to thwart those rights in the way that happened in this case. The nol pros entered under the circumstances of this case violated Mr. Lee's right to be treated with dignity and respect." *Id.* at 526-27. The Majority concluded that, "[b]ecause the nol pros was void, it was a nullity, and it does not render this appeal moot." *Id.* at 527.

On the merits, the Majority held that the circuit court erred in finding that Mr. Lee received sufficient notice of the Vacatur Hearing. The Majority concluded that "the State's notice here, an email one business day before the hearing on Monday, September 19, 2022, was not sufficient to reasonably allow Mr. Lee, who lived in California, to attend the proceedings, as was his right." *Id.* at 537. Next, the Majority held that Mr. Lee's right to attend the hearing was violated because he was functionally required to attend remotely. The Majority concluded that the circuit court "erred and/or abused its discretion in failing

28

to grant a postponement and in finding that Mr. Lee's attendance via Zoom satisfied his right, as a victim's representative, to attend the hearing." *Id.* at 541. Finally, the Majority interpreted the text and legislative history of the Vacatur Statute and held that Mr. Lee did not have a right to be heard at the Vacatur Hearing. *See id.* at 542-44.

Writing separately, the Honorable Stuart R. Berger agreed with the Majority that Mr. Lee had no right to be heard at the Vacatur Hearing, but dissented from the other portions of the Appellate Court's disposition of the appeal. *See id.* at 551-61 (Berger, J., dissenting). Judge Berger first explained that he would hold that the entry of the nol pros mooted Mr. Lee's appeal, although he nevertheless would have reached the merits. *Id.* at 551-56 (Berger, J., dissenting). Judge Berger also would have held that remote attendance satisfies a victim's right to attend a vacatur hearing and that the notice in this case was sufficient because it afforded Mr. Lee the opportunity to attend via Zoom. *Id.* at 557-61 (Berger, J., dissenting).

Mr. Syed subsequently filed a motion for reconsideration, arguing that Mr. Lee did not meet his burden to show that the alleged errors prejudiced him. The Appellate Court denied this motion because Mr. Syed had not previously raised the issue of prejudice.

6. The Cross-Petitions for Certiorari

On May 24, 2023, Mr. Syed filed a petition for writ of certiorari with this Court. On June 8, 2023, Mr. Lee filed a cross-petition for certiorari. The State of Maryland (represented on appeal by the Office of the Attorney General) filed a response recommending that we grant both petitions, which we did on June 28, 2023. *Syed v. Lee*,

483 Md. 589 (2023). Between the two petitions, we agreed to review the following questions (which we have reordered and rephrased):[12]

1. Did the entry of the nol pros moot Mr. Lee's appeal of the Vacatur Order?

2. Does a victim have the right to be heard at a vacatur hearing?

3. Does a victim have the right to attend a vacatur hearing in person, or does remote attendance satisfy the right of attendance?

4. Did Mr. Lee receive sufficient notice of the Vacatur Hearing?

5. Must a victim who seeks reversal of an order of court due to violation of the victim's rights make a showing of prejudice and, if so, did Mr. Lee do so in this case?

---

[12] Mr. Syed's petition for certiorari sought review of the following questions:

1. Does a lawfully entered nolle prosequi render moot an appeal alleging procedural violations at a hearing occurring prior to the nolle prosequi?

2. Does a victim's representative, a non-party to a case, have the right to attend a vacatur hearing in-person or does remote attendance satisfy the right?

3. Was notice to the victim's representative of the vacatur hearing sufficient where the State complied with all statutory and rules-based notice requirements?

4. Must a victim's representative seeking reversal show prejudice on appeal?

Mr. Lee's cross-petition for certiorari sought review of the following question:

Whether a victim's right to speak, as enshrined in Maryland's laws and constitution, is incorporated into the Vacatur Statute, CP § 8-301.1, where no party or entity other than the victim has an interest in challenging the evidence alleged to support vacatur?

30

## II

## Standard of Review

The questions listed above are questions of law, which we consider *de novo. See, e.g.*, *Nationwide Prop. & Cas. Ins. Co. v. Selective Way Ins. Co.*, 473 Md. 178, 188-89 (2021); *Peterson v. State*, 467 Md. 713, 725 (2020).

## III

## Discussion

### A. Mootness

We first consider whether the entry of the nol pros mooted Mr. Lee's appeal of the Vacatur Order. "A question is moot if, at the time it is before the court, there is no longer any existing controversy between the parties, so that there is no longer an effective remedy which the court can provide." *In re S.F.*, 477 Md. 296, 318 (2022) (internal quotation marks and citations omitted).

Mr. Syed argues that the entry of the nol pros mooted Mr. Lee's appeal of the Vacatur Order. According to Mr. Syed, the State's Attorney lawfully entered the nol pros, which had the "incidental effect" of mooting Mr. Lee's appeal. That is the case, Mr. Syed contends, because the remedy Mr. Lee sought in the Appellate Court – reinstatement of Mr. Syed's convictions and a rehearing on the Vacatur Motion – was no longer possible due to the charges against Mr. Syed having been finally terminated through the entry of the nol pros. In addition, Mr. Syed contends that the nol pros was not properly before the Appellate Court because it was entered after Mr. Lee noted his appeal, and Mr. Lee could not (or did not, if he could) appeal the entry of the nol pros.

31

Respondents Mr. Lee and the State argue that the nol pros did not moot Mr. Lee's appeal. Respondents proceed from the premise that, but for the circuit court's order vacating Mr. Syed's convictions, the State's Attorney would not have been permitted to enter the nol pros. Further, the entry of the nol pros had the effect of thwarting Mr. Lee's appellate rights, which, Respondents argue, the State's Attorney lacked the authority to do, and which resulted in fundamental unfairness to Mr. Lee. Respondents contend that the Appellate Court (and this Court) have the authority under CP § 11-103(e) to award relief to Mr. Lee for the violation of his rights by ordering a new vacatur hearing. We agree with Respondents that this appeal is not moot.

A nol pros is "an action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *State v. Huntley*, 411 Md. 288, 291 n.4 (2009) (citation omitted); CP § 1-101(k) ("'Nolle prosequi' means a formal entry on the record by the State that declares the State's intention not to prosecute a charge."); *see also Ward v. State*, 290 Md. 76, 83 (1981) (a nol pros "is an abandonment of the prosecution") (internal quotation marks and citation omitted). A nol pros eliminates the charge against the defendant, "as if the charge had never been brought in the first place." *Curley v. State*, 299 Md. 449, 460 (1984) (citations omitted). After a nol pros has been entered, the State may proceed against the defendant for the same offense "only under a new or different charging document or count." *Id.* (citation omitted).

A State's Attorney generally has "broad discretion" to enter a nol pros. *State v. Simms*, 456 Md. 551, 561 (2017) (citation omitted). However, the power to enter a nol pros is "not absolute" or "completely without restraint." *Hook v. State*, 315 Md. 25, 35-36

32

(1989). We have previously held that the State may not enter a nol pros "to alter a final judgment, i.e. conviction and sentence." *Simms*, 456 Md. at 555. In *Simms*, the defendant filed an appeal challenging the sufficiency of the evidence for his conviction to a drug conspiracy charge. *Id.* While the appeal was pending, the State entered a nol pros to the charges in the circuit court; the State then moved to dismiss the appeal as moot. *Id.* This Court held that "[t]he State had no authority to use its power to nol pros to alter a final judgment entered in favor of or against a criminal defendant. Final judgment is the boundary of the State's discretion to enter a nolle prosequi." *Id.* at 575. That was so because "[o]nce a case reaches final judgment in a proceeding, and a party appeals that judgment, the issue comes within the exclusive jurisdiction of the appellate court." *Id.* at 576 (internal quotation marks and citation omitted). We explained that the nol pros while the defendant's appeal was pending "was simply a nullity, improper and therefore ineffective." *Id.* (internal quotation marks and citation omitted). The Court also observed that the State "was not attempting to nol pros charges but rather sought to erase a conviction and sentence, and in doing so attempted an end run around the appellate process." *Id.* We "reject[ed] the State's suggestion that its power to nol pros may divest a criminal defendant of his or her right to appeal a final judgment[,]" explaining that the defendant's "interest in the outcome of his appeal … [was] not controlled by the prosecuting attorneys." *Id.* at 577.

Nor may a State's Attorney enter a nol pros in a way that undermines the defendant's right to a fair trial. *See Hook*, 315 Md. at 41-42. *Hook* was a capital murder case. *See id.* at 33. The evidence adduced by the State in its case-in-chief indicated that the defendant was intoxicated at the time he shot and killed two people. *See id.* at 34-35. At the close of the

33

State's case, the State entered a nol pros to murder in the second degree, to which the defense objected. *Id.* at 35. The trial court overruled the objection, reasoning "that the State can submit whatever crimes it has previously charged the Defendant with to the Jury and nol pros whatever charge it wishes[.]" *Id.* The jury convicted the defendant of first-degree murder. *Id.* at 38.

This Court reversed. Although the Court recognized that "entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent[,]" *id.* at 35 (internal quotation marks and citation omitted), the Court stated that "under the concept of fundamental fairness with respect to a trial in a criminal cause, the broad authority vested in a prosecutor to enter a nolle prosequi may be fettered in the proper circumstances." *Id.* at 37. After reviewing case law, including *Beck v. Alabama*, 447 U.S. 625 (1980), which found unconstitutional the withholding of a lesser-included offense jury instruction in a capital case where the evidence supports the giving of such an instruction, we explained:

> The trial judge's refusal to give the requested instruction on second degree murder and to permit defense counsel to argue that crime stemmed from the State's *nolle prosequi* which removed second degree murder from the consideration of the jury. The action of the State left no charge of second degree murder on which to convict, and thus placed the case outside the scope of the *Beck* rule. We do not believe that, under the circumstances, the State can circumvent the *Beck* rule in this manner. The *nolle prosequi* resurrected the very evils which *Beck* and its siblings buried. We think that the exceptional circumstances of this case present a rare occasion calling for a tempering of the broad authority vested in a State's Attorney to terminate a prosecution by a *nolle prosequi*. We believe that the State, in entering the *nolle prosequi* here, failed to observe that fundamental fairness essential to the very concept of justice. Its action was inconsistent with the rudimentary demands of fair procedure.

34

*Hook*, 315 Md. at 41-42. We held that "[w]hen the defendant is plainly guilty of some offense, and the evidence is legally sufficient for the trier of fact to convict him of either the greater offense or a lesser included offense, it is fundamentally unfair under Maryland common law for the State, over the defendant's objection, to *nol pros* the lesser included offense." *Id.* at 43-44. We thus determined that the trial judge erred in overruling the objection to the entry of the nol pros and ordered a new trial. *Id.* at 42.

We conclude that the nol pros of Mr. Syed's charges, after the circuit vacated Mr. Syed's conviction, does not moot Mr. Lee's appeal. This case presents exceptional circumstances that call for a tempering of the broad authority that a State's Attorney typically possesses to nol pros a charge. This determination flows logically from *Simms* and *Hook*. First, we start with the *Simms* rule that a nol pros can only be entered as to charges, and not as to final dispositions. Therefore, the State could only have nol prossed Mr. Syed's charges, and not his conviction. As matters stood before September 19, 2022, this case was materially indistinguishable from *Simms*. Prior to September 19, Mr. Syed was the subject of a final judgment of conviction; thus, prior to September 19, under *Simms*, the State's Attorney lacked the authority to enter a nol pros. *Simms*, 456 Md. at 575-76.

The lawful vacatur of Mr. Syed's convictions was a condition precedent to the State's Attorney regaining the authority it had prior to entry of final judgment to nol pros the charges against Mr. Syed. As such, the question becomes whether the vacatur of Mr. Syed's conviction was proper – the exact question that Respondents present to this Court. Respondents contend that there was not a lawful vacatur of Mr. Syed's convictions, given the alleged violations of Mr. Lee's rights as the victim's representative. If Respondents are

correct that the vacatur was unlawful, then there is not a material distinction between this case and *Simms* because there should not have been a vacatur of Mr. Syed's convictions, thereby rendering the subsequent nol pros "a nullity, improper and therefore ineffective." *Id.* at 576 (internal quotation marks and citation omitted). Because, as discussed below, the vacatur was flawed, by operation of law the conviction stood, and the State's Attorney did not have authority to nol pros such a final disposition. *See id.* at 575.

Second, the effect of the nol pros was to thwart Mr. Lee's effort on appeal to vindicate his rights as the victim's representative. This case concerns the fundamental rights of a victim as guaranteed by Article 47 of the Maryland Declaration of Rights to be treated with "dignity, respect, and sensitivity[.]" Md. Decl. of Rts. art. 47(a). Although this case does not concern an accused's right to a fair trial as in *Hook*, victims and their representatives, like Mr. Lee, deserve fair treatment and have a right under the Maryland Constitution to such. As in *Hook*, "[w]e believe that the State, in entering the *nolle prosequi* here, failed to observe that fundamental fairness essential to the very concept of justice. Its action was inconsistent with the rudimentary demands of fair procedure." *Hook*, 315 Md. at 41-42.[13]

---

[13] Justice Booth opines that a criminal defendant's constitutional rights and a crime victim's constitutional rights "are not on equal footing[.]" Dissenting Op. of Booth, J., at 10. Of course, courts occasionally must balance constitutional rights in light of a particular set of circumstances, and as a result of that analysis, one right may have to yield to another. *See, e.g.*, *United States v. Orsini*, 424 F. Supp. 229, 232 (E.D.N.Y. 1976) ("[T]here exists no absolute rule of privilege protecting [journalists] from disclosure of confidential sources. Instead, what is required is a case by case evaluation and balancing of the legitimate competing interests of the [journalist's] claim to First Amendment protection from forced disclosure of his confidential sources, as against the defendant's claim to a fair trial which is guaranteed by the Sixth Amendment."). But that does not mean that any

We reject the argument that a prosecutor may use the nol pros power to divest a victim of the right to appeal what the victim contends is an unlawful vacatur order, as the victim's "interest in the outcome of [the victim's] appeal … [is] not controlled by the prosecuting attorneys." *See Simms*, 456 Md. at 577. To hold otherwise would make it essentially impossible for victims to enforce their rights in connection with a vacatur hearing. Whenever the State wanted to avoid an appeal of a vacatur decision, the State could simply nol pros the case after a notice of appeal had been filed and thereby moot the appeal. That would be inconsistent with: CP § 11-103(b), which provides a victim with the right to appeal from a final order that "denies or fails to consider a right secured to the victim"; CP § 11-103(e)(1), which states that, "[i]n any court proceeding involving a crime against a victim, the court shall ensure that the victim is in fact afforded the rights provided to victims by law"; and CP § 11-103(e)(2), which permits a court, after finding that a victim's right was not considered or was denied, to grant the victim relief, provided that the remedy does not violate principles of Double Jeopardy. Acknowledging this additional constraint on a prosecutor's nol pros power furthers Maryland's "clear public policy" of providing "broad rights to crime victims" and treating them with "dignity, respect, and sensitivity[.]" *Lopez v. State*, 458 Md. 164, 175-76 (2018); Md. Decl. of Rts. art. 47(a).

Mr. Syed's arguments to the contrary are unpersuasive. First, Mr. Syed contends that *Simms* is distinguishable from this case because, in *Simms*, the State entered the nol pros while the defendant's final judgment of conviction was on appeal, whereas here "[t]he

particular constitutional right is inherently less worthy of protection than any other constitutional right.

37

issuance of a lawful vacatur order left the case in prejudgment status[.]" The key word in this quote from Mr. Syed's brief is "lawful." Mr. Lee's appeal challenges the lawfulness of the vacatur order; *i.e.*, Mr. Lee argues that it was improper for the circuit court to return this case to "prejudgment status," given the alleged violations of Mr. Lee's rights as the victim's representative. To this point, Mr. Syed replies that, even if Mr. Lee "had a valid grievance about notice and attendance at the vacatur hearing, it does not follow that the vacatur order was somehow illegal just as it does not follow that a verdict is a nullity when error occurs at trial."

Mr. Syed downplays the significance of vacatur. It is no small matter for a court to undo a final judgment of conviction. In multiple contexts, the United States Supreme Court and this Court have emphasized the importance of finality in criminal cases. *See, e.g.*, *Strickland v. Washington*, 466 U.S. 668, 693 (1984) (in discussing the appropriate standard for review of ineffective-assistance-of-counsel claims, noting the "profound importance of finality in criminal proceedings"); *Griffith v. Kentucky*, 479 U.S. 314, 321-22 (1987) (stating that "the retroactivity analysis for convictions that have become final must be different from the analysis for convictions that are not final at the time the new decision is issued"); *Arrington v. State*, 411 Md. 524, 548 (2009) (explaining that the General Assembly introduced the doctrine of waiver into the Uniform Postconviction Procedure Act "to achieve finality in the criminal adjudicative process, without unduly interfering with a defendant's right to fully present his case before a court"). Finality of criminal judgments furthers several interests, including "the retributive and the deterrent functions of criminal law[,]" enhancement of the quality of judging, and the execution of the State's

"moral judgment in a case." *Calderon v. Thompson*, 523 U.S. 538, 555-56 (1998). "Only with real finality can the victims of crime move forward knowing the moral judgment will be carried out." *Id.* at 556. "To unsettle these expectations is to inflict a profound injury to the powerful and legitimate interest in punishing the guilty, an interest shared by the State and the victims of crime alike." *Id.* (internal quotation marks and citation omitted).

In this case, harm to Mr. Lee's interest in finality occurred as a result of the alleged violation of Mr. Lee's constitutionally protected rights. That circumstance puts this case on a par with *Hook* in warranting the imposition of a constraint on a prosecutor's nol pros authority.[14]

Second, Mr. Syed argues that, under Maryland Rule 4-333(i), the State's Attorney was obligated to enter a nol pros within 30 days of the entry of the Vacatur Order, given that the State's Attorney concluded that she no longer intended to re-prosecute Mr. Syed under the same charging document. Mr. Syed misreads Rule 4-333(i). Under that provision of the Vacatur Rule, "[w]ithin 30 days after the court enters an order vacating a judgment of conviction … as to any count, the State's Attorney shall either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count." Md. Rule 4-333(i).

---

[14] According to Mr. Syed, this Court in *Hook* "did not purport to hold that the State may be barred from dismissing *an entire charging document*, which would have the effect of forcing the State to prosecute a person against its wishes." This misses the point. The State has already prosecuted Mr. Syed, and his conviction is final. That being the case, before the State's Attorney is called upon to decide whether to re-prosecute Mr. Syed or to enter a nol pros, there must be a lawful vacatur of Mr. Syed's convictions. In holding that Mr. Lee's appeal is not moot, we are not saying that the State's Attorney will ever be forced to re-prosecute Mr. Syed against the State's Attorney's wishes. But first things first: The State's Attorney does not have the power to nol pros a case such as Mr. Syed's unless and until a circuit court lawfully vacates the judgment of conviction.

"[O]ther appropriate action" under Rule 4-333(i) need not be (as the circuit court seemed to believe[15]) setting the vacated count(s) in for a retrial. Where, as here, a victim has noted an appeal of a vacatur order, "other appropriate action" by the State's Attorney could include moving to stay the proceedings in the circuit court pending appeal and/or, as the State suggests in its brief to this Court, announcing the State's Attorney's intention to enter a nol pros if the vacatur order is upheld on appeal.

As Mr. Syed observes, Rule 4-333(i) instructs the State to decide whether to nol pros vacated counts within 30 days of the vacatur order – the same amount of time a victim has to note an appeal. *See* Md. Rule 8-202(a). The State in its brief to this Court does not see the two simultaneously running deadlines as a problem. On the State's view, a prosecutor may enter a nol pros at any time after the issuance of a vacatur order up until the time that a victim notes an appeal of the vacatur order. But once a victim notes such an appeal, the State asserts, a prosecutor no longer may nol pros the vacated charges but rather must take "other appropriate action" under Rule 4-333(i) before the 30-day period runs.

It may be that the State's Attorney is not legally barred from entering a nol pros of vacated counts if no appeal by the victim is pending.[16] If that is the case, we would be

---

[15] The Vacatur Order instructed the State's Attorney either to "schedule a date for a new trial or enter nolle prosequi of the vacated counts within 30 days of the date of this Order." Contrary to Mr. Syed's description, the Vacatur Order did not "echo[] the requirements" of Rule 4-333(i). To the extent the circuit court believed the only potential "other appropriate action" was setting the vacated counts in for a new trial, the circuit court misread Rule 4-333(i).

[16] On the other hand, if the State were to nol pros the vacated counts before a victim timely appeals, the nol pros could potentially be determined to be invalid due to the victim's right to appeal. Otherwise, the entry of a nol pros prior to a victim pursuing a timely appeal

concerned about a scenario in which a victim and a prosecutor who decides to nol pros vacated counts find themselves in a race to see who can act first after the entry of the vacatur order. Will the victim note an appeal before the State's Attorney can go into court and enter a nol pros, or vice versa? In our view, the course of action that treats the victim with dignity, respect, and sensitivity is for the State's Attorney to confer with the victim (if the State's Attorney is able to contact the victim) prior to entering a nol pros to determine whether the victim intends to note an appeal during the 30-day period. If the victim states that no appeal of the vacatur order will be noted, the State's Attorney generally may rely on that representation and enter a nol pros. However, if the victim indicates that they will be (or may be) noting an appeal of the vacatur order, the State's Attorney generally should hold off entering a nol pros. "[O]ther appropriate action" in such a situation could be for the State's Attorney to file a motion for a brief extension of Rule 4-333(i)'s 30-day period to allow the victim the full 30-day period under Rule 8-202(a) to decide whether to note an appeal.[17] We expect that the court would liberally grant such a motion. If the victim does not note an appeal within the 30-day period provided by Rule 8-202(a), the State's Attorney can then nol pros the vacated counts.

Mr. Syed takes exception to the idea that the State's Attorney should face any barrier to entering a nol pros of a count that has been vacated under CP § 8-301.1. As Mr. Syed

---

could nullify the victim's statutory right to appeal. Based on the circumstances of this case, we need not address this question head on.

[17] We have not endeavored in this opinion to provide an exhaustive list of "other appropriate action" under Rule 4-333(i).

points out, affirming the Appellate Court's decision that this case is not moot would "prevent[] the State … from ever dismissing charges until the time for noting an appeal has passed or, if the victim or victim's representative takes an appeal, the appeal is concluded." In the meantime, Mr. Syed observes, "the defendant must live with charges hanging over their head, under a cloud of suspicion and in constant fear of re-prosecution." We recognize that the balance we strike here may lead to stress and uncertainty for a defendant whose counts of conviction have been vacated. The defendant may have to wait 30 days or, if a victim notes an appeal, significantly longer to learn whether the vacatur order will stand and, if so, whether the State's Attorney will elect to re-prosecute any of the vacated charges. However, this additional waiting period is necessary to vindicate victims' constitutionally protected rights.[18]

Next, Mr. Syed contends that this Court does not have the power to provide Mr. Lee with a remedy that undoes the nol pros because Mr. Lee did not (or could not) appeal the entry of the nol pros but, rather, only has appealed the Vacatur Order. We need not decide whether a victim may appeal the entry of a nol pros following the issuance of a vacatur order under CP § 8-301.1. If Mr. Lee is correct that there was not a lawful vacatur order, then the State's Attorney did not have the authority to enter a nol pros and its entry on the docket was a nullity.

---

[18] Although Mr. Syed indeed has been in a kind of limbo since September 2022, as two appellate courts have considered whether the Vacatur Order is lawful, we note that he has been out of jail for the entirety of this period.

The Appellate Court's decision in *Antoine v. State*, 245 Md. App. 521 (2020), is instructive. In that case, Antoine was the victim of an assault. *Id.* at 530. During a hearing where Antoine was not present (because the prosecutor had told Antoine nothing substantive would occur), the circuit court bound itself to a disposition of probation before judgment without first hearing from Antoine. *See id.* at 535-36. This violated several victim's rights provisions. *Id.* at 546. At a subsequent hearing, Antoine sought relief under CP § 11-103(e). *Id.* at 536. Specifically, he requested that the court repudiate the plea agreement negotiated with the defendant and permit the defendant to withdraw his guilty plea so that the defendant, the State, and Antoine himself could "start over." *Id.* at 536-37.

The trial court "assume[d], for the sake of argument, that the notifications and various rights for Mr. Antoine, as the victim, were not complied with." *Id.* at 537. However, the trial court concluded that it lacked authority to provide Antoine with any remedy at that point, having already bound itself to a particular disposition. *See id.* On appeal, the intermediate appellate court reversed, reasoning that the Criminal Procedure Article authorized a remedy for violation of Antoine's rights as a victim "that is both effective and respectful of the constitutional rights of defendants." *Id.* at 531. That remedy was "to vacate the sentence and the trial court's final approval of the plea agreement, and require the court to receive and consider victim impact evidence before deciding whether to give final approval of the plea agreement." *Id.* The court concluded that this remedy was permissible under CP § 11-103(e)(2), because it did not violate the defendant's constitutional right to be free of Double Jeopardy. *Id.* at 558.

43

We agree with *Antoine'*s interpretation of CP § 11-103(e). The logical conclusion we reach from applying it here is that the nol pros did not moot Mr. Lee's claim on appeal that the circuit court violated his rights as a victim's representative. Just as the trial court's otherwise legal action in *Antoine* in binding itself to a plea agreement was rendered a nullity as a result of the antecedent violation of Antoine's rights as a victim, the State's Attorney's otherwise legal action of entering a nol pros in this case was a nullity if the vacatur hearing was unlawful due to a violation of Mr. Lee's rights as a victim's representative.[19]

The cases of this Court upon which Mr. Syed relies in arguing that this appeal is moot, *Cottman v. State*, 395 Md. 729 (2006), and *Hooper v. State*, 293 Md. 162 (1982), are inapposite. In *Cottman*, the defendant was convicted at trial on drug charges. While his appeal was pending in the Appellate Court, the trial court granted the defendant's motion for a new trial, which had the effect of vacating the underlying judgment of conviction and sentence. 395 Md. at 733. Unaware of the grant of the new trial motion, the Appellate Court subsequently filed an opinion affirming the circuit court's initial judgment and sentence. *Id.* Prior to the issuance of the Appellate Court's mandate, Cottman requested that the Appellate Court withdraw its opinion and dismiss the appeal as moot, in light of the circuit court's decision to grant him a new trial prior to the filing of the Appellate Court's opinion. *Id.* The Appellate Court denied relief to Cottman. When Cottman's case then came to this Court, we held that the grant of a new trial in favor of Cottman mooted Cottman's appeal and, therefore, the Appellate Court should have dismissed the appeal. *Id.* at 745.

---

[19] Mr. Syed does not claim that a new vacatur hearing would offend Double Jeopardy principles. *See Lee*, 257 Md. App. at 548-49.

This case is distinguishable from *Cottman* in two respects. First, in *Cottman* the State did not (and could not) appeal the order granting the motion for new trial; what was before the Appellate Court based on Cottman's notice of appeal was only the validity of Cottman's convictions and sentence. *Id.* at 738-39 & n.6. Here, Mr. Lee had the right to appeal the grant of the Vacatur Order and did so timely. Second, the trial court retained jurisdiction to rule on Cottman's motion for a new trial, notwithstanding Cottman having noted an appeal of the judgment of conviction. In that respect, *Cottman* differs from *Simms*. In *Simms*, the State's Attorney lacked the authority to take the action that purportedly mooted the appeal (the nol pros) because of the pendency of the appeal. In *Cottman*, the trial court had the authority to take the action that mooted the appeal (granting the new trial motion).[20] As discussed above, if the Vacatur Order in this case was unlawful, this case is analogous to *Simms*.

---

[20] In *Cottman*, while the appeal was pending, the circuit court ordered a new trial, essentially erasing the original proceeding/conviction and mooting the appeal. By way of comparison, if, after Mr. Lee filed his appeal, the circuit court here had reconsidered its opinion, vacated its original vacatur order, and ordered a new hearing, then Mr. Lee's appeal would have been moot, as the appeal in *Cottman* was. But that is not what happened in this case. Here, the State chose to nol pros the reinstated charges, leaving Mr. Lee without the remedy of an appeal or a new vacatur hearing. This case does not turn on the well-established principle that trial courts "are not stripped of their jurisdiction to take post-judgment action simply because an appeal is pending from that judgment." *Cottman*, 395 Md. at 740.

Relatedly, Justice Hotten's reliance on the Committee note to Rule 4-333(b) is misplaced. *See* Dissenting Op. of Hotten, J., at 13-14. The Committee note recognizes that, under the Vacatur Statute, a circuit court has authority to vacate a conviction at any time, including while a defendant's direct appeal of the conviction is pending. The note observes that, if a motion to vacate is granted and the State's Attorney enters a nol pros before the defendant's appeal is resolved, "the appeal may become moot, at least with respect to the judgments vacated." The note therefore advises that "[t]he simplest solution in most cases

45

Mr. Syed's reliance on *Hooper v. State* also is misplaced. In that case, two criminal defendants successfully petitioned for certiorari in this Court after the Appellate Court reinstated the indictment against them, which had been dismissed by the trial court. 293 Md. at 164. At oral argument in this Court, the State effectively dismissed the pending charges, explaining that it was doing so because the State's Attorney had obtained a new charging document in the circuit court. *Id.* However, when those new charges could not be tried as quickly as the State wished, the State moved to undo its dismissal of the first set of charges. *Id.* at 167. This Court declined the State's request, reasoning that the State effectively had nol prossed the first set of charges at oral argument, which meant that "the prosecution under that particular charging document [was] finally terminated at that time." *Id.* Thus, the Court ordered that the appeal be dismissed. *Id.* at 167-68.

In *Hooper*, there was no condition precedent that had to be satisfied before the State had the power to nol pros the charges in question. Thus, when the State effectively dismissed the charges in this Court, it was stuck with the consequences of the exercise of its nol pros power. In contrast, in this case the State only had the authority to nol pros Mr. Syed's charges if the Vacatur Order was lawful.

In sum, there is an existing controversy between the parties, centered on whether Mr. Lee's rights as a victim were violated at the Vacatur Hearing, thereby rendering the Vacatur Order unlawful. Where the State moves to vacate a conviction under the Vacatur

---

would be for the appellate court to remand the case for the trial court to consider the motion [to vacate]." Md. Rule 4-333(b), comm. note. The Committee note says nothing about the effect of a nol pros on a victim's appeal of a vacatur order that was a condition precedent to the entry of the nol pros.

Statute and the motion is granted, the State does not have the authority to nol pros the reinstated charges if doing so would thwart a victim's appeal claiming that the victim's rights were violated by the vacatur decision. If there has been a violation of Mr. Lee's rights in connection with the Vacatur Hearing, this Court has at its disposal an effective remedy that will not violate Mr. Syed's constitutional right to be free from Double Jeopardy: it can return the parties to where they were immediately after the State's Attorney filed the Vacatur Motion. For these reasons, Mr. Lee's appeal is not moot.

## B. A Victim's Right to Be Heard at a Vacatur Hearing

Turning to the merits, we first consider whether a victim has the right to be heard at a vacatur hearing. Mr. Syed argues that victims do not have a statutory right to participate in vacatur hearings. Thus, Mr. Syed contends, Mr. Lee received more than he was due when the circuit court allowed him to make a statement immediately prior to what the court referred to as the commencement of the Vacatur Hearing.

Mr. Lee asserts that he received less than the law requires with respect to the right to be heard. According to Mr. Lee, he had a right not just to address the court at the Vacatur Hearing but also to participate as a party at the hearing, by introducing evidence, cross-examining witnesses, et cetera.

The State takes an intermediate position, contending that a victim has the right to be heard at a vacatur hearing, both as to the legal sufficiency of the State's motion and the court's exercise of discretion in determining whether the interest of justice and fairness justifies vacating the conviction. However, the State disagrees with Mr. Lee's view that a victim is entitled to other rights of participation at a vacatur hearing, such as the right to

47

present evidence or call witnesses. We agree with the State's position concerning a victim's right to be heard at a vacatur hearing.

1. <u>A Victim Has the Right to Be Heard at a Vacatur Hearing.</u>

We conclude, as a matter of statutory and constitutional law, that a crime victim has the right to be heard at a vacatur hearing. We reach this conclusion based on the unambiguous language of Article 47 of the Declaration of Rights, CP § 11-403, and the cross-reference in Maryland Rule 4-333(h).

Article 47(b) expressly states that a victim of crime has the right to be informed of the rights established in the Article and the rights, "upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms 'crime', 'criminal justice proceeding', and 'victim' are specified by law." CP § 11-403 provides that a victim has a right to "address the court under oath before the imposition of sentence or other disposition" at "a hearing at which the … alteration of a sentence … is considered." CP § 11-403(a) & (b). And Maryland Rule 4-333, which stems from CP § 8-301.1, includes a cross-reference after section (h): "For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see [CP] § 11-403." Thus, as we explain in more detail below, under Maryland law, a victim has a right to be heard at a vacatur hearing. In addition, a victim's right to be heard at a vacatur hearing contemplates the right to be heard in a meaningful

48

way, which includes the right to be heard on the merits of the parties' presentations in support of a vacatur motion.[21]

### a. Statutory Interpretation

When construing a statute, our goal is "to ascertain and effectuate the real and actual intent of the Legislature." *Lockshin v. Semsker*, 412 Md. 257, 274 (2010). We "begin with the plain language of the statute, and ordinary, popular understanding of the English language dictates interpretation of its terminology." *Buarque de Macedo v. Automobile Ins. Co. of Hartford, Conn.*, 480 Md. 200, 215 (2022) (internal quotation marks and citation omitted). Where statutory language "is ambiguous and thus subject to more than one reasonable interpretation, or where the language is unambiguous when read in isolation, but ambiguous when considered in the context of a larger statutory scheme, a court must resolve the ambiguity by searching for legislative intent in other indicia, including the history of the legislation or other relevant sources intrinsic and extrinsic to the legislative process." *Buarque de Macedo*, 480 Md. at 216 (internal quotation marks and citation omitted). In addition, we "check our interpretation against the consequences of alternative readings of the text[,]" *Bell v. Chance*, 460 Md. 28, 53 (2018), which "grounds the analysis." *In re O.P.*, 470 Md. 225, 255 (2020).

---

[21] Justice Hotten states that "[t]he Majority appears to have interpreted the 'right to attend' a vacatur hearing under Crim. Proc. § 8-301.1(d) as reflecting a right to be heard[.]" Dissenting Op. of Hotten, J., at 24. We do not interpret the right to attend a vacatur hearing to reflect a right to be heard at such a hearing. As discussed below, however, the right to be heard at a vacatur hearing does inform our view of whether a victim has the right to attend a vacatur hearing in person.

### b. *The Vacatur Statute*

In 2021, the General Assembly enacted the Vacatur Statute, which requires notice to the victim of a hearing, CP § 8-301.1(d)(1), and also states that a victim has the right to attend a hearing. *Id.* § 8-301.1(d)(2). However, the statute is silent as to a victim's right to be heard at the hearing. Where a statute is silent with respect to a matter, because statutes are to be interpreted consistent with legislative purpose, we must examine the General Assembly's intent. *See Amaya v. DGS Constr., LLC*, 479 Md. 515, 559 (2022). For his part, Mr. Syed contends that, if the General Assembly had intended victims to have the right to be heard at a vacatur hearing, it would have expressly included such a right in the Vacatur Statute, just as it expressly referenced the rights to notice and attendance in that statute. Under the principles of statutory construction, however, this argument has little force.

In concluding that there is no right to be heard at a vacatur hearing, like Mr. Syed, the Appellate Court observed that "[w]here language is included providing for a right in one provision, but not in a related provision, it suggests that the absence of comparable language was by design." *Lee*, 257 Md. App. at 543 (cleaned up). The Appellate Court noted that the State's Attorney for Baltimore County proposed adding language to the bill to provide that the victim has a "right to be heard at the hearing[,]" and, in opposing the bill, the Maryland Judiciary stated: "[T]he bill indicates that in addition to a right to notice, a victim has a right to attend a hearing but it is not clear under this legislation if the victim has a right to be heard at the hearing." *Id.* at 543-44 (quoting e-mail from Scott Shellenberger, Balt. Cnty. State's Att'y, to Del. Erek Barron (Feb. 25, 2019) (attached as

exhibit to Letter from Del. Erek Barron to Md. Gen. Assemb. H. Jud. Comm., H.B. 874, 2019 Leg., 439th Sess. (Feb. 25, 2019) and Memorandum from Suzanne D. Pelz, Esq., Md. Jud. Conf., to Md. Gen. Assemb. H. Jud. Comm., H.B. 874, 2019 Leg., 439th Sess. (Feb. 20, 2019)). Despite the attention paid to the lack of language in the bill referencing a right to be heard, the General Assembly did not add such language to it.

However, when "engaging in statutory interpretation, legislative inaction is seldom a reliable guide in discerning legislative intent." *Smith v. Westminster Mgmt., LLC*, 257 Md. App. 336, 372 (2023), *aff'd*, 486 Md. 616 (2024). That is the case because there are often myriad reasons why the General Assembly may decide not to adopt proposed legislation, including the General Assembly's belief that the objectives of a proposed bill are already covered elsewhere in Maryland law. *See, e.g.*, *Sacchet v. Blan*, 353 Md. 87, 93-94 (1999); *Police Comm'r of Balt. City v. Dowling*, 281 Md. 412, 420-21 (1977).[22]

### c. CP § 11-403

Respondents contend that the right to be heard at a vacatur hearing emanates from CP § 11-403, which provides: "[T]he court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition[.]" *Id.* § 11-403(b). This right applies at a "sentencing or disposition

---

[22] It is tempting to infer too much from the General Assembly's inclusion in the Vacatur Statute of the victim's right to notice of and to appear at the Vacatur Hearing, while failing to include a right to be heard. Victims already had the rights to notice of and to appear at a vacatur hearing under CP §§ 11-104(f), 11-503(a)(2), (a)(7), and (b), and 11-102(a). Because the inclusion of the rights to notice and attendance in subsection (d) of the Vacatur Statute were redundant of rights granted elsewhere, we decline to infer that their inclusion implied an intention by the General Assembly to exclude other rights granted elsewhere, such as the right to be heard.

51

hearing," which the statute defines as "a hearing at which the imposition of a sentence, disposition in a juvenile court proceeding, *or alteration of a sentence … is considered." Id.* § 11-403(a) (emphasis added).

Respondents argue that vacatur of a conviction results in the ultimate alteration of a sentence – its complete elimination – and therefore the right to be heard set forth in CP § 11-403 applies to a vacatur hearing. Mr. Syed disagrees with this proposition. He contends that a victim's right to address a court under § 11-403 applies only to proceedings in which a court considers directly imposing or altering a sentence, as opposed to proceedings in which a court sets aside a sentence by vacating the associated conviction.

We agree with Respondents that a vacatur hearing is a "hearing at which … alteration of a sentence … is considered[,]" CP § 11-403(a), and, therefore, a victim has the right under § 11-403 to be heard at such a hearing. The dictionary definition of "alteration" is "a change; modification or adjustment[.]" Dictionary.com, *Alteration*, https://perma.cc/N788-4HM7; *see Chow v. State*, 393 Md. 431, 445 (2006) (explaining that it is proper to consult a dictionary for a term's ordinary and popular meaning). When a conviction is vacated, the associated sentence is necessarily changed. Thus, the vacatur of a conviction necessarily results in the "alteration of a sentence." As such, it is impossible to "consider" vacating a conviction without also considering the "alteration of a sentence."

The Appellate Court recognized that "[i]t certainly can be argued that the vacatur of a defendant's conviction is the ultimate alteration of a sentence, in the sense that it sets it aside." *Lee*, 257 Md. App. at 545. In our view, however, the point is not only arguable, but

52

clearly established: if a court grants a motion to vacate a conviction under CP § 8-301.1, the court necessarily alters the sentence for that conviction.

Statutory language is not read in a vacuum or interpreted based only on the isolated section at issue in a case. *Lockshin*, 412 Md. at 275. Instead, "the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Id.* at 276. We presume that the Legislature intended for its enactments to operate together and seek to harmonize a statute's parts "to the extent possible consistent with the statute's object and scope." *Id.* We see nothing in the text of CP § 11-403 that suggests this statute is not broad enough to include the right of a victim to be heard at a vacatur hearing.

Mr. Syed argues for a narrower construction of CP § 11-403 "because a victim impact statement contemplated by the statute is relevant only to a court's exercise of discretion in imposing a sentence or juvenile disposition[,]" as opposed to altering a sentence through vacatur of a conviction, which he contends does not involve a court's exercise of discretion. We disagree.

The phrase "victim impact statement" is nowhere found in CP § 11-403.[23] Rather, § 11-403 says that, at a hearing where a court will consider imposing or altering a sentence,

_____

[23] In contrast, CP § 11-402 specifically addresses written "victim impact statements," and provides that such statements "shall": (1) identify the victim; (2) itemize any economic loss suffered by the victim; (3) identify any physical injury suffered by the victim and describe the seriousness and permanent effects of such injury; (4) describe any change in the victim's personal welfare or familial relationships; (5) identify any request for psychological services initiated by the victim or the victim's family; (6) identify any request by the victim to prohibit the defendant from having contact with the victim as a

the court, if practicable, "shall allow the victim or victim's representative to address the court under oath before the imposition of sentence or other disposition[.]" CP § 11-403(b).[24] Moreover, § 11-403(c) provides that a defendant "may cross-examine the victim or victim's representative[,]" but only as to "the factual statements made to the court." This suggests that the General Assembly contemplated that victims would have the right to be heard at "a sentencing or disposition hearing" not just as to factual matters, such as the impact of the defendant's criminal acts on the victim, but also as to legal issues, including (but not necessarily limited to) the type and length of sentence the victim believes the court should impose.

At a hearing where the alteration of a sentence is being considered, the victim's focus in many instances will likely shift from the impact of the defendant's criminal acts on the victim (which the victim likely would have addressed at the initial sentencing hearing) to the question of whether the original sentence should be altered. Although there may well be some overlap in the victim's remarks at both the original sentencing hearing and a hearing where alteration of the original sentence is being considered, in many cases the victim will discuss new points at a hearing where the alteration of a sentence is a possibility. *See State v. Beltran*, No. KNL-CR17-0336735-T, 2023 WL 3992415, at *2

---

condition of probation or release; and (7) contain any other information related to victim impact that the court requires. *See id.* § 11-402(e).

[24] The phrase "the imposition of sentence or other disposition" in CP § 11-403(b) necessarily includes an alteration of a sentence, given that § 11-403(a) defines a "sentencing or disposition hearing" as including a hearing where an alteration of sentence is considered.

(Conn. Super. Ct. May 16, 2023) ("Victim input is no small issue in these matters.... With a request for modification the victims and their families discover the case is not over. The sentence which was negotiated with their input is now possibly being lowered. The victim in this case is strongly opposed to any modification."). At that type of hearing, the victim's focus may well shift to the justice and fairness of altering the sentence. *See, e.g.*, *State v. A.M.*, 286 A.3d 660, 667 (N.J. 2023) (noting that victim's daughters opposed compassionate release because, among other things, the defendant "had shown no remorse for her crime and no compassion for its effect on their lives"); *United States v. Bischoff*, 460 F. Supp. 3d 122, 124 (D.N.H. 2020) (noting that victims opposed sentence reduction due to seriousness of defendant's crimes and "also reported that [defendant's] company ... is still in existence. They are concerned that if released [defendant] will again engage in the same fraudulent schemes.").

Similarly, at a hearing on a motion to vacate, the victim may want to be heard on the justice and fairness of vacating the conviction. This very point – that "the interest of justice and fairness justifies vacating the … conviction" – is a discretionary determination that a court must make before it may grant a vacatur motion. CP § 8-301.1(a)(2); *see also id.* § 8-301.1(f)(1) ("In ruling on a motion filed under this section, the court, *as the court considers appropriate*, *may*: (i) vacate the conviction or probation before judgment and discharge the defendant; or (ii) deny the motion.") (emphasis added).[25] This discretionary

---

[25] Thus, Mr. Syed is incorrect when he describes a vacatur hearing as requiring the court only to make non-discretionary determinations. In order to grant a vacatur motion, a court must consider both discretionary and non-discretionary matters. We discuss the input a victim may have with respect to the court's non-discretionary determinations below.

determination is fundamentally similar to the court's exercise of discretion when initially sentencing a defendant or when considering whether to grant a motion for sentence modification under Maryland Rule 4-345(e). Given a victim's interest in the finality of a judgment of conviction, which of course includes the sentence, it would be illogical to interpret CP § 11-403's text as providing a right to be heard as to the justice and fairness of a requested modification of a sentence, but not as to the justice and fairness of vacating a conviction and thereby setting aside a sentence completely.

Additionally, the cross-reference in Maryland Rule 4-333(h) supports the conclusion that CP § 11-403 bestows upon a victim the right to be heard at a vacatur hearing. Rule 4-333(h) contains a cross-reference to § 11-403 immediately after the rule sets forth provisions relating to conducting a vacatur hearing under CP § 8-301.1. The cross-reference states: "For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see … [CP] § 11-403." Notably, the cross-reference refers to § 11-403(a)'s phrase "sentencing or disposition hearing," which by definition includes a hearing in which an alteration of a sentence is considered. In addition, the Reporter's Note to Rule 4-333 states that the cross-reference was included "to highlight the right of the victim or victim's representative to address the court during a sentencing or disposition hearing." Md. Rule 4-333, rep.'s note at 17. This Reporter's Note was before the Court when it voted to adopt Rule 4-333, including the cross-reference to CP § 11-403. Regardless of whether any member of this Court expressly discussed the meaning of the cross-reference at the Rules Meeting when the Rule was considered, it is clear that in adopting Maryland Rule 8-433, which implements CP § 8-301.1, this Court was of the

opinion that a victim has a right to be heard at a vacatur hearing and that the victim's right to be heard is governed by CP § 11-403. There would be no reason to highlight the victim's right to be heard under § 11-403 with a cross-reference if the Rules Committee and, ultimately, this Court believed that this right does not apply at a vacatur hearing. If there were no link between conducting a vacatur hearing under CP § 8-301.1 and the right to be heard provided in CP § 11-403, this Court's adoption of the cross-reference would have been superfluous.[26]

---

[26] *Amicus Curiae* National Association of Criminal Defense Lawyers argues that the purpose of the cross-reference in Rule 4-333 is to contrast the express grant of the right to be heard at a sentencing hearing in CP § 11-403 with the absence of such an express right in the language of the Vacatur Statute; *see also Lee*, 257 Md. App. at 546 ("This cross-reference, … read in context with the statutory scheme, and in the absence of specific language in Rule 4-333 indicating that the victim has a right to be heard, suggests that it is listed as a comparison to victims' rights in sentencing hearings, where the victim does have the right to be heard."). As discussed in the text, we view the cross-reference differently.

Mr. Syed correctly notes that the cross-reference to § 11-403 is not part of Rule 4-333 itself. *See* Md. Rule 1-201(e) ("Headings, subheadings, cross references, committee notes, source references, and annotations are not part of these rules."). However, a cross-reference may nevertheless aid in interpretating the rule in which it is contained or a related statute. *See, e.g.*, *Alarcon-Ozoria v. State*, 477 Md. 75, 105-06 (2021) (citing, among other things, a Rules Committee cross-reference to a case and "persuasive commentary of the Rules Committee" to determine compliance with the due diligence requirements of Rule 4-263, explaining that "[t]he Rules Committee added ... the cross-reference ... to illustrate, in part, the limits of the obligation of due diligence"); *O'Donnell v. McGann*, 310 Md. 342, 349-50 (1987) (concluding that former Rule H4(a) "was clearly applicable to supersedeas bonds" in part because "a cross reference incorporated at the time of the adoption of the H rules stated that '[t]he following rules contain other provisions applicable to judicial bonds'"); *Permanent Fin. Corp. v. Taro*, 71 Md. App. 489, 494-95 & n.6 (1987) (concluding that former Rule BD1 "implicitly acknowledge[d]" certain limits to the doctrine of *lis pendens*, in part because the rule included a cross-reference to a property law treatise that espoused those limits).

To summarize our analysis so far, we conclude that CP § 11-403 is unambiguous. The plain language of § 11-403 provides that a victim has the right to be heard at "a hearing at which the imposition of a sentence, disposition in a juvenile court proceeding, *or alteration of a sentence* … is considered." CP § 11-403(a) (emphasis added). As discussed, the vacatur of a conviction necessarily results in the alteration of a sentence.

To the extent one can argue that there is any ambiguity in CP § 11-403, nothing in the legislative history of that statute, or in the legislative history of Article 47, or in any other source we have located suggests that the General Assembly intended for victims to have the right to be heard only where a sentence may be reduced but the underlying conviction will remain intact. To the contrary, the concerns that led to the inclusion of the right to be heard in Article 47 and the implementation of that right in the VRA included concepts such as the emotional toll of being a victim, the need for closure, and recovery from trauma – concepts that are implicated as much in the vacatur context as they are at an original sentencing hearing or at a hearing on a motion to modify a sentence. For example, testifying in support of the proposed constitutional amendment, the National Director of Justice Fellowship observed: "If crime victims get their day in court, it is most often as a witness for the state. Even then, most victims find that no matter how effectively they present their testimony to a judge or jury, many of their concerns are not addressed. Usually victims are not allowed to talk about their fear or anger or about the emotional cost of their losses[.]" Prepared Statement of Richard L. Templeton, National Dir., Justice Fellowship in support of S.B. 300 (Feb. 10, 1994); *see also* Letter from Eugene P. Bartell, Exec. Dir., Cmty. Servs. Admin., to Hon. Joseph F. Vallario in support of S.B. 300 at 1-2 (March 29,

58

1994) (opining that the constitutional amendment "will make the criminal justice system fair and just for victims of crime" as "[t]he right to be informed, to be present and to be heard is key to the recovery from the trauma of victimization").

Similarly, victims and victims' rights organizations urged passage of the VRA, in part, because the right to be heard implemented by that legislation would help provide "closure." *See, e.g.*, CrimeStrike, Memorandum of Support re: House Bill 768, The Victims' Rights Act of 1997 at 1-2 (Feb. 25, 1997) ("All of the 'details' in HB 768 are necessary to implement crime victims' rights, but CrimeStrike particularly wants to highlight the importance of victim notification *and articulation during post-conviction proceedings.…* The system, in effect, was denying [family members of homicide victims] closure they needed to come to terms with their tremendous loss.") (emphasis added).

At the Vacatur Hearing, Mr. Lee told the court that he had "been living with this for 20 plus years and every day when I think it's over … [i]t always comes back. And it's not just me, killing me and killing my mother and it's really tough … just going through this again and again and again…. [I]t's living a nightmare over and over again." He described the same type of emotional toll, lack of closure, and re-traumatization that prompted the General Assemblies of the 1990s to pass the legislation that became Article 47 and to enact the VRA. In the absence of any indication in the legislative history of the VRA that the General Assembly intended to distinguish between a victim's emotional toll when a sentence may be reduced and a victim's emotional toll when a conviction may be set aside entirely by way of vacatur, we decline to interpret CP § 11-403 in a way that would do just that.

Finally, an interpretation of CP § 11-403 that excludes a vacatur hearing from inclusion as "a hearing at which the … alteration of a sentence … is considered" would lead to absurd results. As the State aptly puts it in its brief, "[i]f a victim has the right to address the court before the mere alteration of a sentence, surely a victim has the same right to address the court when a sentence may be vacated entirely." For example, suppose a defendant who is sentenced to serve 20 years in prison for a violent crime timely moves for a sentence modification under Maryland Rule 4-345(e). Shortly before the five-year time limit to rule on such a motion is set to expire, the court sets the motion in for a hearing. It is beyond dispute that, even if Maryland Rule 4-345(e)(3) did not refer to a victim's right "to be heard as allowed by law" on such a motion, CP § 11-403 would require the court to allow the victim to be heard before granting the defendant's motion for a sentence reduction. Now imagine that, after hearing from the victim who opposes any reduction in the sentence, the court nevertheless grants the motion and resentences the defendant to 10 years of imprisonment, all suspended. The defendant is immediately released from prison. The victim will likely be disappointed by the outcome, but the victim can take some solace from knowing that they were heard.

Now suppose that after the sentence is reduced to a 10-year suspended sentence, the State moves to vacate the defendant's conviction under CP § 8-301.1. At the hearing on the motion to vacate, the circuit court denies the victim's request to be heard. In Mr. Syed's view, that decision would not violate CP § 11-403. According to Mr. Syed, the same victim who had a right to be heard before the sentence was reduced would have no right to be heard before the court vacated the sentence entirely. We do not agree that, in implementing

60

the right to be heard at sentence-related hearings in the VRA, the General Assembly intended to provide a victim with the right to be heard before a court reduces a sentence but to allow the court to silence the same victim when the entire sentence is on the line.

In sum, we are persuaded by Respondents' interpretation of CP § 11-403. We hold that § 11-403 provides a victim with the right to be heard at a vacatur hearing.

### d. Article 47

Article 47(b) of the Declaration of Rights also supports our conclusion that a victim has the right to be heard at a vacatur hearing. Article 47 was enacted in 1994 and guarantees victims of crimes certain rights. Article 47(a) requires that victims be treated with "dignity, respect, and sensitivity" by State agents during all phases of the criminal justice process. Article 47(b) provides:

> In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

We will not dwell on the phrase "upon request" in Article 47(b), as its application will depend on the facts of each case. Here, Mr. Lee made clear his request to be heard at the Vacatur Hearing.

The "if practicable" language also need not detain us long. The bill file for the legislation that was the prerequisite for placement of Article 47 on the ballot contains a letter from Assistant Attorney General Robert A. Zarnoch, Counsel to the General Assembly, to Governor William Donald Schaefer's Chief Legislative Officer concerning

the proposed constitutional amendment. In his letter, AAG Zarnoch wrote that "practicable" ordinarily means "that which is 'capable of being put into practice, done[,] or accomplished.'" Letter from AAG Robert A. Zarnoch to Bonnie A. Kirkland, at 3 (Feb. 4, 1994) (quoting *Holyfield v. State*, 63 S.W.2d 386, 388 (Tex. Crim. App. 1933)). Under this definition of "practicable," it is clear that it is practicable for a circuit court to allow a victim to be heard at a vacatur hearing.[27] Indeed, the circuit court permitted Mr. Lee to speak at the Vacatur Hearing, albeit before the parties made their presentations in support of the Vacatur Motion.[28] Thus, the only language in Article 47 concerning the right to be heard that could affect Mr. Lee's right to be heard at a vacatur hearing is the phrase "as these rights are implemented[.]"

But, the language of Article 47(b) is plain and unambiguous: it instructs that a victim's right to notice, to attend, and be heard at a criminal justice proceeding be implemented where the relevant terms are implicated by law and where it is practicable to do so. In its plain language, Article 47(b) is a broad grant of the right to be heard (and other rights specified in that provision). To the extent the rights referenced in Article 47(b) did

---

[27] In contrast, providing a victim with a right to testify or otherwise be heard at a criminal trial would not be practicable. *See* Letter from AAG Robert A. Zarnoch to Del. Brian E. Frosh, at 1-2 (Feb. 18, 1994) (reasoning that it would not be practicable to allow a victim to testify as a witness at trial if the victim has not been called to do so by either side).

[28] As discussed below, a victim must be permitted to address the merits of the parties' presentations in support of a vacatur motion if the victim (or the victim's counsel) wishes to do so. However, the fact that Mr. Lee spoke at all at the Vacatur Hearing demonstrates that it is practicable to permit a victim to be heard at such a hearing. At oral argument, counsel for Mr. Syed acknowledged this point.

not yet exist in Maryland law, the constitutional amendment directed that the General Assembly "implement" them, where "practicable" in "criminal justice proceedings," in order to give form to those rights. Thus, Article 47 was not self-executing.

In turn, the General Assembly has created new criminal justice proceedings and has implemented new and broader rights for victims since Article 47 went into effect. The plain language of Article 47 dictates that, as such new or additional rights relating to notice, attendance, and being heard are "implemented" – thereby obtaining the force of law – they take on constitutional significance. That is, Article 47 prevents the General Assembly from repealing any right to notice, to attendance, or to be heard at a criminal justice proceeding after that right is enacted, in the absence of a new constitutional amendment authorizing such legislative action. *See Conaway v. Deane*, 401 Md. 219, 315 (2007) ("As the Supreme Court stated, '[b]y extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action.'") (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997), *abrogated on other grounds by Obergefell v. Hodges*, 576 U.S. 644 (2015)); *Pa. R.R. Co. in Md. v. Balt. & Ohio R.R. Co.*, 60 Md. 263, 267 (1883) (railroad company charter that was "within the protection of the Constitution of the United States … could not therefore be repealed, or in any manner impaired or affected by any subsequent legislation to which the company did not give its assent or accept").[29]

---

[29] A letter from an organization in support of the legislation that put Article 47 on the ballot made this point: "Providing the … rights [of notice, attendance, and to be heard] by statute is not an acceptable approach. Statutes are instruments of social policy and can be easily changed to reflect current views. It was precisely for this reason that the framers

The VRA implemented a victim's constitutional rights to notice of, and to be heard at, certain criminal justice proceedings, and expanded a victim's right to attend a defendant's trial. And some victims' rights laws in effect today are broader still than the rights that were enacted shortly after the passage of Article 47. Compare 1996 Md. Laws 3324 (ch. 585) (allowing victim to be sequestered after a general finding of good cause) *with* 2001 Md. Laws 322-23 (ch. 10) (setting forth specific findings of fact that a court must make on the record before sequestering a victim). Once the General Assembly implemented victims' rights to notice, attendance, and to be heard in the VRA and in subsequent legislation, the General Assembly could not repeal those provisions, barring a subsequent constitutional amendment that provided legislative authority to do so. In effect, Article 47 creates a one-way ratchet for the rights of notice, attendance, and to be heard: any new victims' rights provisions that are "implemented" regarding these rights obtain the same constitutional protection that applies to pre-existing victims' rights laws, meaning that post-Article 47 provisions regarding notice, attendance, and the right to be heard may not be repealed, absent a change to Article 47. If the opposite were true – if the General Assembly could repeal or otherwise weaken victims' rights without amending Article 47 – then the fact that these rights are enshrined in the Declaration of Rights would be meaningless. *See Schisler v. State*, 394 Md. 519, 590 n.51 (2006) ("Whatever the extent of the Legislature's 'plenary' power, it is subordinate to the 'organic' law of this State – the

---

of the Constitution included protections for [criminal defendants] in the Bill of Rights." Letter from Karen A. Smith, Legal Dir., People Against Child Abuse, Inc. in support of S.B. 300 (Feb. 9, 1994).

Maryland Constitution. When the provisions of the Constitution are violated, the 'plenary' power, if any, of the Legislature must yield.") (plurality op.).

Against this constitutional backdrop, the relevant question becomes: Would it violate Article 47 for the General Assembly to pass a law that creates a new "criminal justice proceeding" – such as a hearing on a motion to vacate under CP § 8-301.1 – that fails to grant a victim the right to be heard at that proceeding, where it would be practicable to permit a victim to be heard upon request?

We conclude that the General Assembly may not create a new criminal justice proceeding without affording victims the rights to notice, attendance, and to be heard at such new proceeding *unless* the General Assembly makes clear on the face of the legislation or in unambiguous legislative history that it finds it would not be practicable to provide one or more of those rights to victims with respect to the new criminal justice proceeding. If, as is the case with CP § 8-301.1, there has not been a legislative finding of impracticability,[30] a reviewing court must consider whether the new criminal justice

---

[30] Contrary to expressing concerns about practicability, during consideration of the bill that became CP § 8-301.1 several legislators and witnesses/commenters stated that victims would be allowed to be heard at vacatur hearings. In his opening statement at the House Judiciary Committee hearing on the bill, Delegate Erek Barron, who sponsored the legislation, said that "any named victim should be heard" during a vacatur hearing. Statement of Del. Barron, House Jud. Comm. Hearing, Feb. 26, 2019 (available at https://perma.cc/JCL2-EF6G). In response to a question from Delegate Charles Sydnor whether a victim would have the right to be heard at a vacatur hearing, Tony Gioia, a representative of the Baltimore City State's Attorney's Office, stated that victims "would have the right to address the court, they most certainly would." Maryland Public Defender Paul DeWolfe stated that it was important for victims "not only to be present" at vacatur hearings but also to "weigh in and give statement[s]." In addition, the bill file for the legislation includes a letter from Professor Douglas Colbert of the University of Maryland, Francis King Carey School of Law, in support of the bill, in which Professor Colbert wrote

65

proceeding is similar to one or more extant criminal justice proceedings where the General Assembly has previously granted victims the right(s) that is missing with respect to the new criminal justice proceeding. If the missing right has previously been implemented with respect to a similar criminal justice proceeding, then the new statute that omits the right in question violates Article 47.

A contrary regime – in which the General Assembly could opt to provide victims in one or more criminal justice proceedings with the rights to notice, attendance, and to be heard, but could opt *not* to provide those same rights to victims with respect to similar criminal justice proceedings – would fail to live up to the constitutional requirement that all victims be treated with dignity, respect, and sensitivity. We reject the notion that, in adopting Article 47, Maryland voters intended to allow the General Assembly to give victims in some criminal justice proceedings more rights than victims in similar criminal justice proceedings, where it is practicable to give both sets of victims the same rights.[31]

Our view of what Article 47 requires in the context of a victim's right to be heard is consistent with additional advice that AAG Zarnoch provided during the General Assembly's consideration of the legislation that led to adoption of the constitutional

---

that the bill "provides the requisite due process that allows a judge to review the grounds raised and the newly-discovered evidence presented, while giving notice to the defendant and crime victim to attend and presumably the opportunity to respond and be heard." Letter from Douglas Colbert to Del. Luke Clippinger (Feb. 25, 2019).

[31] As Mr. Syed explained in his opening brief, "Article 47 of the Declaration of Rights and its implementing statutes couch the rights of victims and their representatives in terms of what is 'practicable.' Under Article 47, 'a victim of crime shall have the right … upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented[.]'" Petitioner's Brief at 30.

amendment. In response to Delegate Brian Frosh's question concerning whether, under the proposed constitutional amendment, a victim would have the right to testify on demand at a criminal trial, AAG Zarnoch stated:

> [I]t is likely that the proposed amendment will be construed with an eye on victim's rights provisions found in existing law, particularly Art. 27, §761. Section 761(12)[32] suggests the kind of right to be "heard" that is contemplated by the proposed amendment. Under this statute a victim may address the judge or jury or have a victim impact statement read by the judge and jury at sentencing, before the imposition of the sentence or at any hearing to consider altering the sentence. No mention is made of a victim's right to testify during the trial.

Letter from AAG Robert A. Zarnoch to Del. Brian E. Frosh, at 2 (Feb. 18, 1994). AAG Zarnoch also advised that, under the proposed constitutional amendment, "[w]hen it is reasonably possible to provide the rights in question," – i.e., when it is "practicable" to do so – "they must be provided." Letter from AAG Robert A. Zarnoch to Bonnie A. Kirkland, at 3 (Feb. 4, 1994).

AAG Zarnoch's analysis is on point here. Article 47 requires that victims be afforded the rights to notice, attendance, and to be heard in connection with criminal justice proceedings that are similar to those proceedings as to which victims have such rights "in existing law," unless it is clear that the General Assembly has determined it is not practicable – *i.e.*, reasonably possible – to do so. Even if CP § 11-403 were not broad enough to apply to a vacatur hearing, we would conclude that a hearing where the

---

[32] As mentioned above, Article 27, § 761(12) was a pre-Article 47 provision in the Maryland Code that allowed a victim (on request of the State's Attorney and in the discretion of the court) to address the court or jury "at sentencing before the imposition of sentence or at any hearing to consider altering the sentence." Md. Code Ann., art. 27, § 761(1) (1987 Repl.).

"alteration of a sentence" is considered is similar enough to a vacatur hearing to require the provision of a right to be heard at the latter proceeding.[33]

In granting Mr. Lee's cross-petition for a writ of certiorari, we agreed to decide whether a victim has the right to be heard at a vacatur hearing. It is beyond dispute that a victim's right to be heard in Maryland criminal justice proceedings emanates from Article 47(b). Given Article 47's centrality to questions concerning victims' rights, the parties relied on Article 47 in their briefs for many points. In his opening brief, quoting the text of Article 47, Mr. Syed asserted that "Article 47 of the Declaration of Rights and its implementing statutes couch the rights of victims and their representatives in terms of what is 'practicable.'" Petitioner's Brief at 30. Also, quoting Article 47, Mr. Lee stated that "[t]he Maryland Declaration of Rights requires state agents to treat crime victims with 'dignity, respect and sensitivity during all phases of the criminal justice process[,]'" and that "[t]his broad grant engendered a suite of victims' rights." Brief for Appellee/Cross-Appellant at 20. In its brief, the State noted that "victims' rights in Maryland have both a constitutional and statutory dimension." Brief for Respondent, the State of Maryland at 24. And, adding to the parties' discussion of Article 47, Mr. Lee pointed out that the right to be heard is a constitutional right. Reply Brief for Appellee/Cross-Appellant at 1-2.

Article 47 was also discussed by several *amici curiae* in their briefs. *See, e.g.*, Brief of Amicus Curiae Maryland Crime Victims' Resource Center, Inc. at 14 (arguing that

---

[33] Because CP § 11-403 provides a victim with the right to be heard at a vacatur hearing, we need not decide whether the Vacatur Statute may be unconstitutional on its face or as applied to Mr. Lee.

caselaw, the Maryland Rules, and CP § 11-403 "supply the legal authority, guaranteed by Article 47(a)&(b) of the Maryland Declaration of Rights, that crime victims must be heard at any criminal justice proceeding when the alteration of a sentence … is being considered"); Brief of *Amicus Curiae* The National Crime Victim Law Institute at 2-3 ("The Maryland Constitution contains a clear mandate – victims 'shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.'") (quoting Article 47(a)); *Amicus Curiae* Brief of the National Association of Criminal Defense Lawyers in Support of Petitioner Adnan Syed at 5-6 (citing Article 47 for the proposition that the rights to notice, attendance, and to be heard do not "apply in every type of proceeding").

At oral argument, there were multiple questions concerning the right to be heard referenced in Article 47, and all counsel addressed Article 47 in that regard. *See* Oral Argument at 20:20 (in response to question about Article 47, Mr. Syed's counsel stating that rights in existence at the time Article 47 was adopted may not be changed without a further constitutional amendment); 27:50 (in discussing the right to be heard, Mr. Lee's counsel referring to "the penumbra of the constitutional protections that are provided to victims"); 28:35 (Mr. Lee's counsel arguing that the right to be heard exists in Article 47); 30:30 (Mr. Lee's counsel arguing that when statute is silent about right to be heard, that right exists as provided by Constitution); 52:55 (State agreeing with Mr. Lee that, with respect to the right to be heard, "there's a constitutional principle generally that's at play here").

Thus, Justice Booth is incorrect when she states that "the Majority has decided to reach constitutional issues that were not argued or briefed before this Court." Dissenting Op. of Booth, J., at 59. Justice Booth also is wrong when she characterizes our analysis as "crossing the impermissible separation of powers line" and "attempting to tie the General Assembly's hands *when it enacts future legislation*." Dissenting Op. of Booth, J., at 50, 62. To the contrary, we engage here in the core judicial function of constitutional interpretation. No more, no less.

2. <u>A Victim's Right to Be Heard at a Vacatur Hearing Includes the Right to Address the Merits of the Motion to Vacate, Personally or Through Counsel.</u>

The circuit court permitted Mr. Lee to address the court before what the court described as the start of the Vacatur Hearing. But Mr. Lee did not have the benefit of hearing the parties' presentations in support of the Vacatur Motion before he addressed the court. In addition, the court declined Mr. Kelly's request to "just say a couple of sentences" after Mr. Lee concluded his remarks.[34]

Mr. Lee argues that a victim has a right not just to speak generally at a vacatur hearing, but has the right specifically "to address the evidence[.]" According to Mr. Lee, allowing a victim to address the evidence is necessary because the prosecutor and defendant are aligned at a vacatur hearing. Mr. Lee asserts that, at a vacatur hearing, the victim is the one potential adversary present who may assist the circuit court's factfinding with respect to the non-discretionary aspects of the inquiry by pointing out problems with

---

[34] In denying Mr. Kelly's request to speak briefly, the circuit court noted that it had heard from Mr. Kelly earlier. However, the court had only heard from Mr. Kelly concerning the motion for a continuance of the hearing.

the parties' positions. On appeal, the State agrees that, "where the victim [is] the only one taking an adversarial position to the granting of the motion, the victim's input could alert the circuit court to shortcomings in the State's presentation or lead the court to ask questions that it might not otherwise have posed."

We agree with Respondents that the victim's right to be heard at a vacatur hearing includes the right to address the merits of the vacatur motion after the prosecutor and the defense have made their presentations in support of the motion. After hearing the evidence adduced at the hearing, if the victim believes the State has not met its burden of proof under CP § 8-301.1(g), the victim must have the right to explain why the victim believes that to be the case and to ask the court to deny the motion. If, as happened here, the victim is only permitted to speak before the parties have concluded their presentations, the victim does not have the opportunity to fully address the merits of the motion. This undermines the victim's ability to have meaningful input into the court's decision-making process, thereby devaluing the victim's right to be heard. *Cf. Antoine*, 245 Md. App. at 547 (reasoning that "[t]he statutory rights to present victim impact evidence are … meaningful only if they are afforded before a trial court formally binds itself to a particular disposition of a case"). Having gone through the process that led to the conviction of the defendant – which sometimes can involve years of stressful proceedings – a victim should not be forced to stand silent concerning what the victim believes to be the flaws in the prosecutor's evidentiary submission or the legal correctness of a vacatur motion. Such a scenario would not treat the victim with the dignity, respect, and sensitivity that Article 47 requires.

If a victim is represented by counsel at a vacatur hearing, the court must permit counsel to address the merits of the motion to vacate following the parties' presentations in support of the motion, if counsel wishes to do so. *Cf.* Md. Rule 1-331 ("Unless otherwise expressly provided and when permitted by law, a party's attorney may perform any act required or permitted by these rules to be performed by that party."). To that end, the judge presiding at a vacatur hearing where a victim is represented by counsel should typically inquire whether the victim, the victim's attorney, or both the victim and the victim's attorney wish to be heard. When the victim has a potential legal issue to raise before the court – and especially when the issue is complex – the assistance of the victim's counsel can be critical in vindicating the victim's right to be heard meaningfully. Additionally, in a case like this one, where the prosecutor and defendant both seek a vacatur, the victim's attorney can help the court, just as the adversarial process aids the court in virtually every other court proceeding. Because the parties here were not in an adversarial posture on the issue before the circuit court, neither the State nor Mr. Syed was well-positioned to present a contrary position to assist the circuit court in analyzing the vacatur issue. By presenting adversarial positions in these sorts of cases, victims and their counsel can aid the judicial factfinding and decision-making process.[35] *Cf. In re Riddlemoser*, 317 Md. 496, 505 (1989)

---

[35] The benefit of adversarial proceedings to judicial decision-making is well-recognized generally. For instance, the U.S. Supreme Court regularly invites *amici* to participate in briefing, among other things, to fill the gap in argument when a litigant changes course or abandons a position, when the Court raises an issue that it wants to consider, or when a party simply fails to participate. *See generally* Katherine Shaw, *Friends of the Court: Evaluating the Supreme Court's Amicus Invitations*, 101 Cornell L. Rev. 1533, 1565-68 (2016) (noting that the Court's *amicus* invitations can avoid "undermining

(noting that questions with "serious implications" tend to show "the wisdom of an adversarial airing between contesting parties, which is so essential to the integrity of the judicial process"); *White v. State*, 223 Md. App. 353, 390 (2015) (noting the benefit of "rigorous adversarial testing that is the norm of Anglo-American criminal proceedings") (internal quotation marks and citation omitted).

In this case, Mr. Lee was not afforded the opportunity personally or through his attorney to address the merits of the Vacatur Motion following the parties' presentations in support of the motion. For the reasons discussed above, this was error. In addition, it was error for the circuit court to conduct an off-the-record *in camera* hearing at which the court reviewed evidence in support of the Vacatur Motion – evidence that the parties did not introduce at the subsequent hearing in open court.[36] Thus, even if Mr. Lee had been permitted to speak at the Vacatur Hearing following the presentations by Ms. Feldman and Ms. Suter in support of the Vacatur Motion, Mr. Lee would not have been able to address the complete evidentiary submission. Going forward, barring unusual circumstances that

___

[the Court's] ability to answer important questions" where there is not a sufficient adversarial presentation from the parties).

[36] The record could lead a reasonable observer to infer that the circuit court decided to grant the Vacatur Motion based on the *in camera* submission it received in chambers, and that the hearing in open court a few days later was a formality. As Justice Watts noted at oral argument, there seemed to be a pre-determined understanding at the Vacatur Hearing of what the *Brady* violation would constitute, as well as a pre-determined knowledge between the parties that Mr. Syed would be placed on electronic monitoring and that there would be a press conference outside the courthouse immediately after the hearing. This raises the concern that the off-the-record *in camera* hearing – of which Mr. Lee had no notice and in which neither he nor his counsel participated in any way – was the hearing where the court effectively ruled on the Vacatur Motion, and that the result of the hearing that occurred in open court was a foregone conclusion.

are not present here (such as a victim's representative being a suspect), courts should ensure that victims are able to respond to all evidence upon which the parties choose to rely in seeking vacatur of a conviction under CP § 8-301.1.[37]

3. <u>A Victim Does Not Have the Right to Call Witnesses or Present Evidence at a Vacatur Hearing.</u>

Mr. Lee further argues that a victim has the right to participate as a party in a vacatur hearing, including cross-examining witnesses called by the State's Attorney and the defense, and calling witnesses of their own. The State and Mr. Syed disagree with Mr. Lee's view that a victim has full participatory rights at a vacatur hearing. We agree with the State and Mr. Syed on this point.

There is nothing in Article 47, the Vacatur Statute, or Maryland's other victims' rights statutes that contemplates giving party status to a victim. Indeed, it would be problematic to permit victims to participate in a vacatur hearing as a party because doing so would directly contradict Maryland law, which is clear on this issue. *See* CP § 11-103(b) (a victim is "not a party to a criminal or juvenile proceeding"); Md. Rule 8-111(c) (same); *see also Lopez-Sanchez v. State*, 388 Md. 214, 224 (2005) ("The non-party status of crime

---

[37] We do not suggest that a victim has the right to attend every chambers conference or every *in camera* hearing that a court may decide to conduct in a criminal case. Certainly, that would not be practicable. Our concern is with the decision of the court to conduct a portion of the vacatur hearing in the court's chambers on September 16, in the absence of Mr. Lee and his counsel. The production of all evidence in support of the Vacatur Motion should have occurred at the hearing in the courtroom on September 19. If any confidential matters had needed to be disclosed, Ms. Feldman, Ms. Suter, and Mr. Kelly could have gone into chambers together, and the court could have taken appropriate steps to ensure that, while such confidential information became part of the court record, it would remain confidential as necessary thereafter.

victims has been a central precept of Maryland criminal jurisprudence ever since public prosecution became the sole method of enforcing this State's criminal law.").

Furthermore, a circuit court can sufficiently analyze a vacatur motion without the victim acting as a party to the proceeding. Allowing a victim to address the merits of the motion following the parties' presentations is an important part of ensuring that the circuit court has sufficient information and argument to make an informed decision on a vacatur motion. We decline to read more into the right of a victim to be heard at a vacatur hearing.[38]

### C. A Victim's Right to Attend a Vacatur Hearing

We next consider whether Mr. Lee had the right to attend the Vacatur Hearing in person. Mr. Syed argues that remotely attending the Vacatur Hearing satisfied Mr. Lee's right to attend. Respondents contend that Mr. Lee had the right to attend the Vacatur Hearing in person if doing so was practicable. Because, as discussed above, a victim has the right to be heard at a vacatur hearing, and because the hearing in this case was held in person, we hold that Mr. Lee had the right to attend the hearing in person. The circuit court's denial of the requested one-week continuance prevented Mr. Lee from receiving a reasonable opportunity to attend in person and, therefore, resulted in a violation of Mr. Lee's right to attend the hearing.

We first examine the language concerning attendance in the Vacatur Statute: "A victim or victim's representative has the right to attend a hearing on a motion filed under

---

[38] We also decline to express any opinion concerning the scope of a victim's right to be heard beyond the context of a vacatur hearing.

this section, as provided under § 11-102 of this article." CP § 8-301.1(d)(2). Section 11-102, in turn, provides:

> (a) If practicable, a victim or victim's representative who has filed a notification request form under § 11-104 of this subtitle has the right to attend any proceeding in which the right to appear has been granted to a defendant.

> (b) As provided in § 9-205 of the Courts Article, a person may not be deprived of employment solely because of job time lost because the person attended a proceeding that the person has a right to attend under this section.

CP § 11-102. The Vacatur Statute does not expressly reference a right of the defendant to appear at a vacatur hearing. However, the Vacatur Rule requires that, as part of the notice to a defendant, the State's Attorney inform the defendant "of the right … if a hearing is set, to attend the hearing." Md. Rule 4-333(e). Based on this provision in the Vacatur Rule, we conclude that defendants have been granted the right to appear at vacatur hearings and that, therefore, victims who have filed the necessary notification request forms have a right to attend such hearings. The question remains, however, whether a victim's right to attend a vacatur hearing includes the right to attend in person.

The ordinary meaning of "attend" is "to be present at; go to." Webster's Ninth New Collegiate Dictionary (1984). Prior to the COVID-19 pandemic, the ordinary and popular meaning of "attend" in the context of a court hearing was "to be present at" or "go to" a hearing in person, as most court hearings were held in person. However, after being forced to move work, medical, and social appointments online during pandemic-related shutdowns, many people are no longer as quick to assume that meetings or hearings will be held in person. Today, a reasonable person could understand "attending" a court hearing

76

to include both in-person attendance and remote attendance facilitated by a video conferencing platform. Indeed, this is a reasonable understanding in the context of judicial proceedings, as remote participation by some or all parties is now allowed in certain criminal, delinquency, and civil proceedings. *See* Md. Rule 21-301 (criminal and delinquency proceedings); Md. Rule 21-201 (civil proceedings). The Vacatur Statute, however, was enacted in 2019, prior to the COVID-19 pandemic. Thus, a good argument can be made that the "right to attend," as used in CP § 8-301.1(d)(2), means the right to attend a vacatur hearing in person.

The General Assembly's incorporation of CP § 11-102 in the Vacatur Statute sharpens our understanding of the meaning of "attend" in § 8-301.1(d)(2). First, we note that CP § 11-102 was originally enacted as part of the VRA, well before COVID-19. It is highly unlikely that the General Assembly was contemplating remote attendance in 1997. Both CP § 11-102 and the Vacatur Statute, which incorporates § 11-102, therefore envision that a victim will likely attend a hearing in person if the victim attends at all. In addition, CP § 11-102 provides a victim with employment protection for job time lost because of attendance at a proceeding. CP § 11-102(b). This further supports the conclusion that, when the General Assembly used "attend" in the Vacatur Statute, at a minimum it included in-person attendance if practicable. If CP § 11-102, or the Vacatur Statute which incorporates § 11-102, contemplated that a victim would attend a proceeding by calling in from their office or job site on a break or over their lunch hour, there would be little need for this employment protection provision.

In addition to the language of the Vacatur Statute regarding attendance, our conclusion above that a victim has the right to be heard at a vacatur hearing supports the conclusion that a victim has the right to attend such a hearing in person. With so much at stake at a vacatur hearing, a victim's right to be heard would be seriously undermined if a court had unfettered discretion to exclude the victim from the courtroom where an in-person vacatur hearing is being conducted and require the victim to attend the hearing remotely. Much can be lost when a court does not have the ability to interact with a participant in person and vice versa. *See People v. Anderson*, 989 N.W.2d 832, 843 (Mich. Ct. App. 2022) ("Remote proceedings, despite the greatly improved and available technologies, simply do not compare to face-to-face interaction."), *appeal denied*, 993 N.W.2d 835 (Mich. 2023); *United States v Williams*, 641 F.3d 758, 764-65 (6th Cir. 2011) ("Being physically present in the same room with another has certain intangible and difficult to articulate effects that are wholly absent when communicating by video conference."); *United States v. Fagan*, 464 F. Supp. 3d 427, 430 (D. Me. 2020) ("From thirty years of federal sentencing, I can attest to the importance of seeing the defendant in the same room at sentencing. Physical presence makes unavoidable the recognition that – in sentencing – one human being sits in judgment of another, with a dramatic impact on the future of a living, breathing person, not just a face on a screen.").

This is not to say that there will never be times when a victim attends a vacatur hearing remotely. First, if a victim requests permission to attend and be heard at a vacatur hearing remotely, we expect that a court typically will grant that request. Second, in the event of a public health emergency, a court may choose to have all participants, including

the victim, attend a vacatur hearing remotely. Third, if a victim's inability to travel to an in-person vacatur hearing within a reasonable amount of time would necessitate an inordinate delay of the hearing, a court has discretion to require the victim and/or victim's counsel to participate in the hearing remotely.[39]

Mr. Syed's arguments in support of the circuit court's decision to require Mr. Lee to attend the hearing remotely miss the mark.[40] First, Mr. Syed points to this Court's April 2023 adoption of Rules allowing courts to require remote participation of one or more parties – over objection – as supporting his contention that the circuit court here was permitted to require Mr. Lee to participate in the Vacatur Hearing remotely. *See, e.g.*, Md. Rule 21-301. According to Mr. Syed, an interpretation of the Vacatur Statute that requires a court to afford a victim the opportunity to attend a hearing in person "threatens to render the statute obsolete or, at the very least, in conflict with the new rules." We disagree.

Rule 21-301 contains a list of matters that are "presumptively appropriate for remote electronic participation," including bail reviews, parking citations, and motions hearings that do not require the presentation of evidence. Md. Rule 21-301(a). In other criminal proceedings, "one, some, or all participants may participate by remote electronic

---

[39] There may be other circumstances besides the three we have discussed that would result in a victim attending a vacatur hearing remotely without violating the victim's rights.

[40] One of Mr. Syed's arguments in support of the proposition that a victim does not have the right to attend a vacatur hearing in person is based on his position that a victim lacks the right to be heard at such a hearing. *See also Lee*, 257 Md. App. at 559 (Berger, J., dissenting) ("In my view, there are distinct differences between remote participation and in-person participation that are not implicated when an individual has the right to attend but not participate."). Our holding above that a victim has the right to be heard at a vacatur hearing renders that argument moot.

participation in all or any part of [such] proceeding in which the presiding judicial officer and all parties consent to remote electronic participation." Md. Rule 21-301(c)(1).

In a Committee Note, the Rules Committee "endorse[d] two caveats" regarding application of Rule 21-301. First, "[r]emote proceedings generally are not recommended when the finder of fact needs to assess the credibility of evidence but may be appropriate when the parties consent or the case needs to be heard on an expedited basis and remote proceedings will facilitate the participation of individuals who would have difficulty attending in person[.]" Second, where "a judicial officer has discretion to hold or decline to hold a remote proceeding," the judicial officer should consider, among other things, "the availability of participants who will be affected by the decision" and "whether remote participation will cause substantial prejudice to a party or affect the fairness of the proceeding[.]" These sensible caveats, and more importantly, the constitutional requirement to treat victims with dignity, respect, and sensitivity, lead us to conclude that Rule 21-301 does not permit a court to exclude a victim from an in-person vacatur hearing without first giving the victim a reasonable opportunity to attend in person. As discussed, if a victim cannot attend a scheduled vacatur hearing in person with reasonable notice, a court may provide for remote participation by the victim in lieu of postponing the hearing.

Second, Mr. Syed notes that a victim has the right to attend a criminal justice proceeding, where such attendance is "practicable." He argues that the circuit court appropriately exercised its discretion in concluding that it would not be practicable to grant Mr. Lee his requested seven-day continuance of the Vacatur Hearing to allow him to attend the hearing in person. According to Mr. Syed, the circuit court reached this determination

80

regarding practicability after weighing various factors, including that "Mr. Lee lived in California, had counsel present at the hearing, indicated prior to the vacatur hearing that he would attend by Zoom, did not request to attend in person until just prior to the hearing, and was able, through the use of reliable and universally available technology, to be present."

We do not interpret the circuit court's comments in denying the motion for a continuance as a finding that it would not be practicable to allow Mr. Lee to attend the hearing in person. Rather, the court based its decision to deny the continuance on: (1) its view that Mr. Lee was not entitled to reasonable notice of the hearing;[41] and (2) its mistaken belief that Mr. Lee had told "us on Friday that he was going to appear via Zoom," which according to the court was "why we set this hearing today[.]" The court continued: "Because had we known that [Mr. Lee wished to attend the hearing in person] on Friday then, of course, we would have scheduled this hearing according to when he was planning to arrive within a reasonable amount of time. So he didn't do that."

Contrary to the circuit court's understanding, Mr. Lee did not tell Ms. Feldman "on Friday that he was going to appear via Zoom." The hearing was set for Monday, September 19, before Ms. Feldman told Mr. Lee that a hearing would be going forward that day.[42] It

---

[41] We explain our disagreement with the circuit court on this point below.

[42] Mr. Lee told Ms. Feldman on Sunday afternoon that he would appear by Zoom, but that was before he was able to retain counsel, and he made that statement in the context of communications with Ms. Feldman that reasonably would have led Mr. Lee to believe that he did not have a right to attend the hearing in person, but rather that the court would only permit him to "observe" the hearing by Zoom.

81

appears likely that, if the court had understood Mr. Lee did not tell Ms. Feldman before the hearing was scheduled that he wanted to attend the hearing remotely, the court would have granted the requested one-week continuance.

Third, Mr. Syed contends that the circuit court was permitted to deny Mr. Lee's motion for a continuance because such a continuance would have burdened Mr. Syed's "liberty interests in the extraordinary circumstance where the State and defense agreed that he had been wrongfully incarcerated for over 23 years." Notably, the circuit court did not refer to Mr. Syed's liberty interests in explaining why it was denying Mr. Lee's requested continuance. Moreover, a one-week continuance strikes us as a reasonably short delay of the hearing. To be sure, that would have been one more week that Mr. Syed remained in custody before obtaining a ruling on the Vacatur Motion. But the circuit court was required to balance the legitimate interests of all concerned, including Mr. Lee. If Mr. Lee had asked for an unreasonably long continuance of the hearing, the circuit court would have had discretion to deny such a request. But Mr. Lee asked for a short continuance. The court erred in denying the requested one-week continuance, because that ruling denied Mr. Lee a reasonable opportunity to attend the hearing in person.

**D. Mr. Lee Did Not Receive Reasonable Notice of the Vacatur Hearing.**

1. A Victim Is Entitled to Reasonable Notice of a Vacatur Hearing.

The circuit court observed that the Vacatur Statute only refers to "notice" being given to the victim that a vacatur hearing will be held. As the circuit court stated: "It doesn't have anything about reasonable notice." To the extent the circuit court concluded that a

victim is only entitled to notice, not *reasonable* notice, of a vacatur hearing, we disagree. A victim is entitled to reasonable notice that such a hearing will be held.

The Vacatur Statute provides that "[b]efore a hearing on a motion filed under this section, the victim or victim's representative shall be notified, as provided under [CP] § 11-104 or § 11-503[.]" CP § 8-301.1(d)(1). As discussed above, CP § 11-104(f) states that, unless provided by the MDEC system, "the prosecuting attorney shall send a victim or victim's representative prior notice of each court proceeding in the case[.]" Section 11-503 specifically requires that notice be provided to victims of any "postsentencing court proceeding," *id.* § 11-503(a)(7), and states that "[a] notice sent under this section shall include the date, the time, the location, and a brief description of the subsequent proceeding." *Id.* § 11-503(d).

It is true that neither the Vacatur Statute nor CP § 11-503 refers to "reasonable" notice. However, the requirement of reasonableness is implicit in these notice provisions. We are confident that, when the General Assembly in § 11-503 required that the notice of a postsentencing proceeding include the date, time, and brief description of the proceeding, it did not contemplate that the notice would be provided to the victim so close in time to the proceeding as to make the victim's attendance highly unlikely. Rather, the General Assembly intended the notice to be sufficient to permit a victim to attend a postsentencing hearing if the victim chooses to do so. Necessarily, this means providing the notice to the

83

victim reasonably in advance of the hearing to allow the victim to make the necessary travel arrangements in the event the victim decides to attend the hearing in person.[43]

2. The Notice in This Case Was Not Reasonable.

In light of our holdings above, it is plain that Mr. Lee did not receive reasonable notice of the Vacatur Hearing. The notice Ms. Feldman provided on Friday afternoon, September 16, was deficient because it did not give Mr. Lee sufficient time to make arrangements to travel cross-country for the hearing. The notice also was deficient because it failed to state the location of the hearing (other than describing it as "in person") and implied that Mr. Lee's only option was to "observe" the hearing remotely. For these reasons, the notice Mr. Lee received of the Vacatur Hearing was not reasonable and therefore violated his rights under CP § 8-301.1 and Article 47.[44]

### E. Mr. Lee Was Prejudiced by the Failure to Provide the Rights to Notice, Attendance, and to Be Heard at the Vacatur Hearing.

Mr. Syed contends that, in order to be entitled to relief, Mr. Lee must show prejudice as a result of the violation of his rights as a victim. According to Mr. Syed, that showing requires Mr. Lee to prove that the errors we have identified above were not harmless. In

---

[43] We do not mandate that a victim be consulted about available dates before a vacatur hearing is scheduled, but nothing prevents a court from asking the parties to provide dates that have been pre-cleared with the victim.

[44] Mr. Lee argues that he also should have received notice of the *in camera* hearing that occurred on Friday, September 16, 2022, in the court's chambers. We agree with the Appellate Court that the relevant victim's rights statutes do not provide victims with the right to notice of routine chambers conferences. *See Lee*, 257 Md. App. at 530-32. However, as discussed above, it was error to conduct part of what should have occurred on the record at the Vacatur Hearing at an off-the-record *in camera* hearing where Mr. Lee and his counsel were not present.

Mr. Syed's view, that means Mr. Lee must show that the violation of his rights likely contributed to the ruling of the circuit court granting the Vacatur Motion. Mr. Syed contends that Mr. Lee cannot meet such a burden. According to Mr. Syed, although the short notice of the hearing meant that Mr. Lee could only attend remotely, Mr. Lee cannot show prejudice, given that remote participation in all kinds of hearings became widespread during the COVID-19 pandemic.

Although Mr. Lee seemingly agrees that a victim must be prejudiced by the deprivation of a right in a trial court in order to be entitled to relief on appeal, Mr. Lee argues that harmless error analysis is not appropriate in such cases. According to Mr. Lee, victims' rights are "an end [unto] themselves. The right is not to a substantive outcome but to be treated with dignity and respect." It does not matter, he asserts, "if the victim's statements would have altered the outcome of the hearing, for instance, based on how articulate or persuasive she was." In addition, Mr. Lee argues that, even if harmless error were appropriate, given that this is a criminal case, the burden should not fall on him as the aggrieved party to demonstrate harm. According to Mr. Lee, regardless of which party bears the burden of proof, the prejudice in this case is clear. Among other things, Mr. Lee asserts that: (1) if he had received reasonable notice, he could have engaged counsel in a timely manner and traveled to the hearing; (2) if he had been permitted to attend the hearing in person, he could have asked to speak after the prosecutor to address the State's presentation; and (3) if he had been given the right to speak to the evidence, he "could have played an invaluable role by calling the circuit court's attention to the weaknesses in the

State's case." With respect to Mr. Syed's contention that Mr. Lee was not prejudiced by participating remotely, Mr. Lee responds:

> Here, the hearing was post-pandemic, Mr. Lee was the only litigant excluded to which he objected, and there was complete alignment between the only two litigants permitted to attend. Although Mr. Lee spoke briefly at the beginning, he did not know the evidentiary basis for vacatur, could not address the substance of the State's motion, and had only 30 minutes to rush home and prepare. His contribution was piped into the courtroom and lacked any of the impact the other litigants' physical presence provided. Finally, the circuit court gave no consideration to Mr. Lee's statement; all indications were that it had already made its decision prior to the hearing.

The State agrees with Mr. Lee that Mr. Lee was prejudiced here. According to the State, because a victim is not a party to the case and does not have the same ability to control the outcome of a proceeding a party has, "harm and prejudice must be measured not against whether a victim's presence might influence judicial proceedings but based on the deprivation of a victim's rights." The State contends that, when the prosecutor provided insufficient notice to allow Mr. Lee to attend the hearing in person, and when the circuit court denied Mr. Lee's request for a one-week continuance to allow him to attend in person, the harm was not that Mr. Lee could not control the outcome of the Vacatur Hearing, but rather that the court deprived Mr. Lee of dignity and other rights afforded to victims under Maryland law.

We agree with Respondents that there has been a sufficient showing of prejudice in this case. Traditional harmless error analysis is inapplicable when considering whether a victim was prejudiced by the failure of a trial court to ensure that the victim receives the rights to which the victim is due under applicable law. Rather, a victim must demonstrate

86

that the error prevented the victim from meaningfully exercising their rights under the law.[45]

In this case, Mr. Lee has demonstrated that he was prejudiced by the failure to provide him with reasonable notice of the Vacatur Hearing. As Mr. Lee states in his brief, the lack of reasonable notice prevented him from, among other things, engaging counsel in a timely manner, preparing a statement in advance, requesting to see exhibits referenced in the motion to vacate, and traveling to the hearing.

Similarly, the circuit court's denial of Mr. Lee's request for a one-week continuance resulted in Mr. Lee being required to attend the Vacatur Hearing remotely. As Mr. Lee states in his brief, had he attended the hearing in person, he could have been fully visible to the court, just like the prosecutor, Mr. Syed, and the attorneys in the courtroom were visible to the court. The one-week extension was a reasonable request, in light of the short notice that Mr. Lee received prior to the hearing and, given the court's acknowledgment that the court would have scheduled the hearing for a later date if the court had been informed on September 16 that Mr. Lee wished to attend the hearing in person. Moreover, for a victim who wishes to speak in person at a vacatur hearing – as Mr. Lee did – there is a meaningful difference between remote and in-person attendance.

---

[45] The State provides an example of an error that will not meet this standard of prejudice: a victim who is not informed by the State's Attorney of a hearing but learns about it through some other method sufficiently in advance of the hearing to attend in person with a prepared statement. That victim would not be entitled to relief on appeal for the failure to provide the statutorily mandated notice because the victim will not be able to show that the error prevented the victim from meaningfully exercising their rights.

87

Finally, Mr. Lee has demonstrated that he was prejudiced by the failure of the court to afford him the right to speak to the evidence. As Mr. Lee states in his brief, among other things, he could have: (1) asked why the State felt compelled to move for vacatur while its investigation was ongoing; (2) argued that his due process rights were violated by the State's Attorney presenting evidence only *in camera* and asked that all evidence be aired in open court; and (3) if shown the evidence, "raised now widespread doubts about it: for example, much of it was considered and undermined in prior proceedings."

In sum, Mr. Lee has demonstrated that the failure to afford him the rights of reasonable notice, attendance in person, and to be heard on the merits of the Vacatur Motion prevented him from exercising his rights as the victim's representative in a meaningful manner.

## F. Proceedings on Remand

We conclude that the appropriate course of action is to remand this case to the Circuit Court for Baltimore City for further proceedings consistent with this opinion before a different judge.[46] On remand, the parties, Mr. Lee, and the circuit court will begin where they were immediately after the State's Attorney filed the Vacatur Motion on September 14, 2022. If a new vacatur hearing is scheduled, Mr. Lee must be given reasonable notice

---

[46] It is necessary for a different circuit court judge to preside over further proceedings on the Vacatur Motion to avoid the appearance that allowing Mr. Lee and/or his attorney to speak to the evidence at a new vacatur hearing may be a formality. *See* note 37 above.

of the new hearing date to allow him to attend the hearing in person.[47] At such a hearing, Mr. Lee and/or his counsel will be permitted to address: (1) the merits of the Vacatur Motion after hearing the parties' presentations in support of the motion; and (2) all other matters that are relevant to the circuit court's disposition of the Vacatur Motion.[48]

## IV

## Conclusion

In an effort to remedy what they perceived to be an injustice to Mr. Syed, the prosecutor and the circuit court worked an injustice against Mr. Lee by failing to treat him with dignity, respect, and sensitivity and, in particular, by violating Mr. Lee's rights as a crime victim's representative to reasonable notice of the Vacatur Hearing, the right to attend the hearing in person, and the right to be heard on the merits of the Vacatur Motion.

The entry of the nol pros did not moot Mr. Lee's appeal because we are able to provide an effective remedy to Mr. Lee for the violation of his rights as the crime victim's representative without violating Mr. Syed's constitutional right to be free from Double Jeopardy. That remedy is to reinstate Mr. Syed's convictions and to remand the case to the circuit court for further proceedings relating to the Vacatur Motion, consistent with this opinion. Those proceedings will go forward before a different circuit court judge. On

---

[47] A respectful and sensitive way to proceed would be for Mr. Lee's counsel to be consulted about potential dates for a new vacatur hearing before a hearing is scheduled. We expect the parties and Mr. Lee on remand to work together in good faith to ensure that all subsequent proceedings occur in a timely manner.

[48] Although the effect of this opinion is to affirm the Appellate Court's decision to reinstate Mr. Syed's convictions pending further proceedings on the Vacatur Motion, we shall order no change to Mr. Syed's conditions of release.

remand, Mr. Lee shall be afforded reasonable notice of a new vacatur hearing; that is, notice sufficient to provide Mr. Lee with a reasonable opportunity to attend such a hearing in person. At a new vacatur hearing, Mr. Lee and/or his counsel shall be permitted the opportunity to be heard, among other things, on the merits of the Vacatur Motion after hearing the entirety of the parties' presentations in support of the motion.

**JUDGMENT OF THE APPELLATE COURT OF MARYLAND AFFIRMED IN PART AND REVERSED IN PART; CASE REMANDED TO THAT COURT WITH THE DIRECTION TO REMAND THE CASE TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY PETITIONER.**

Circuit Court for Baltimore City
Case No. 199103042
Argued: October 5, 2023

IN THE SUPREME COURT

OF MARYLAND

No. 7

September Term, 2023

_____

ADNAN SYED

v.

YOUNG LEE, AS VICTIM'S
REPRESENTATIVE, ET AL.

_____

Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,
Battaglia, Lynne A.
 (Senior Justice, Specially Assigned)

_____

JJ.

Dissenting Opinion by Hotten, J.,
which Booth and Battaglia, JJ., join.

_____

Filed: August 30, 2024

*Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, § 3A, she also participated in the decision.

Respectfully, I dissent. In sum, the Majority expends much ink to posit the following: (1) the entry of a nolle prosequi by the State did not moot the appeal by the victim's representative of an order vacating Mr. Syed's convictions under Maryland Code Ann., Criminal Procedure Article ("Crim. Proc.") § 8-301.1 ("the Vacatur Statute"); (2) a victim or the victim's representative has a right to be heard in person at a vacatur hearing, irrespective of the lack of reference to such a right in Crim. Proc. § 8-301.1 or Article 47 of the Declaration of Rights; and (3) the victim or a victim's representative has a right to reasonable notice of a vacatur hearing. I will outline my positions below.

The entry of a nolle prosequi[1] or "nol pros" by the State, subsequent to the circuit court's grant of a vacatur motion, rendered the appeal by Mr. Lee ("Respondent"), moot. Relative to the rights accorded to a victim or their representative under Article 47 of the Maryland Declaration of Rights, Respondent had no right to be heard at the vacatur hearing. As such, the notice of a vacatur hearing received by Respondent was reasonable and appropriate under the circumstances, because notice must be measured within the context of adequacy only to enable a victim or the victim's representative the opportunity to attend, either in person or virtually.

**Mootness**

This case exists as a procedural zombie. It has been reanimated, despite its expiration. The doctrine of mootness was designed to prevent such judicial necromancy. The issues at bar involve the interplay between the State's authority to nol pros charges

---

[1] "'Nolle prosequi' means a formal entry on the record by the State that declares the State's intention not to prosecute a charge." Crim. Proc. § 1-101(k).

and the doctrine of mootness.  Maryland Rule 4-247(a) empowers "[t]he State's Attorney [to] terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court."  "[E]ntering a nolle prosequi is part of the broad discretion vested in the State's Attorney."  *State v. Simms*, 456 Md. 551, 561, 175 A.3d 681, 687 (2017) (citation and quotation marks omitted).  "The entry of a nolle prosequi is generally within the sole discretion of the prosecuting attorney, *free from judicial control* and not dependent upon the defendant's consent."  *State v. Bailey*, 319 Md. 392, 411, 572 A.2d 544, 553 (1990) (quoting *Ward v. State*, 290 Md. 76, 83, 427 A.2d 1008, 1012 (1981)) (emphasis added).  "[W]hen an indictment or other charging document is nol prossed, ordinarily the case is terminated[.]"  *Curley v. State*, 299 Md. 449, 459, 474 A.2d 502, 507 (1984) (cleaned up).  The legal effect of a nol pros is to void the charge, "as if [it] had never been brought in the first place."  *Id.* at 460, 474 A.2d at 507 (citations omitted).

The State's power of nol pros has been tempered in very limited circumstances: (1) where it "had the purpose or the effect of circumventing" the guarantee of a defendant's right to a speedy trial, *Curley*, *id*. at 462, 474 A.2d at 508; (2) where "[t]he right of an accused to a fair trial[]" would be infringed, *Hook v. State*, 315 Md. 25, 36, 553 A.2d 233, 239 (1989); and (3) "after a final judgment has been entered against a defendant in a criminal case."  *Simms*, 456 Md. at 575, 175 A.2d at 695.  As reflected by *Curley*, *Hook*, and *Simms*, this Court focused on the effect a nol pros could have on the rights accorded to a defendant in a criminal case.  In other words, the principles of fairness that underpin the right to a fair trial extend to a defendant, not a victim or their representative.

"Ordinarily, a case becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Kranz v. State*, 459 Md. 456, 472, 187 A.3d 66, 75 (2018) (citation omitted). A case is also moot "when there is no longer an effective remedy the Court could grant." *Suter v. Stuckey*, 402 Md. 211, 219, 935 A.2d 731, 736 (2007) (citations omitted). "This Court's reluctance to hear moot cases stems from the prohibition against offering advisory opinions." *D.L. v. Sheppard Pratt Health Sys., Inc.*, 465 Md. 339, 352, 214 A.3d 521, 528 (2019) (citation omitted). Generally, an appellate proceeding becomes moot when the State exercises its authority to nol pros the charges underlying the appeal. *See* Md. Rule 4-333(b) Committee Note (recognizing that an "appeal may become moot," if the circuit court grants the State's motion to vacate a conviction under Crim. Proc. § 8-301.1(a) and the State "then enters a nolle prosequi[.]"); *see also Hoile v. State*, 404 Md. 591, 627, 948 A.2d 30, 51 (2008) (citing Md. Const. Decl. of Rts. Art. 47(c)) ("If a victim is not authorized to take an action to stay the entering of a judgment in a criminal case, the victim similarly is powerless to have that judgment reopened or vacated."); *Mitchell v. State*, 160 Idaho 81, 89, 369 P.3d 299, 307 (2016) (holding that there was no available remedy to an aggrieved victim following a nol pros of the defendant's charges because "there are no further proceedings for which [the victim] could request or receive notice."); *S.K. v. State*, 881 So.2d 1209, 1212 n.6 (Fla. Dist. Ct. App. 2004) (noting that, ordinarily, reinstating a defendant's conviction following a nol pros due to violations of a victim's rights would pose "a separation of powers problem," and "interfere with the constitutional rights of the accused.").

3

The Appellant Court of Maryland determined that "whether the State 'acted lawfully in entering the nolle prosequi[]'" was "critical to the mootness issue[.]" *Lee v. State*, 257 Md. App. 481, 518, 292 A.3d 348, 370 (2023). The Court further observed that, "[u]nder typical circumstances, . . . the State's entry of a nol pros of the charges would end the case against the defendant and render an appeal of prior court proceedings on those charges moot." *Id.* at 519, 292 A.3d at 371 (citations omitted). However, the Court held that those principles did not apply to this case because "the nol pros was void, and therefore, it was a nullity." *Id.*, 292 A.3d at 371. In the Appellate Court's view, the State nol prossed Petitioner's charges for the purpose "of preventing [Respondent] from obtaining a ruling on appeal regarding whether his rights as a victim's representative were violated." *Id.* at 526, 292 A.3d at 375 (citations omitted). The Court concluded that "[t]he nol pros entered under the circumstances of this case violated [Respondent]'s right to be treated with dignity and respect[]" under Article 47. *Id.* at 527, 292 A.3d at 375 (citing Crim. Proc. § 11-1002(b)(1)). The Court reasoned that the timing of the nol pros was critical because it occurred two days before a response to Respondent's motion to stay the circuit court proceedings was due, and eight days before the State was required to render a decision regarding the vacated count. *Id.* at 526, 292 A.3d at 375. The Court's conclusion was flawed because it extended the precedent of this Court beyond its context, thereby permitting victims to challenge the State's discretion to nol pros charges.

Any right that a victim enjoys as a non-party is limited, tempered by the superior rights of a criminal defendant who is a party. That limitation guides the mootness analysis.

4

The Supreme Court of Idaho's decision in *Mitchell* and the District Court of Appeal of Florida's decision in *S.K.* are instructive.

In *Mitchell*, Gerald Simpson received mental health services from the Idaho Department of Health and Welfare ("IDHW"). 160 Idaho at 83, 369 P.3d at 301. In June 2010, the IDHW advised Mr. Simpson that he no longer qualified for services and released him from its custody. *Id.*, 369 P.3d at 301. In September 2010, Mr. Simpson shot Ryan Mitchell in the back. *Id.*, 369 P.3d at 301. The State filed assault charges against Mr. Simpson, but the trial court dismissed those charges after it determined Mr. Simpson was not competent to stand trial. *Id.* at 83–84, 369 P.3d at 301–02. Thereafter, Mr. Mitchell filed a civil claim against the State of Idaho, alleging, among other things, that the State had violated his rights as a victim because it failed to continue Mr. Simpson's mental health services. *Id.* at 84, 369 P.3d at 302. The trial court determined, in relevant part, that Mr. Mitchell was not entitled to that relief because neither the state's constitution nor statutes provided such a remedy. *Id.*, 369 P.3d at 302.

On appeal, the Supreme Court of Idaho determined that the victims' rights issue was moot. *Id.* at 89, 369 P.3d at 307. The court reasoned that a decision in Mr. Mitchell's favor "would not result in any relief[,]" because "[t]he underlying criminal charges against [Mr.] Simpson have been dropped." *Id.*, 369 P.3d at 307. In the court's view, "[a] judicial determination on [the victim's rights] issue would [] have no practical effect on the outcome: there are no further proceedings for which [Mr.] Mitchell could request or receive notice." *Id.*, 369 P.3d at 307. Instead, "[t]he only practical effect a favorable judgment for [Mr.] Mitchell would have is th[e] [c]ourt restating the clear rights already established

5

under Idaho['s constitution and statutes] and stating that the prosecutor erred when it failed to provide [Mr.] Mitchell notice of those rights." *Id.*, 369 P.3d at 307.

In *S.K.*, the parents of a minor victim of sexual assault moved to set aside a pretrial intervention order between the State of Florida and the juvenile offender. 881 So.2d at 1210. Under the terms of the agreement, the State agreed to either nol pros or dismiss the juvenile offender's charges if the juvenile offender satisfied certain obligations until the end of the school year. *Id.* The victim's parents argued that: (1) the State failed to obtain the victim's or victim's parents consent regarding the agreement as required by Florida law; and (2) the trial court violated their state constitutional rights[2] as victims because it failed to conduct a hearing regarding the agreement. *Id.* at 1210–11. The trial court denied the parents' motion, concluding, in relevant part, that the parents lacked standing because they were not parties to the action. *Id.* at 1211. Thereafter, the parents filed a separate motion for the trial court to extend the zone of protection under the protective order it had

---

[2] The Florida Constitution affords victims robust rights including due process; protection from harassment; prevention of information disclosure; for notice; and to be heard in "any proceeding during which a right of a victim is implicated[,]" among other express rights. Fla. Const. art. I, § 16(b). Victims are constitutionally afforded the right to appeal based on violations of these rights, which are self-executing. *Id.* §§ 16(c)–(d). Similarly, the Constitution of Idaho affords victims robust rights including timely disposition of cases; prior notification of proceedings at all court levels; to be present at *all* criminal justice proceedings; to communicate with prosecution; and "[t]o be heard, upon request, at all criminal justice proceedings considering a plea of guilty, sentencing, incarceration or release of the defendant[,]" among other express rights. Idaho Const. art. I, § 22. These rights are self-enacting. *Id.*

Article 47 of the Maryland Declaration of Rights does not provide similar rights to victims, nor are the rights self-executing or self-enacting. *See* Md. Const. Decl. of Rts. art. 47(b) (providing certain rights "if practicable" and "as implemented" by the General Assembly).

6

previously issued against the juvenile offender. *Id.* Once again, the trial court concluded that the parents lacked standing to file such a motion and denied their request. *Id.* at 1212. The parents appealed. *Id.* at 1210.

In a footnote, the District Court of Appeal of Florida addressed the issue of mootness. *Id.* at 1212 n.6. The State argued that the case was moot because it had nol prossed the juvenile offender's charges before the appellate court heard oral arguments. *Id.* The court agreed "because if th[e] court were to conclude that error occurred below, there is no case or controversy remaining to remand to the trial court." *Id.* The court observed that it had no power to "force the state attorney to reinstate the charges against [the juvenile offender] because, in addition to the separation of powers problem, to do so would interfere with the constitutional rights of the accused." *Id.* (citation omitted). The court nevertheless addressed the merits because the case "involve[d] important legal issues which would escape appellate review if the case were deemed to be moot." *Id.* (citations omitted).

Both *Mitchell* and *S.K.* stand for the proposition that victims, who are not parties to a criminal prosecution, cannot resurrect nol prossed charges to vindicate alleged violations of their procedural rights. The *S.K.* court cautioned that permitting victims to challenge the State's authority to nol pros charges would raise a "separation of powers problem," and "interfere with the constitutional rights of the accused." *Id.* (citation omitted). In the case at bar, Respondent seeks to vindicate procedural rights, but the practical effect of a decision in his favor would require a reinstatement of Petitioner's conviction. That remedy is unavailable because the State has already declined to pursue those charges, thereby

7

extinguishing the underlying basis of Respondent's rights afforded by Article 47 of the Maryland Declaration of Rights.[3] By reinstating Petitioner's conviction, this Court would compel the State to pursue charges that it has chosen to abandon. Such an outcome is antithetical to this Court's precedent. *See Hook*, 315 Md. at 35, 41, 553 A.2d at 238, 242 (State's Attorneys have "broad authority . . . to terminate a prosecution" as "entry of a nolle prosequi is generally within the sole discretion of [the State], free from judicial control[.]" (quotation marks and citations omitted)); *see also Oglesby v. State*, 441 Md. 673, 680, 109 A.3d 1147, 1151 (2015) ("[S]eparation of powers compels that we brook no lightly assumed interference by the judicial branch with the function of [the State's Attorney.]" (internal quotation marks and citation omitted)).

This Court has upheld challenges to the State's power of nol pros when it is used to undermine a criminal defendant's constitutional rights. *See, e.g.*, *Curley*, 299 Md. at 462, 474 A.2d at 508 (holding that the State cannot circumvent a defendant's right to a speedy

---

[3] Article 47 of the Maryland Declaration of Rights provides:

(a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.

(b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.

(c) Nothing in this Article permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of crime to take any action to stay a criminal justice proceeding.

8

trial within 180 days of being charged by nol prossing and then reinstating the same charges); *Hook*, 315 Md. at 44, 553 A.2d at 243 (holding that the State violates fundamental fairness to nol pros charges "to deprive the trier of fact, over the defendant's objection, of the [] option of convicting the defendant of a lesser included offense."); *Simms*, 456 Md. at 576, 175 A.3d at 696 (holding that the State's nol pros authority cannot alter a criminal conviction after the entry of a final judgment, particularly when it is done to undermine the defendant's right to appeal that judgment). The Appellate Court of Maryland evaluated various decisions, including *Hook* and *Simms*, and concluded they stood for the proposition that "courts will temper the State's authority in exceptional circumstances, such as where it violates fundamental fairness, and in at least some circumstances, it circumvents the right to appeal." *Lee*, 257 Md. App. at 523, 292 A.3d at 373. That interpretation, particularly as to the circumvention of the right to appeal, is inapplicable to the case at bar because the rights at issue in those decisions pertained only to the criminal defendant whose liberty was at stake.

In *Hook*, this Court held that the State could not nol pros a lesser included offense of second-degree murder at the conclusion of trial, thereby forcing the jury to either convict the defendant of first-degree murder or acquit him. 315 Md. at 43–44, 553 A.2d at 243. This Court explained that its holding was in part derived from *Crawford v. State*, 285 Md. 431, 404 A.2d 244 (1979), which concerned a criminal defendant's right to a fair trial under the Due Process Clause of the Fourteenth Amendment of the United States Constitution:

> The right of an accused to a fair trial, although not a perfect trial, is paramount. The essence of *Crawford* is that fundamental fairness is essential to the very concept of justice; justice must satisfy the appearance of justice.

9

Our system of law has always endeavored to prevent even the probability of unfairness. But we cautioned[: i]n order to declare a denial of fundamental fairness, the reviewing court must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevent a fair trial.

*Hook*, 315 Md. at 36–37, 553 A.2d at 239 (cleaned up). The constitutional right to a fair trial belongs to a criminal defendant alone, because their liberty interest depends upon the outcome of trial. *See Crawford*, 285 Md. at 452–53, 404 A.2d at 255 (explaining that fundamental fairness principles guard against an unfair trial). Obviously, the victim is not the subject of trial, so there is no basis to extend the fair-trial principles of *Hook* to victims. Additionally, there is no authority supporting the contention that a victim, in the capacity of a non-party, may commandeer a criminal defendant's constitutional protections in an effort to reinstate the defendant's charges following a nol pros. *Lopez-Sanchez v. State*, 388 Md. 214, 224, 879 A.2d 695, 701 (2005) (citing *Cianos v. State*, 338 Md. 406, 410–11, 659 A.2d 291, 293 (1995)) ("A victim is not a party to a criminal prosecution.")[4]; Crim. Proc. § 11-103(b) ("[A] victim" is "not a party to a criminal or juvenile proceeding[.]"). Further, this case does not concern trial, thereby rendering *Hook* even more inapplicable.

This Court's decision in *Simms* does not extend those fundamental fairness principles to victims or their representatives. In *Simms*, this Court held that the State's authority to nol pros charges ends once the circuit court has "entere[d] . . . a final judgment [in favor of or] against a defendant in a criminal case." 456 Md. at 575, 175 A.3d at 695. Although the Appellate Court of Maryland here recognized that the rationale of *Simms*

---

[4] *Lopez-Sanchez* has been superseded by statute on other grounds. *Hoile*, 404 Md. at 605, 948 A.2d at 39.

"does not apply in this case[,]" it nevertheless relied on this Court's *dicta*, which suggested the State could not undermine a criminal defendant's right to appeal. *Lee*, 257 Md. App. at 522, 292 A.3d at 372. The *Simms* Court observed that the State intended to use its nol pros authority as "an end run around the appellate process." 456 Md. at 576, 175 A.3d at 696. The Appellate Court of Maryland interpreted this language beyond its context. We explained in *Simms* that the reason the State could not divest a criminal defendant of their right to appeal with its nol pros authority was that the defendant had challenged the validity of a final judgment, which the State had no authority to alter. *See id.* at 577–78, 175 A.3d at 697. Contrary to the Appellate Court's reasoning, this Court did not recognize a limiting principle against the State's nol pros authority outside the context of a final judgment.

As Judge Berger expressed in his dissent, the Court erroneously concluded that victims' representatives enjoy similar fundamental fairness rights to criminal defendants and are entitled to comparable remedies on appeal. *See Lee*, 257 Md. App. at 554, 292 A.3d at 391 (Berger, J., dissenting). As a result, the Court extended *de facto* party status to victims to challenge the State's nol pros authority, which is "generally within the sole discretion of the prosecuting attorney[.]" *Bailey*, 319 Md. at 411, 572 A.2d at 553 (citation omitted).

As explained above, the cases relied on by the Appellate Court of Maryland below and the Majority here were limited to narrow situations that are absent in this case. *Curley* concerned the *criminal defendant's* right to a speedy trial and afforded no victim's rights. *Hook* concerned the *criminal defendant's* right to a fair trial, not a victim's procedural right to receive notice of and to attend a vacatur hearing. *Simms* concerned the State's attempt

11

to nol pros a charge following final judgment. The very nature of a vacatur proceeding is to *undo* a final judgment, thereby restoring the State's authority to nol pros charges, rendering *Simms* inapplicable. Indeed, this is why Maryland Rule 4-333(i) directs the State, "[w]ithin 30 days after the court enters an order vacating a judgment of conviction . . . as to any count, . . . [to] either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count." This is also why a Committee Note to Maryland Rule 4-333(b) recognizes that the State's nol pros may render appellate proceedings moot.

In the Appellate Court of Maryland's view, the timing of the State's nol pros warranted scrutiny because Petitioner's response to the motion to stay was due in two days, "after which [the Appellate Court] potentially could have granted the motion to stay." *Lee*, 257 Md. App. at 526, 292 A.3d at 375. The Court's conclusion rests on a flawed premise because it lacked authority to grant a stay. The plain text of Article 47(c) makes clear that it does not authorize "a victim of crime [from] tak[ing] any action to stay a criminal justice proceeding." Md. Const. Decl. of Rts. art. 47(c). Indeed, "[t]he inability to stay criminal proceedings pending an appeal is a major limitation on victims' rights." *Hoile*, 404 Md. at 606 n.18, 948 A.2d at 39 n.18 (citation omitted). Therefore, it was impossible for the State's nol pros to deprive Respondent of a stay because he was not entitled to one under any circumstances.

Regarding Respondent's right to appeal, the Appellate Court of Maryland acknowledged that, "in the ordinary case, the noting of an appeal would not deprive the State from entering a nolle prosequi." *Lee*, 257 Md. App. at 525, 292 A.3d at 374. This observation is appropriate because there is no case law supporting a victim's right to

12

challenge the State's nol pros authority. The Court, however, determined that this appeal must proceed because this is "not an ordinary case." *Id.*, 292 A.3d at 374. I agree that this is "not an ordinary case" insofar as it has gained widespread public attention. I disagree insofar as criminal procedure is concerned. Following the vacatur of the final judgment, the State satisfied its mandate under Maryland Rule 4-333(i) to "enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count[]" within thirty days after the circuit court vacated the final judgment. The Appellate Court of Maryland's rationale suggests that the State should have nol prossed the charges either before Respondent filed a motion to stay further proceedings or once the thirty-day deadline had arrived. That rationale contravenes the plain language of Maryland Rule 4-333. The former approach imputes hindsight into the calculus and invalidates a nol pros once the victim seeks appellate intervention. The latter approach converts the discretionary language under Maryland Rule 4-333(i) that permits the State to take action "within thirty days" to "on the thirtieth day."

Maryland Rule 4-333 discusses the interplay between the State's nol pros authority and the mootness doctrine:

> [Crim. Proc.] § 8-301.1(a) permits the State's Attorney to file the motion "at any time after the entry of a probation before judgment or judgment of conviction," and permits "the court with jurisdiction over the case" to act on it. If an appeal is pending in the Supreme Court or Appellate Court when the motion is filed, that Court would have jurisdiction over the case but no practical ability to take evidence with regard to the State's Attorney motion. . . . [I]f the motion were to be granted and the State's Attorney then enters a nolle prosequi, the appeal *may become moot*, at least with respect to the judgments vacated.

13

Md. Rule 4-333(b) Committee Note (emphasis added). This mootness rule applies even to the appeals by defendants whose liberty is at stake. The Rule and Committee Note make no consideration of or exception for a victim's procedural rights, so the general rule also applies to a victim's appeal. The entry of nol pros following vacatur can moot "the appeal . . . with respect to the judgments vacated[,]" leaving no viable appellate remedy for the victim because the judgments are void, and the charges are dismissed. Md. Rule 4-333(b) Committee Note.

This scenario was predicted by the Rules Committee and is what occurred in the case at bar, so it can hardly be said that this is "not an ordinary case." *Lee*, 257 Md. App. at 525, 292 A.3d at 374. By reviving this matter, the Appellate Court of Maryland recognized an exception to the State's nol pros authority that goes beyond the scope of this Court's precedent. The Majority has adopted the same approach, appearing to twist itself into a pretzel to import fundamental fairness principles that derived from a *criminal defendant's* constitutional rights into the realm of victim's rights. In doing so, the Majority's holding implicitly authorizes a victim to override the State's discretion to nol pros charges. That authorization risks upending the settled principle that "[t]here are only two parties [in a criminal proceeding], the State of Maryland and [the defendant]." *Hoile*, 404 Md. at 606, 948 A.2d at 39 (citations omitted); *Lopez-Sanchez*, 388 Md. at 224, 879 A.2d at 701 (citing *Cianos*, 338 Md. at 410–11, 659 A.2d at 293) ("A victim is not a party to a criminal prosecution."). For those reasons, I would hold that this case is moot.

However, it is long settled that appellate courts may address "unresolved issues that are capable of repetition, yet evading review and that involve matters of important public

14

concern." *Lee*, 257 Md. App. at 555–56, 292 A.3d at 392 (Berger, J., dissenting) (citing *In re S.F.*, 477 Md. 296, 318–19, 269 A.3d 324, 337–38 (2022)). Respondent seeks a remedy that is not available under the Victim's Rights Statute or Article 47 of the Maryland Declaration of Rights. I explain below.

**Article 47 of the Maryland Declaration of Rights**

"Article 47 represents the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and *in certain cases*, that they should be heard." *Hoile*, 404 Md. at 605, 948 A.2d at 39 (citation and quotation marks omitted) (emphasis added). The language in Article 47 "does not suffice to give victims party status in criminal cases or . . . the right to act as though they were parties." *Surland v. State*, 392 Md. 17, 23 n.1, 895 A.2d 1034, 1037 n.1 (2006); *see also Lopez-Sanchez*, 388 Md. at 224, 879 A.2d at 701 (citing *Cianos*, 338 Md. at 410–11, 659 A.2d at 293) ("A victim is not a party to a criminal prosecution."); *Hoile*, 404 Md. at 606, 948 A.2d at 39 (noting that "[t]here are only two parties [in a criminal proceeding], the State of Maryland and [the defendant]." (citations omitted)).

This conclusion derives from the language of Article 47 itself. Article 47 does not define the terms: "victim[,]" "crime[,]" "criminal justice proceeding[,]" "dignity, respect, [or] sensitivity[.]" *See* Md. Const. Decl. of Rts. art. 47(a). Instead, Article 47(b) empowers the General Assembly to "implement[,]" *i.e.*, enact, and "specif[y,]" *i.e.*, define, the rights under Article 47. Md. Const. Decl. of Rts. art. 47(b). Accordingly, a victim's rights under Article 47, including the purported right to be heard in a criminal proceeding, is limited "to the extent expressly provided by statutes enacted by the General Assembly or Rules

15

adopted by this Court[.]" *Surland*, 392 Md. at 23 n.1, 895 A.2d at 1037 n.1. There is no express or implied reference in Art. 47 to a victim or victim's representative's right to be heard at a vacatur hearing. There is also no express or implied right to appeal[5] or to stay a proceeding by a victim or victim's representative. For the reasons expressed below, Respondent's contentions find no support under Maryland law.

**Right to notice**

In the case at bar, the State notified Respondent on Friday, September 16, 2022 that the circuit court would hold an in-person vacatur hearing on Monday, September 19, 2022. Respondent resided in California when he received notice and did not secure transportation to Maryland to attend the in-person hearing. Respondent did receive a Zoom invitation that would permit him to attend the hearing virtually. The issue is whether one business days' notice satisfied the requirements of Crim. Proc. § 8-301.1(d) and Maryland Rule 4-333.

Under Crim. Proc. § 8-301.1(d)(1), "the victim or victim's representative shall be notified, as provided under [Crim. Proc.] § 11-104 or § 11-503" before the circuit court conducts a hearing regarding a motion to vacate a conviction. *See* Md. Rule 4-333(g)(2) (requiring "the State's Attorney [to] send written notice of the hearing to each victim or victim's representative[]" "[p]ursuant to [Crim. Proc.] § 8-301.1(d)[.]"). "Following a conviction . . . of a defendant . . ., the State's Attorney shall notify the victim or victim's

---

[5] The General Assembly provides victims with a carefully cabined statutory right to appeal. *See* Crim. Proc. § 11-103(b); *Antoine v. State*, 245 Md. App. 521, 532, 541–42, 226 A.3d 1170, 1176, 1181–82 (2020) ("[Crim. Proc. §] 11-103(b) provides appellate rights to crime victims.").

16

representative of a subsequent proceeding in accordance with [Crim. Proc.] § 11-104(f)" upon a victim's or victim's representative's written request. Crim. Proc. § 11-503(b). A "subsequent proceeding" includes "a hearing on a request to have a sentence . . . vacated under the Maryland Rules[.]" Crim. Proc. § 11-503(a)(2). If "practicable[]" and where the victim has filed a notification request, Crim. Proc. § 11-104(f)(1) requires "the prosecuting attorney [to] send a victim or victim's representative prior notice of each court proceeding in the case, . . . and of the right of the victim or victim's representative to submit a victim impact statement to the court under [Crim. Proc.] § 11-402[.]"[6] Maryland Rule 4-333(g)(2) requires "[t]he notice [to] contain a brief description of the proceeding and inform the victim or victim's representative of the date, time, and location of the hearing and the right to attend the hearing." In a Committee Note, Maryland Rule 4-333(g)(2) explains that the State should make "[r]easonable efforts, beyond merely relying on the last known address in a court record, . . . to locate defendants, victims, and victims' representatives and provide the required notices[,]" because the timing of a motion to vacate a conviction may render it difficult to locate those individuals.

Traditional canons of statutory interpretation guide the analysis. This Court's goal is to discern the General Assembly's intent from the plain language of the statute. *Lockshin v. Semsker*, 412 Md. 257, 275, 987 A.2d 18, 28 (2010) (citations omitted). This Court

---

[6] Crim. Proc. § 11-402 mandates that the sentencing court "shall consider the victim impact statement in determining the appropriate sentence or disposition and in entering a judgment of restitution[.]" Crim. Proc. § 11-402(d). Court determinations on sentencing, disposition, and/or restitution are not present in vacatur. Thus, Crim. Proc. § 11-402(f)(1) provides victims with only the right to notice, while providing some additional rights in other circumstances not present in this case.

17

"do[es] not read statutory language in a vacuum, nor do[es it] confine strictly [its] interpretation of a statute's plain language to the isolated section alone." *Id.*, 987 A.2d 18, 29 (citations omitted). "Rather, the plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [General Assembly.]" *Id.* at 276, 987 A.2d at 29 (citations omitted).

Both Crim. Proc. § 8-301.1 and Maryland Rule 4-333 are silent regarding what constitutes sufficient notice to a victim or victim's representative. The General Assembly has enacted guidelines which provide that a victim or victim's representative "should be notified in advance of dates and times . . ., on written request, of postsentencing proceedings[.]" Crim. Proc. § 11-1002(b)(3). The guidelines reflect Article 47's dual mandates that victims and victims' representatives: (1) "shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal process[;]" and (2) "shall have the right to be informed of the rights established in this Article and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented[.]" Md. Const. Decl. of Rts. art. 47(a)–(b); *see also Hoile*, 404 Md. at 605, 948 A.2d at 39 ("Article 47 represents the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, and in certain cases, that they should be heard." (citation and quotation marks omitted)). The guidelines do not set forth a minimum number of days regarding notice to a victim or victim's representative. Additionally, the use of the word

18

"should" in Crim. Proc. § 11-1002(b)(3) suggests that failure to provide advance notice is permissible, though frowned upon.[7]

Although it remains clear that a victim or victim's representative must be treated "with dignity, respect, and sensitivity[,]" those rights are subjective and ambiguous in a vacuum. Given that ambiguity, the right to "dignity, respect, and sensitivity" ebbs and flows depending upon the statutory right at issue. This contextual treatment derives from Article 47(b), which indicates that a victim's or victim's representative's right "to be notified of, to attend, and to be heard at a criminal justice proceeding[]" exist to the extent "these rights are implemented" by the General Assembly. Md. Const. Decl. of Rts. art. 47(b). This contextual treatment also comports with a victim's status as a non-party whose limited statutory and state constitutional rights must yield to the criminal defendant's own rights. *Lopez-Sanchez*, 388 Md. at 224, 879 A.2d at 701 (citing *Cianos*, 338 Md. at 410–11, 659 A.2d at 293) ("A victim is not a party to a criminal prosecution."). It is for this reason, in part, that "this Court has continuously balanced the [General Assembly]'s public policy mandate of affording victims broad rights against the need for appropriate limitations." *Lopez v. State*, 458 Md. 164, 179, 181 A.3d 810, 818 (2018); *see also Hoile*, 404 Md. at 606, 948 A.2d at 39 ("[T]here are some important differences between the rights

---

[7] Crim. Proc. § 11-503(b) provides that "the State's Attorney shall notify the . . . victim's representative of a subsequent proceeding in accordance with § 11-104(f)[.]" Crim. Proc. § 11-104(f)(1)(i) provides that the "prosecuting attorney shall send a . . . victim's representative prior notice . . . if[] prior notice is practicable[.]" The requirements of Crim. Proc. §§ 11-503 and 11-104 comport with the guidelines the General Assembly provide in Crim. Proc. § 11-1002(b)(3).

of parties and those of non-parties enjoying limited rights regarding participation in criminal litigation.").

In the case at bar, Respondent's right to notice of the vacatur hearing must be viewed in light of its purpose, *i.e.*, to afford Respondent the "right to attend [that] hearing[.]" Crim. Proc. § 8-301.1(d)(2); *Lockshin*, 412 Md. at 276, 987 A.2d at 29 ("[T]he plain language must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the [General Assembly] in enacting the statute." (citations omitted)). If the right to attend contemplates virtual attendance, a shorter notice would be reasonable because the hearing is merely a click away on the computer. Otherwise, if the right to attend requires in-person attendance, then more advance notice could be necessary.

**Right to attend**

There is no express or implied reference to a right accorded a victim or victim's representative to be physically present or heard at a vacatur hearing in Crim. Proc. § 8-301.1 or in Art. 47. The Appellate Court of Maryland incorrectly interpreted the "right to attend" under Crim. Proc. § 8-301.1 to require in-person attendance because the statute "was enacted in 2019, before the COVID-19 pandemic and the general acceptance and use of Zoom to conduct a wide range of court proceedings." *Lee*, 257 Md. App. at 539, 292 A.3d at 382. Despite the exponential growth of virtual hearings following the COVID-19 pandemic, the Court determined that the availability of Zoom "does not . . . take away from the value in attending a proceeding in person, when desired, particularly when all other individuals involved in the proceeding appear in person." *Id.*, 292 A.3d at 382. In the Court's view, Petitioner's appearance in-person necessarily required Respondent's in-

20

person attendance. *Id.*, 292 A.3d at 382–83. The Court's analysis is flawed because it presumes that a victim has a co-extensive right to attend a hearing as a party in a criminal proceeding. The status of a victim or victim's representative has not been elevated to the level of a party. *Hoile*, 404 Md. at 606, 948 A.2d at 39.

Under Crim. Proc. § 8-301.1(d)(2), "[a] victim or victim's representative has the right to attend a hearing on a motion [to vacate a conviction], as provided under [Crim. Proc.] § 11-102[.]" In turn, Crim. Proc. § 11-102(a) provides that, "[i]f practicable, a victim or victim's representative who has filed a notification request form . . . has the right to attend any proceeding in which the right to appear has been granted to a defendant." *See also* Md. Const. Decl. of Rts. art. 47(b) (providing similar language). Crim. Proc. § 11-102(a) does not state that a victim or victim's representative has a right to attend a proceeding in the same manner as the defendant. It merely provides that the general right to attend exists whenever the defendant has "the right to appear[.]" Crim. Proc. § 11-102(a). Although the statute does not define the term "attend[,]" it is reasonable for the statute to contemplate both virtual and in-person attendance for a victim or victim's representative.

Both Article 47(b) and Crim. Proc. § 11-102(a) limit a victim's or victim's representative's right to attend a hearing to cases where it is "practicable[]" for them to exercise that right. The term "practicable[]" refers to impediments that affect the victim's or victim's representative's ability to attend a hearing. *Practicable*, Black's Law Dictionary (11th ed. 2019) (defining "practicable" as "reasonably capable of being accomplished; feasible in a particular situation[.]"). The circuit court has broad authority

21

to "ensure that the victim is in fact afforded the rights provided to victims by law." Crim. Proc. § 11-103(e)(1). Read together, Crim. Proc. §§ 11-102(a) and 11-103(e)(1) advise that (1) the courts may determine if it is "practicable[]" for a victim or victim's representative to exercise the right to attend; and (2) the court has authority to fashion an appropriate remedy to ensure the victim's attendance.

Occasionally, as in the case at bar, the victim or victim's representative resides out-of-state, which may render in-person attendance prohibitively costly or difficult to achieve. The Maryland Rules address these logistical concerns. A Committee Note to Maryland Rule 4-333(g) explains that "locating . . . victims[ or] victim's representatives may be difficult[,]" because a motion to vacate a conviction "may be filed years after the judgment of conviction[.]" Obviously, a victim or victim's representative would not likely exercise their right to attend a postconviction hearing if the State could not locate them. To protect that right, the State must make "[r]easonable efforts, beyond merely relying on the last known address in a court record, . . . to locate" those individuals. *Id.* Provided the State makes those "[r]easonable efforts," Maryland Rule 4-333(h)(1) indicates that a victim's inability to attend or absence from a hearing does not render the hearing procedurally deficient. Md. Rule 4-333(h)(1) ("If . . . a victim or victim's representative entitled to notice . . . is not present at the hearing, the State's Attorney shall state on the record the efforts made to contact that person and provide notice of the hearing."). Maryland Rule 4-333(h)(3) notably provides for procedures following the defendant's absence from a vacatur hearing. The Rule states that, "[i]f the motion is denied *and the defendant did not receive actual notice of the proceedings*, the court's denial shall be without prejudice to

22

refile the motion when the defendant has been located and can receive actual notice." Md. Rule 4-333(h)(3) (emphasis added).

The Rule is silent regarding the victim's absence or inability to attend in-person. That silence suggests that whether a victim or victim's representative is afforded "dignity, respect, and sensitivity" under Article 47(a) depends upon whether they receive notice, not whether they can attend in their preferred method. Although Crim. Proc. § 8-301.1 was enacted before the COVID-19 pandemic, that does not limit the "right to attend" to in-person hearings, absent contrary language. Indeed, this Court does not "add . . . language . . . to reflect an intent not evidenced in the plain and unambiguous language of the statute[.]" *Lockshin*, 412 Md. at 275, 987 A.2d at 29 (citations omitted). To balance Petitioner's interest in expeditiously having his conviction vacated following years of imprisonment and Respondent's right to attend the vacatur hearing, the circuit court could have reasonably determined that Respondent's residence in California rendered it impracticable for him to attend in-person. It then follows that providing for the Respondent to attend remotely ensured that he would attend the hearing, which he did.[8]

---

[8] At the time of the vacatur hearing, circuit courts had discretion to provide for, and in certain circumstances, require, remote proceedings and attendance in some civil matters. *See* Former Maryland Rules 2-802, 2-803. Only certain enumerated "participants" are contemplated by the Rules. Former Maryland Rule 2-801(d).

By expressly limiting the circuit court's discretion to order "participants" to participate in hearings remotely, the Maryland Rules contemplated that the circuit court would have broader discretion to limit the in-person participation of victims, who are neither parties to a criminal proceeding nor "participants" to a vacatur hearing for purposes of Former Maryland Rule 2-801(d). This conclusion comports with the circuit court's authority to determine whether it is "practicable[]" for a victim or victim's representative to attend a vacatur hearing in-person under Crim. Proc. § 8-301.1(d)(2).

23

As Judge Berger articulated in his dissent, "the notice requirement must be considered in concert with the right to attend, and, in this case, [Respondent] was ultimately able to attend the vacatur hearing[.]" *Lee*, 257 Md. App. at 557, 292 A.3d at 393 (Berger, J., dissenting). Judge Berger explained that the distinctions "between remote participation and in-person participation [] are not implicated when an individual has the right to attend but not participate." *Id.* at 559, 292 A.3d at 394 (Berger, J., dissenting). I agree with Judge Berger's analysis.

**Right to be heard**

The Majority appears to have interpreted the "right to attend" a vacatur hearing under Crim. Proc. § 8-301.1(d) as reflecting a right to be heard, whereas the Appellate Court of Maryland interpreted the "right to attend" vacatur hearings under Crim. Proc. § 8-301.1(d) to not provide "a right to be heard[.]" *Compare Syed v. Lee*, Slip Op. at 47–61, *with Lee*, 257 Md. App. at 543, 292 A.3d at 384. The Appellate Court reasoned that a victim's right to be heard is enshrined in other statutes, such as Crim. Proc. § 11-402 regarding a presentence investigation and Crim. Proc. § 11-403(b) regarding a sentencing hearing or disposition hearing in a juvenile proceeding. *Lee*, 257 Md. at 543, 292 A.3d at 384–85. In the Appellate Court's view, the absence of a right to be heard during a vacatur hearing in Crim. Proc. § 8-301.1 meant the General Assembly intended to exclude such a right. *Id.*, 292 A.3d at 385. I agree with that interpretation.

---

This Court has since vested even broader discretion throughout our entire court system with respect to remote proceedings, including in criminal and appellate matters. *See* Maryland Rules, Title 21.

24

Respondent emphasizes the cross reference in Maryland Rule 4-333(h)(3), which provides:

> (3) *Disposition.* If the court finds that the State's Attorney has proved grounds for vacating the judgment of conviction . . . and that the interest of justice and fairness justifies vacating the judgment of conviction . . ., the court shall vacate the judgment of conviction[.]  Otherwise, the court shall deny the motion and advise the parties of their right to appeal.  If the motion is denied and the defendant did not receive actual notice of the proceedings, the court's denial shall be without prejudice to refile the motion when the defendant has been located and can receive actual notice.  The court shall state its reasons for the ruling on the record.
>
> **Cross reference**: For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see [Maryland] Code, [Crim.] [Proc.] § 11-403.

*See also* Crim. Proc. § 11-403(b)(2) ("In the sentencing or disposition hearing the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of sentence or other disposition . . . at the request of the victim or the victim's representative[.]").  In Respondent's view, this cross reference imports the right to be heard in a sentencing or disposition hearing into the context of a vacatur hearing.  According to Respondent, it follows that he may challenge the State's motion to vacate Petitioner's conviction, including by presenting evidence.

"Article 47 and related legislation have created a class of specific, but narrow, rights for victims with regard to certain aspects of the criminal proceedings against the perpetrators of the crimes committed against victims or their property." *Hoile*, 404 Md. at 605, 948 A.2d at 39.  Specifically, Article 47 indicates that the rights "to be notified of, to attend, and to be heard at a criminal justice proceeding[]" exist to the extent "th[o]se rights are implemented[.]"  Md. Const. Decl. of Rts., art. 47(b).  Accordingly, for Respondent to

25

prevail, the alleged "right to speak" at a vacatur hearing must derive from Maryland statutory law. There is no such statute.

Maryland Rule 4-333(g)(2) requires that "the victim or victim's representative [be notified] of the date, time, and location of the hearing and the right to attend the hearing." The Rule implements Crim. Proc. § 8-301.1(d)(2), which, in relevant part, grants the victim or victim's representative "the right to attend a hearing[.]" Maryland Rule 4-333 cross-references the victim's right to address the court during a sentencing or disposition hearing under Crim. Proc. § 11-403, but there is no indication that it imports that right into the context of a vacatur hearing. The Standing Committee on Rules of Practice and Procedure ("Rules Committee") issued a report on September 12, 2019, which explained that the cross-reference was "included . . . to highlight the right of the victim or victim's representative to address the court during a sentencing or disposition hearing." Standing Committee on Rules of Practice and Procedure, *Two Hundred and First Report of the Standing Committee on Rules of Practice and Procedure*, at 17 (Sept. 12, 2019), https://www.mdcourts.gov/sites/default/files/rules/reports/201streport_0.pdf, *archived at*: https://perma.cc/F4RJ-EDFU. By "highlighting" a right that is absent from both the Rule and the statute which the Rule implements, the Rules Committee recognized that the circuit court *may*, but is not required by statute or rule to, allow a victim or victim's representative to address the court during vacatur hearings. *See* Maryland Rule 1-201(e) (Among other rules of construction: "cross references . . . are not part of these rules.")

Besides, the right to address the court under Crim. Proc. § 11-403 does not apply to vacatur hearings. Crim. Proc. § 11-403(b) provides, in relevant part, "[i]n the sentencing

26

or disposition hearing the court, if practicable, shall allow the victim or victim's representative to address the court under oath before the imposition of sentence or other disposition[.]" Crim. Proc. § 11-403(a) defines "sentencing or disposition hearing[,]" in relevant part, as "a hearing at which the imposition of a sentence, . . . or alteration of a sentence . . . is considered." According to the Revisor's Note, the language in Crim. Proc. § 11-403 was "derived without substantive change from former Art. 27 § 780(b), (c), (d), and (a)(1) and (2)." Art. 27 § 780(b), the precursor to Crim. Proc. § 11-403(b), provided, in relevant part: "In the sentencing or disposition hearing of a criminal or juvenile case, the court . . . [s]hall, if practicable, permit the victim or victim's representative under oath or affirmation to address the judge before the imposition of sentence or other disposition[.]" *Conyers v. State*, 354 Md. 132, 178, 729 A.2d 910, 934 (1999) (quoting Art. 27 § 780(b)).

Neither Crim. Proc. § 11-403 nor its predecessor, Art. 27 § 780, extend a victim's right to address the court during a sentencing hearing to a vacatur hearing. Indeed, Crim. Proc. § 11-403(e)(1) suggests that the victim's right to address the court during a hearing that "alter[s]" the sentence pertains specifically to "a hearing on a motion for a revision, modification, or reduction of a sentence or disposition in circuit court[.]" Orders that "revis[e], modif[y], or reduc[e] [] a sentence" implicate the circuit court's revisory authority under Maryland Rule 4-345 regarding *sentences*, but not *convictions*. Unlike Maryland Rule 4-333, which merely cross-references Crim. Proc. § 11-403, Maryland Rule 4-345(e)(3) directly incorporates the right to be heard into its text:

> (3) *Inquiry by Court.* Before considering a motion under this Rule, the court shall inquire if a victim or victim's representative is present. If one is present, *the court shall allow the victim or victim's representative to be heard as*

27

*allowed by law*. If a victim or victim's representative is not present and the case is one in which there was a victim, the court shall inquire of the State's Attorney on the record regarding any justification for the victim or victim's representative not being present, as set forth in [Maryland] Code, [Crim.] [Proc.] § 11-403(e). If no justification is asserted or the court is not satisfied by an asserted justification, the court may postpone the hearing.

(Emphasis added). Maryland Rule 4-345(f) further aligns with Crim. Proc. § 11-403's focus on sentences, rather than convictions. Maryland Rule 4-345(f) provides that "[t]he court may modify, reduce, correct, or vacate a *sentence* only on the record in open court, after hearing . . . from each victim or victim's representative who requests an opportunity to be heard." (Emphasis added).

The rationale for limiting a victim's right to be heard to hearings where a sentence is imposed or modified is clear: those situations are where the victim's involvement in the proceedings has the most salience. During sentencing, the circuit court "is vested with virtually boundless discretion" to fashion a sentence that "best accomplish[es] the objectives of sentencing—punishment, deterrence[,] and rehabilitation." *Cruz-Quintanilla v. State*, 455 Md. 35, 40, 165 A.3d 517, 520 (2017) (citation and quotation marks omitted). This Court has explained that the purpose of a victim's impact statement is "to provide the victim access to the sentencing process by ensuring that at least in one way the effects of the crime on the victim will be presented to and considered by the sentencing judge." *Lopez*, 458 Md. at 175, 181 A.3d at 816 (citation omitted). That opportunity remains present, even if the circuit court modifies or vacates the criminal defendant's sentence because the conviction would remain in place. Whether the circuit court reconsiders the

28

sentence or is imposing a new sentence, the impact on the victim will always be a consideration.

In contrast, vacatur proceedings implicate the validity of the conviction itself, rather than the severity or validity of a sentence. *See* Crim. Proc. § 8-301.1(a) ("On a motion *of the State*, at any time after the entry of a . . . judgment of conviction in a criminal case, the court with jurisdiction over the case may vacate the . . . conviction[.]"); *see also Vacatur*, Black's Law Dictionary (11th ed. 2019) ("The act of annulling or setting aside."). If the circuit court grants the State's vacatur motion, then the criminal defendant is no longer convicted of the underlying charges and the State must then establish the defendant's guilt beyond a reasonable doubt if it elects to pursue those charges again. *See Williams v. State*, 322 Md. 35, 41, 585 A.2d 209, 212 (1991) ("[T]he presumption of innocence and the prosecution's burden of proof are logically similar[.]" (citation omitted)).

Critically, Maryland Rule 4-333(h)(3) *requires* the circuit court to vacate the judgment of conviction "[i]f the court finds that the State's Attorney has proved grounds for vacating the judgment of conviction . . . and that the interest of justice and fairness justifies vacating the judgment of conviction[.]" As the Appellate Court of Maryland noted, the circuit court does not possess the same degree of discretion in a vacatur proceeding as it does in a sentencing proceeding because it is evaluating whether the State has met its burden, rather than fashioning an appropriate punishment for the defendant. *Lee*, 257 Md. App. at 545–46, 292 A.3d at 386 ("A hearing on a motion to vacate a conviction pursuant to C[rim. Proc.] § 8-301.1 . . . does not involve a discretionary ruling regarding whether to alter a sentence. Rather, it is a proceeding after conviction and

29

sentencing that seeks to vacate the judgment based on legal grounds.").  The circuit court is not statutorily required to hear from a victim or victim's representative during vacatur proceedings because those proceedings no longer concern punishing the criminal defendant; rather, those proceedings concern the very basis of the criminal defendant's guilt—conviction.

Accordingly, I dissent.

Justices Booth and Battaglia have authorized me to state they join in this dissent.

Circuit Court for Baltimore City
Case No.: 199103042
Argued: October 5, 2023

IN THE SUPREME COURT
OF MARYLAND

No. 7

September Term, 2023

ADNAN SYED

v.

YOUNG LEE, AS VICTIM'S
REPRESENTATIVE, ET AL.

Watts,
*Hotten,
Booth,
Biran,
Gould,
Eaves,
Battaglia, Lynne A. (Senior Justice,
Specially Assigned),

JJ.

Dissenting Opinion by Booth, J.,
which Hotten and Battaglia, JJ., join.

Filed: August 30, 2024

* Hotten, J., now a Senior Justice, participated in the hearing and conference of this case while an active member of this Court. After being recalled pursuant to Maryland Constitution, Article IV, § 3A, she also participated in the decision.

That the Legislative, Executive and Judicial Powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other.

Maryland Constitution, Declaration of Rights, Article 8.

Respectfully, I dissent. In my view, this appeal was rendered moot by the State's entry of a nol pros following the grant of the State's vacatur motion. I disagree with the Majority that the nol pros was a legal nullity. That said, because this case presents issues that are likely to recur and evade review, as well as matters of important concern, I would exercise discretion to consider the merits.

With respect to the merits, as I discuss more fully below, in my view, the Majority's opinion in this case implicates separation of powers concerns. The Majority creates a victim's constitutional "right to be heard" that was not argued or briefed by the parties and is inconsistent with the plain language of Article 47 of the Maryland Declaration of Rights. The Majority also re-writes the victims' rights statutes to provide a right where the Legislature has declined to provide one. Respectfully, it is not our role to act as a super-legislature when we think our policies are better.

# I

## Mootness

Ordinarily, this Court will "not render judgment on moot questions." *La Valle v. La Valle*, 432 Md. 343, 351 (2013). "An appeal is moot when there is no longer an existing

controversy when the case comes before the Court or when there is no longer an effective remedy the Court could grant." *R.J. Reynolds Tobacco Co. v. Stidham*, 448 Md. 497, 515 (2016) (citations omitted). In holding "that this appeal is not moot[,]" Maj. Slip Op. at 32, the Majority encroaches not only into the Legislative Branch's exclusive domain, but also into prosecutorial functions. It is thus useful to start by examining the State's Attorney's broad discretionary powers as a constitutional officer of the State.

### A.     The State's Attorney's Broad Discretionary Powers

The State's Attorneys of Maryland are constitutional officers. Md. Const., art. V, § 7;[1] *Wynn v. State*, 388 Md. 423, 439–40 (2005).[2] They perform "such duties" as are

---

[1] Article V, Section 7 of the Maryland Constitution provides:

> There shall be an Attorney for the State in each county and the City of Baltimore, to be styled "The State's Attorney", who shall be elected by the voters thereof, respectively, and shall hold his office for four years from the first Monday in January next ensuing his election, and until his successor shall be elected and qualified; and shall be re-eligible thereto, and be subject to removal therefrom, for incompetency, willful neglect of duty, or misdemeanor in office, on conviction in a Court of Law, or by a vote of two-thirds of the Senate, on the recommendation of the Attorney-General.

[2] To set the stage for the newly discovered constitutional victims' rights that the Majority has unearthed despite a lack of argument or briefing on the same, the Majority starts its opinion in colonial America, noting that at common law, private prosecutions were commonly conducted by victims. Majority Slip Op. at 3–4. As the Majority correctly points out, private prosecutions by victims were constitutionally abolished over 200 years ago. They were abolished under the federal system when Congress created the Office of the Attorney General through the Judicial Act of 1798. In Maryland, State's Attorneys have been the elected officials charged with prosecutorial discretion since the 1851 Constitution.

In *Murphy v. Yates*, 276 Md. 475 (1975), we traced the origin and scope of the powers of the State's Attorneys. We concluded that the State's Attorneys have had the constitutional duty since 1851 to prosecute and defend on the part of the State all cases in

"prescribed by the General Assembly." Md. Const., art. V, § 9; *see also* Md. Code Ann., Criminal Procedure Article ("CP") § 15-102 (conferring the authority upon the State's Attorneys to "prosecute and defend on the part of the State all cases in which the State may be interested").

"While prosecutorial discretion is subject to oversight by the courts to ensure that it is exercised within constitutional and statutory constraints, the [O]ffice of [the] State's Attorney is not a branch of the judiciary, nor is it directly subject to its supervision." *Oglesby v. State*, 441 Md. 673, 680 (2015) (citation and internal quotations omitted). We have commented on the State's Attorneys' broad discretion in numerous cases. *See, e.g.*, *Evans v. State*, 396 Md. 256, 298 (2006) (observing that subject to constitutional and statutory limitations, State's Attorneys in Maryland "retain the broad discretion they have historically enjoyed in determining which cases to prosecute, which offenses to charge, and how to prosecute the cases they bring"); *Wynn v. State*, 388 Md. 423, 441 (2005); *Beverly v. State*, 349 Md. 106, 121 (1998); *Murphy v. Yates*, 276 Md. 475, 489, 495 (1975) (explaining that "State's Attorneys are vested with the broadest official discretion," and that a State's Attorney's "most awesome discretionary power[]" is "to determine whether

_____

which the State may be interested, subject only to constitutional limitations. *Murphy*, 276 Md. at 485–86 (citing Article V, § 9 of the current Maryland Constitution and the 1851 Maryland Constitution). This constitutional duty was derived from the common law and statutory powers formerly possessed by the Attorney General of Maryland. *Id.* at 491–92.

Although I agree with the Majority that the "pendulum" has swung in a manner to appropriately recognize victims' rights, *see* Maj. Slip Op. at 5, I disagree that its arc is as sweeping as the Majority's new constitutional holding here.

3

or not to prosecute."); *Ewell v. State,* 207 Md. 288, 296 (1955); *Brack v. Wells*, 184 Md. 86, 90 (1944).

The State's Attorney's discretion in charging decisions is ultimately derived "from the separation of powers in the Maryland Constitution."[3] *Oglesby*, 441 Md. at 680 (citing *State v. Lykins*, 43 Md. App. 472, 473 (1979), *modified*, 288 Md. 71 (1980) (providing that "separation of powers 'compels that we brook no lightly assumed interference by the judicial branch with the function of [the State's Attorney] . . . and . . . not arrogate unto our branch supervisory powers which the Constitution does not bestow'")); *see also Babbitt v. State,* 294 Md. 134, 138 (1982) (holding that the circuit court had no authority to appoint counsel for the State to initiate prosecution because the court is not authorized "to assume the State's Attorney's constitutional power to determine when and if to prosecute").

### B.    The State's Authority to Enter a Nol Pros

This case concerns the State's Attorney's authority to enter a nol pros—an "action taken by the State to dismiss pending charges when it determines that it does not intend to prosecute the defendant under a particular indictment." *State v. Huntley*, 411 Md. 288, 291 n.4 (2009); CP § 1-101(k) ("'Nolle prosequi' means a formal entry on the record by the State that declares the State's intention not to prosecute a charge."). The entry of a nol pros "is a part of the broad discretion vested in the State's Attorney[,]" *State v. Simms*, 456 Md. 551, 561 (2017) (citation and internal quotations omitted), and "is generally within the sole

---

[3] Article 8 of the Maryland Declaration of Rights provides: "That the Legislative, Executive and Judicial powers of Government ought to be forever separate and distinct from each other; and no person exercising the functions of one of said Departments shall assume or discharge the duties of any other."

4

discretion of the prosecuting attorney, free from judicial control and not dependent upon the defendant's consent[,]" *Ward v. State*, 290 Md. 76, 83 (1981). The State acts in accordance with its authority so long as it enters the nol pros in open court and prior to a final judgment. Md. Rule 4-247(a) ("The State's Attorney may terminate a prosecution on a charge and dismiss the charge by entering a nolle prosequi on the record in open court."); *see also Simms*, 456 Md. at 576 (holding that the authority to dismiss charges extends only until final judgment); *Williams v. State*, 140 Md. App. 463, 473–74 (2001), *cert. denied*, 367 Md. 90 (2001) ("The State has an absolute right, without court approval, to enter a nolle prosequi to charges, provided it does so in open court.").

"Under our decisions, when an indictment or other charging document is nol prossed, ordinarily the case is terminated[.]" *Curley v. State*, 299 Md. 449, 459 (1984) (cleaned up). To enter a nol pros "is an abandonment of the prosecution[.]" *Ward*, 290 Md. at 83. Once the State has entered a nol pros, it may proceed against the defendant for the same offense "only under a new or different charging document or count." *Curley*, 299 Md. at 460 (quoting *State v. Moulden*, 292 Md. 666, 673 (1982)).

While we have recognized that the State's discretion to nol pros is "not absolute" or "without restraint," *Hook v. State*, 315 Md. 25, 36 (1989), the discrete circumstances under which the State's discretion may be curtailed are (1) extremely narrow, and (2) not applicable here. I disagree with the Majority's determination that "[t]his case presents exceptional circumstances that call for a tempering of the broad authority that a State's Attorney typically possesses to nol pros a charge[,]" which the Majority asserts "flows logically from *Simms* and *Hook*." Maj. Slip Op. at 35. The effect of the Majority's holding

5

in this case is to elevate a victim's constitutional right to be treated "with dignity, respect, and sensitivity during all phases of the criminal justice process" over a criminal defendant's federal and state constitutional liberty interests.

In *Simms*, after a criminal defendant was convicted and sentenced, he noted an appeal to the Appellate Court, arguing that the evidence was insufficient to support his convictions. 456 Md. at 569, 554–55. During the pendency of the direct appeal, and prior to oral arguments, the State nol prossed the charge underlying the defendant's conviction and sentence, and thereafter moved to dismiss the defendant's appeal as moot. *Id.* at 555. After the Appellate Court rejected the State's argument, on *certiorari* to this Court, the State argued that the appeal was moot in light of the subsequent nol pros. *Id.* at 556–57. We held that the case was not moot because the State "does not have the authority to enter a nol pros after a final judgment has been entered against a defendant in a criminal case." *Id.* at 575. This Court emphasized that "[t]he State had no authority to use its power to nol pros to alter a final judgment entered in favor of or against a criminal defendant. Final judgment is the boundary of the State's discretion to enter a nolle prosequi." *Id.* We therefore determined that "the nol pros entered in the trial court as to the charge underlying the conviction and sentence was simply a nullity, 'improper' and therefore 'ineffective.'" *Id.* at 576.

This case was not, as the Majority concludes, "materially indistinguishable from *Simms*[,]" on October 11, 2022—the date on which the State nol prossed the charges. Maj. Slip Op. at 35. Here, there was not an underlying final judgment when the State entered the nol pros—it indisputably had been vacated. The Majority circumvents this inescapable

6

conclusion by assuming what it sets out to prove—that the vacatur itself was unlawful and thus Mr. Syed's final judgment remained, barring the State's Attorney's authority to enter the nol pros.

The Majority "reject[s] the argument that a prosecutor may use the nol pros power to divest a victim of the right to appeal what the victim contends is an unlawful vacatur order[.]" Maj. Slip Op. at 37 (quoting *Simms*, 456 Md. at 577). In reaching this conclusion, the Majority quotes *Simms*—a case involving a *criminal defendant's* right to appeal a conviction—and merely alters the quotation by replacing the *criminal defendant's* name there with "[*the victim's*]" here. *Id.* (emphasis added). A criminal defendant's right to appeal a conviction that causes a deprivation of liberty is not interchangeable with a victim's right to appeal alleged violations of their rights to adequate notice and to attend a hearing in person. They are simply not on equal footing. And as I discuss below, the Majority is creating a "right to be heard" in this case where none exists under the Maryland Constitution, or in any statute or rule that applies to a vacatur hearing.

Even more confounding is the Majority's reliance on *Hook*. In *Hook v. State*, we recognized the sole instance in which the State, acting in open court and prior to final judgment, may be prevented from nol prossing charges—when doing so would violate the criminal defendant's fundamental right to a fair trial. 315 Md. at 41–42. In that case, the defendant was tried for first- and second-degree murder in a capital murder trial for shooting and killing two people. *Id.* at 33. During the State's case-in-chief, evidence presented indicated that the defendant was intoxicated at the time of the shooting. *Id.* at

7

35. The State nol prossed the second-degree murder charge at the close of its case, over defense counsel's objection.[4] *Id.*

On appeal, the defendant argued that the dismissal of the second-degree murder charge rendered his trial fundamentally unfair as it placed the jury in the untenable position of having to convict him of either first-degree murder or nothing at all. This Court observed that "under the concept of fundamental fairness with respect to a trial in a criminal cause, the broad authority vested in a prosecutor to enter a nolle prosequi may be fettered in the proper circumstances." *Id.* at 37. We then "evaluate[d] the circumstances . . . surrounding the entry of the nol pros to the crime of murder in the second degree in the case at hand." *Id.* Specifically, we highlighted the fact that, not only did the State nol pros the second-degree murder charge, but when the defendant requested that the circuit court nevertheless instruct the jury on second-degree murder, it refused to do so, and prohibited defense counsel from arguing second-degree murder to the jury. *Id.* at 37–38.

We looked to the United States Supreme Court's decisions in *Keeble v. United States*, 412 U.S. 205 (1973), *Beck v. Alabama*, 447 U.S. 625, 638 (1980), *Hopper v. Evans*, 456 U.S. 605 (1982), and *Spaziano v. Florida*, 468 U.S. 447 (1984), for the following rule: "[I]n a capital case, at the request of the defendant, the court shall instruct the jury regarding a lesser included offense when the evidence warrants such an instruction[.]" *Id.* at 41. We

---

[4] Defense counsel objected "to the State's nol prossing or not submitting to the jury the count of second degree murder[,]" and cited to the court "the Fifth, Eighth and 14th Amendments of the U.S. Constitution and allege[d] that the nol pros under those circumstances is a violation of the Defendant's due process rights, fundamental fairness, equal protection and abuse of prosecutorial discretion." *Hook v. State*, 315 Md. 25, 35 (1989) (internal quotations omitted).

8

noted that in *Keeble*, the Supreme Court observed that "[w]here one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of *some* offense, the jury is likely to resolve its doubts in favor of conviction." *Id.* at 38 (emphasis in original) (quoting *Keeble*, 412 U.S. at 213). Given this concern, we then quoted *Beck v. Alabama*, where the Supreme Court recognized that "if the unavailability of a lesser included offense instruction enhances the risk of an unwarranted conviction, a state is constitutionally prohibited from withdrawing that option from the jury in a capital case." *Id.* at 40 (quoting *Beck*, 447 U.S. at 638) (cleaned up). We further observed that "the risk of an unwarranted conviction [] is created when the jury is deprived of the 'third option' of convicting the defendant of a lesser included offense." *Id.* (quoting *Spaziano*, 468 U.S. at 454).

Our holding in *Hook* arose from deep constitutional concerns relating to a criminal defendant—such as "the risk that the jury will convict, not because it is persuaded that the defendant is guilty of capital murder, but simply to avoid setting the defendant free[,]" *id.* (quoting *Spaziano*, 468 U.S. at 455)—that "the exceptional circumstances of this case present[ed] a rare occasion calling for a tempering of the broad authority vested in a State's Attorney to terminate a prosecution by a nolle prosequi." *Id.* at 41. As such, this curtailment of the State's Attorney's discretion was not merely "under the concept of fundamental fairness with respect to a trial in a criminal cause," but it was grounded in a more profound principle—that "[t]he right of *an accused* to a fair trial, although not a perfect trial, *is paramount*." *Id.* at 36–37 (citations omitted) (emphasis added).

Here, Mr. Syed's constitutionally protected liberty interest was the subject of the State's broad discretionary authority to enter a nol pros. As a result of the State's exercise

9

of this authority, this criminal defendant was freed from charges. The Majority's decision here turns the fundamental fairness principles expressed in *Hook* on their head. There is no question that, through the ratification of Article 47 of the Maryland Declaration of Rights, the voters expressed a clear public policy directing the General Assembly to codify victim's rights through legislation.[5] Simply put, victims' rights are not on equal footing with the constitutional rights granted to criminal defendants, nor are they "paramount" as to justify the curtailment of the State's Attorneys' discretion to nol pros.

Maryland Rule 4-333(i) provides that "[w]ithin 30 days after the court enters an order vacating a judgment of conviction or probation before judgment as to any count, the State's Attorney *shall* either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count." (Emphasis added). The State acted consistently with the mandatory language in the Rule when it entered the nol pros in this case. Respectfully, in my view, the Majority's decision to place limitations on the State's authority to nol pros charges is the first of several instances in this case in which the Majority is impermissibly encroaching into the authority of other branches of government.

---

[5] This case is also readily distinguishable from *Antoine v. State*, 245 Md. App. 521 (2020). There, the defendant was charged with assaulting the victim. *Id.* at 530. The trial court bound itself to a plea agreement without allowing the victim the opportunity to present victim impact evidence. *Id.* at 543. By doing so, the Appellate Court concluded that the trial court violated the victim's rights under CP §§ 11-402, 11-403. *Id.* at 561. Accordingly, the court vacated the defendant's sentence and plea agreement and remanded the case to the circuit court to reconsider the plea agreement after giving the victim the opportunity to present victim impact evidence. *Id. Antoine* has no application in this case because it did not involve a nol pros.

I agree with Judge Berger that this case is more similar to *Cottman v. State*, 395 Md. 729 (2006), in which the circuit court granted the defendant a new trial when the defendant's conviction was pending on appeal. *Lee v. State*, 257 Md. App. 481, 555 (2023) (Berger, J., dissenting). In that case, we relied upon the well-established principle "that trial courts are not stripped of their jurisdiction to take post-judgment action simply because an appeal is pending from that judgment." *Cottman*, 395 Md. at 740. We determined that the "appeal became moot the instant that the Circuit Court granted him a new trial." *Id.* at 743. Similarly, the appeal in this case became moot when the State entered a nol pos.

Nevertheless, this appeal presents unresolved issues that are of important public concern and are capable of repetition, yet evading review. *In re S.F.*, 477 Md. 296, 318–19 (2022). For that reason, I would exercise discretion to review the merits of this case.

The Majority holds that Mr. Lee had a right to be heard at the vacatur hearing, which arises from three sources: (1) the Maryland Constitution; (2) statute; and (3) rule. Generally, we interpret constitutional provisions, statutes, and Maryland Rules using the same canons of construction. *Davis v. Slater*, 383 Md. 599, 604 (2004) ("When interpreting constitutional provisions, we generally employ the same rules of construction that are applicable to the construction of statutory language."); *Admin. Off. of the Cts. v. Abell Found.*, 480 Md. 63, 83 (2022) ("The Maryland Rules are construed according to the same principles as statutes and other enactments."). As I describe below, although statutory and constitutional provisions often involve the same rules of construction, there are some differences. Additionally, when we are asked to determine whether a particular provision of a constitutional amendment establishes a self-executing substantive right, or

11

is instead, a directive to the Legislature to implement general provisions through legislation, we consider the text utilizing certain analytical principles.

## II

### Pertinent Canons of Statutory Construction

The cardinal rule of statutory interpretation is "to ascertain and effectuate the General Assembly's purpose and intent when it enacted the statute." *Wheeling v. Selene Finance LP*, 473 Md. 356, 376 (2021). In doing so, "our analysis begins with the normal, plain meaning of the language of the statute." *Id.* We start with the plain language because we "provide[] judicial deference to the policy decisions that the General Assembly enacts into law." *In re S.K.*, 466 Md. 31, 49 (2019). "We assume that the legislature's intent is expressed in the statutory language and thus our statutory interpretation focuses primarily on the language of the statute to determine the purpose and intent of the General Assembly." *Berry v. Queen*, 469 Md. 674, 687 (2020) (citations omitted). To ascertain the intent of the General Assembly, we often consult the bill title, including its purpose paragraph, which are part of the statutory text. *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 188 (2022). Oftentimes, we consult a dictionary. *Chow v. State*, 393 Md. 431, 445 (2006). We read the plain language of the statute "as a whole so that no word, clause, sentence or phrase is rendered surplusage, superfluous, meaningless or nugatory." *Koste v. Town of Oxford*, 431 Md. 14, 25–26 (2013) (internal quotations omitted). To that end, a statute's plain language "must be viewed within the context of the statutory scheme to which it belongs, considering the purpose, aim, or policy of the Legislature in enacting the statute." *Lockshin v. Semsker*, 412 Md. 257, 276 (2010) (cleaned up). At the same time,

12

"[w]e neither add nor delete language so as to reflect an intent not evidenced in the plain and unambiguous language of the statute, and we do not construe a statute with forced or subtle interpretations that limit or extend its application." *Id.* at 275 (internal quotations omitted); *see also Price v. State*, 378 Md. 378, 388 (2003) ("We cannot assume authority to read into [a statute] what the [General Assembly] apparently deliberately left out." (citation omitted)).

"Where the language of the statute is ambiguous and may be subject to more than one interpretation," "we look to the statute's legislative history, case law, purpose, structure, and overarching statutory scheme in aid of searching for the intention of the Legislature." *Koste*, 431 Md. at 26 (citations omitted); *Gardner v. State*, 420 Md. 1, 9 (2011) (explaining that in resolving ambiguities, we consider "the structure of the statute, how it relates to other laws, its general purpose and relative rationality and legal effect of various competing constructions[]" (quoting *State v. Johnson*, 415 Md. 413, 421–22 (2010))). "In every case, the statute must be given a reasonable interpretation, not one that is absurd, illogical or incompatible with common sense." *Gardner*, 420 Md. at 9 (quoting *Johnson*, 415 Md. at 421–22).

**III**

**Pertinent Canons of Construction and Analytical Principles
for Constitutional Amendments**

*A.    Constitutional Construction*

Although we generally interpret constitutional provisions using the same canons of construction utilized for statutory interpretation described below, there is one critical

13

distinction. That is, we are concerned not only with the framers' intent, but *also* the intent of the *voters* who ratified it. For this reason, in matters requiring interpretation of constitutional provisions, our task "is to discern and then give effect to the intent of the instrument's drafters and the public that adopted it." *State Bd. of Elections v. Snyder*, 435 Md. 30, 53 (2013) (citations omitted); *see also Buchholtz v. Hill*, 178 Md. 280, 285–86 (1940) (explaining that because the constitutional provisions are approved by the people of Maryland, courts lack the discretion to freely depart from the plain language of the instrument). In discerning the intent, we first look to the "terminology used in the provision, with each word being given its ordinary and popularly understood meaning[,] and, if the words are not ambiguous, the inquiry is terminated[.]" *Snyder*, 435 Md. at 53 (quoting *Brown v. Brown*, 287 Md. 273, 277–78 (1980) (cleaned up)). "In approaching and performing this task, we look to the natural and ordinary meaning of the provision's language. Where the provision at issue is clear and unambiguous, the Court will not infer the meaning from sources outside of the Constitution itself." *Id.* (internal citations omitted).

### B. Analytical Principles for Determining Whether a Constitutional Amendment Creates a Substantive Right in the Plain Text

When examining a constitutional amendment in order to determine whether it establishes a substantive self-executing right that is enforceable by the Court, *or* whether the constitutional amendment requires implementation by the Legislature in order to be effective, this Court has applied the analytical framework adopted by the United States

14

Supreme Court in *Davis v. Burke*, 179 U.S. 399 (1900). *See, e.g.*, *Benson v. State*, 389 Md. 615, 532–33 (2005); *Leser v. Lowenstein*, 129 Md. 244 (1916).

In *Davis*, the United States Supreme Court stated:

A constitutional provision may be said to be self-executing *if it supplies a sufficient rule by means of which the right given may be enjoyed and protected, or the duty imposed may be enforced*; and it is *not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.*

Where a constitutional provision is complete in itself it needs no further legislation to put it in force. When it lays down certain principles, as to enact laws upon a certain subject, . . . it may need more specific legislation to make it operative. In other words, it is self-executing only as far as it is susceptible of execution.

*Id.* at 403 (emphasis added) (quoting Thomas McIntyre Cooley, *A Treatise on the Constitutional Limitations which Rest upon the Legislative Power of the States of the American Union*, 99 (6th ed. 1890)).

In *Leser*, this Court was asked to determine whether the provisions of Article 15 were self-executing or required legislation to give them effect. 129 Md. at 250. This Court found some of the provisions of Article 15 to be "prohibitory and self-executing, and require no act of the Legislature to make them effective." *Id.* One such clause expressly prohibited the levy of a poll tax. Another was the provision declaring that paupers ought not be assessed for the support of the government. However, this Court found two provisions not to be self-executing because legislation was required to give effect to the provisions—the provisions declaring the method to be used to set future levies for taxes and the provision charging the General Assembly to set uniform rules providing for

15

separate land and classifications "as it deems proper." *Id.* (quoting Article 15 of the Declaration of Rights).

In undertaking its analysis of whether the constitutional provisions were self-executing, the Court applied the principles articulated in *Davis*, and others, including:

> [Whether a constitutional provision is self-executing is a question of] *whether the language of a constitutional provision is addressed to the courts or the Legislature.* A provision that the Legislature should make suitable provisions for carrying a constitutional amendment into effect is obviously addressed to the Legislature and is indicative of the intention that such amendment should not become effective until made so by an Act of the Legislature.
>
> * * *
>
> The General Assembly possesses all legislative power and authority except in such instances, and to such extent as the Constitutions of the State and of the United States have imposed limitations and restraints thereon. In this respect the Legislature differs from the Congress of the United States which has, and can exercise, only such power as the Federal Constitution expressly or by necessary implication confers upon it. In the General Assembly plenary power to legislate is vested, unless restrained by the Constitution. In the Congress the power to legislate is not vested, unless confided by the Federal Constitution. *In the State Constitution, we look, not for the power of the General Assembly to adopt an enactment, but for a prohibition against its adoption.* In the Federal Constitution we look, not for the prohibition, but for the delegated power to enact a measure.

*Id.* at 253–55 (emphasis added) (citations omitted). The Court further explained that:

> The legislation passed subsequent to the adoption of the Amendment which is not in conflict therewith or in conflict with some provision of the State or Federal Constitution cannot be set aside by the Court. And where an Act of the General Assembly is assailed as repugnant to some provision of the State or Federal Constitution, the repugnancy must be clear to justify the Court in striking it down. It will never do so in a doubtful case. A mere doubt as to the power of the Legislature is not sufficient. The Court must be satisfied that there is a plain, clear conflict between the Act and the Constitution[.]

*Id.* at 255.

16

Other state supreme courts have applied the same analytical framework when asked to consider whether a state constitutional provision is self-executing. For example, the Supreme Court of Wisconsin was asked to determine whether the first sentence of its victims' rights amendment—which states that "this state shall treat crime victims, as defined by law, with fairness, dignity and respect for their privacy[]"—provided a self-executing right. *Schilling v. State Crime Victim's Rights Bd.*, 692 N.W.2d 623, 625 (Wis. 2005). The Court determined that the constitutional provision was a "*statement of purpose that describes the policies to be promoted by the State and does not provide an enforceable, self-executing right[.]*" *Id.* at 632 (emphasis added). In so holding, the Court explained that "[l]ike statutes, constitutional provisions may include statements of purpose that use broad language." *Id.* at 627 (citations omitted). "As with a statute's statement of purpose, a constitutional section's statement of purpose does not provide for an independent, enforceable claim, as it is not in itself substantive." *Id.* Rather, "[s]uch a *statement of purpose is instead instructive of intent and guides implementation.*" *Id.* (emphasis added) (citations omitted). The Court further explained that "[a] constitutional provision is self-executing if no legislation is necessary to give effect to it, and if there is nothing to be done by the legislature to put it in operation." *Id.* (citations omitted).

Similarly, the Supreme Court of Connecticut considered whether its victims' rights constitutional amendment was self-executing in *Connecticut v. Gault*, 39 A.3d 1105 (Conn. 2012). In determining that the victims had no constitutional right to appeal from an order issued in a criminal case because the state legislature had not provided such a right, the Court explained that:

17

By its explicit terms, the victim's rights amendment contemplates additional implementing legislation to give effect to its provisions. As this court has explained: Constitutional provisions are not necessarily self-executing. In so far as they either expressly or by necessary implication require legislative action to implement them, they are not effective until that legislation is had. A constitutional provision may be said to be self-executing if it supplies a sufficient rule by means of which the right[s] given may be enjoyed and protected, or the dut[ies] imposed may be enforced; and it is not self-executing when it merely indicates principles, without laying down rules by means of which those principles may be given the force of law.

*Id.* at 1112 (internal quotation marks and citations omitted). In *Gansz v. Colorado*, 888 P.2d 256 (Co. 1995), the Supreme Court of Colorado held that the Colorado victim's rights constitutional amendment,[6] by its express terms, authorized the Colorado General Assembly to "defined [a]ll terminology" observing that subsequent implementing legislation "reflects a legislative determination as to when a victim's input would be relevant, and, therefore, when a right to be heard would be appropriate." *Id.* at 258. Because the legislature provided "no statutory right to be heard at a hearing on a district attorney's motion to dismiss criminal charges[,]" there was no right to be heard. *Id.*

---

[6] The Supreme Court of Colorado was construing Article II, section 16a of the Colorado Constitution, which provides:

**Rights of crime victims**. Any person who is a victim of a criminal act, or such person's designee, legal guardian, or surviving immediate family members if such a person is deceased, shall have the right to be heard when relevant, informed, and present at all critical stages of the criminal justice process. All terminology, including the term "critical stages", shall be defined by the general assembly.

*Gansz v. Colorado*, 888 P.2d 256, 257 (Co. 1995).

18

Moreover, other state supreme courts have determined that where the constitutional amendment includes the phrase "as provided by law," it indicates that further legislation is required to put the constitutional provision into action. In *Hawai'i v. Rodrigues*, 629 P.2d 1111 (Haw. 1981), the Supreme Court of Hawai'i held that a constitutional amendment creating a position of an independent grand jury counsel[7] was not self-executing because the phrase "as provided by law" contemplated further legislative action.

With these canons and analytical principles in mind, I turn to the evolution of victims' rights in Maryland, including the authority that the voters conferred upon the General Assembly to implement these rights, and the enabling legislation that the General Assembly enacted consistent with the policy objectives that it is entrusted to make.

IV

**Victims' Rights and Criminal Defendants' Rights—The Legislative Policy Decisions Balancing These Interests**

A. *Evolution of Victims' Rights in Maryland*

Before I discuss whether a victim has a "right to be heard" at a vacatur hearing it is useful to discuss the evolution of victims' rights in Maryland. I agree with the Majority

---

[7] At the time the Supreme Court of Hawai'i considered this constitutional interpretation, Article I, § 11 of the Hawai'i State Constitution read:

> Whenever a grand jury is impaneled, there shall be an independent counsel appointed as provided by law to advise the members of the grand jury regarding matters brought before it. Independent counsel shall be selected from among those persons licensed to practice law by the supreme court of the State and shall not be a public employee. The term and compensation for independent counsel shall be as provided by law.

*Hawai'i v. Rodrigues*, 629 P.2d 1111, 1113 (Haw. 1981).

19

that the General Assembly has been concerned with the treatment of victims since the 1980s. I also agree that the 1994 Constitutional Amendment established constitutional provisions for victims' rights. However, as set forth in detail below, I disagree with the Majority's conclusion that the Constitutional Amendment, by its plain terms, established a broad substantive victim's right to be heard, and that the Amendment contained limitations or restrictive conditions on the General Assembly's authority to implement the right through the enactment of subsequent legislation.

### 1. Pre-1994 Constitutional Amendment

#### a. 1982 Legislation—Victim Impact Statements at Sentencing

In 1982, the General Assembly enacted Maryland's first victim impact evidence statute. 1982 Md. Laws, ch. 494. This legislation required a presentence investigation report to include a victim impact statement if the defendant committed certain crimes that caused injury to a victim. *Id.* The original statute also permitted a State's Attorney to submit a victim impact statement in circumstances in which a presentence investigation was not required. *Id.* The purpose of the original victim impact evidence statute "was to provide the victim access to the sentencing process by ensuring that at least in one way the

effects of the crime on the victim [would] be presented to and considered by the sentencing judge." *Reid v. State*, 302 Md. 811, 817 (1985).[8]

### b. *1986 Legislation—Enactment of Statutory "Guidelines"*

During the 1986 Legislative Session, the General Assembly enacted Senate Bill 274 that created a new subtitle—"Crime Victims and Witnesses"—to the criminal code. 1986 Md. Laws, ch. 125. The express purpose of the Bill was to establish

> [g]uidelines for the treatment of and assistance to crime victims and witnesses that provide notice to victims and witnesses of certain rights and proceedings and require certain information, assistance, and services to witnesses and victims of crime under certain conditions; specifying that failure to enforce this Act does not create a cause of action against certain persons; providing for printing and distribution of the guidelines; defining certain terms; and generally relating to treatment of and services for crime victims and witnesses.

*Id.* As made clear by the purpose paragraph of the bill and the plain text of the statute, the newly enacted statute did not confer victims' "*rights*," but established "*guidelines*" for the "treatment and assistance to crime victims and witnesses[.]" This premise is evident not only from the term "guidelines" but also from the statute's use of the permissive verb "should" instead of the mandatory verb "shall." *See* 1986 Md. Laws, ch. 125; Article 27, § 761 (1992 Repl. Vol.). Notably, as originally introduced, Senate Bill 274 characterized the victim and witness provisions as a "crime victim and witness bill of rights" and the draft provisions of the statute characterized them as mandatory rights. 1986 Md. Laws, ch. 125. As adopted, the General Assembly replaced the mandatory

---

[8] The General Assembly enacted legislation the following year to require the sentencing court to consider a presentence investigation report with victim impact statements in death penalty cases. 1983 Md. Laws, ch. 297.

21

language with permissive language, striking the "bill of rights" language and instead couching the language pertaining to the treatment of victims and witnesses as permissive "guidelines."

Specifically, the statute expressed that crime victims "*should*" receive the following treatment and assistance, including:

- to be treated with dignity, respect, courtesy, and sensitivity;

- to be notified in advance of dates and times of trial court proceedings in the case and, on written request, of post-sentencing proceedings, and be notified if the court proceedings to which they have been summoned will not proceed as scheduled;

- For a crime of violence,[9]. . . on written request, be kept informed . . . of any proceedings that affects the crime victim's interest, including bail hearing, dismissal, nol pros, or stetting or setting of charges, trial, or disposition, whether at hearing, trial, or appellate level[.]

And perhaps most notably here,

- "*On request of the State's Attorney* to *and in the discretion of the judge, be permitted to address the judge* or jury or have a victim impact statement read by the judge or jury at sentencing before the imposition of the sentence or at any hearing to consider altering the sentence[.]" (Emphasis added).

In addition to the permissive guidelines, the Legislature enacted House Bill 778, permitting a victim to address the sentencing judge "*at the request of the State's Attorney and in the discretion of the sentencing judge*" prior to the imposition of the sentence. 1986 Md. Laws, ch. 127; Article 27 § 643D (1992 Repl. Vol.) (emphasis added). Similar to the above described "guidelines" legislation, as initially introduced, the legislation

---

[9] Crimes of violence were defined in Article 27 § 643B (1982, Repl. Vol., 1985 Supp.).

provided that the victim was "entitled" to address the sentencing judge prior to the imposition of a sentence. 1986 Md. Laws, ch. 127. Prior to adoption, the legislation was amended to replace "entitled" with "may," and cabined the victim's ability to address the Court to instances "at the request of the State's Attorney" and "in the discretion of the sentencing judge[.]" *Id.*

### c. 1989 Legislation—Presumption of Right of Certain Crime Victims to be Present at a Criminal Trial

During the 1989 Legislative Session, the General Assembly enacted Senate Bill 486, which created a presumption that certain victims of crimes of violence who had testified as a witness at trial, or their representative, would "be presumed to have the right to be present at the trial." 1989 Md. Laws, ch. 486. The legislation authorized the trial judge to sequester a victim or representative at the request of the State or the defendant "only after a finding of good cause." *Id.*

### d. A Summary of Victims' Interests Prior the 1994 Constitutional Amendment

Taking a snapshot of victims' interests pertaining to notice, attendance, and the opportunity to be heard immediately prior to the ratification of the 1994 Constitutional Amendment, they can be summarized as follows. *First*, a sentencing judge was required to consider a victim impact statement as a part of a presentence investigation by the State. Article 41, § 4-609(c) (1993 Repl. Vol.). *Second*, permissive "guidelines" were in place that gave a victim the ability to receive notice of certain criminal proceedings, and to address the sentencing judge, *in the judge's sole discretion*, prior to the imposition of a sentence or at any hearing to consider altering the sentence. Article 27, §§ 761(12), 643D

(1992 Repl. Vol.). *Third*, a victim of a violent crime who testified as a witness in a criminal trial, or the victim's representative, had a presumptive right to attend the criminal trial without sequestration. Article 27, § 620 (1992 Repl. Vol.).

The above-described permissive "guidelines" and sentencing judge's discretionary authority constituted the extent of a victim's ability to receive "notice" or "to be heard" up to and after the ratification of the 1994 Constitutional Amendment. *See* Article 27, §§ 780, 848 (1996 Repl. Vol.). As these provisions make clear, the guidelines did not provide a victim with any *rights* to "notice" or "to be heard" in *any* criminal proceeding prior to the 1994 Constitutional Amendment.

### 2. *Constitutional Amendment of 1994—Article 47*

In 1994, the voters of Maryland ratified Article 47 of the Declaration of Rights, which provides:

> (a) A victim of crime shall be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process.
>
> (b) In a case originating by indictment or information filed in a circuit court, a victim of crime shall have the right to be informed of the rights established in this Article, and, upon request and if practicable, to be notified of, to attend, and to be heard at a criminal justice proceeding, as these rights are implemented and the terms "crime", "criminal justice proceeding", and "victim" are specified by law.
>
> (c) Nothing in this Article permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of crime to take any action to stay a criminal justice proceeding.

When considering the plain language of Article 47, we also consider the plain language of the purpose paragraph included in the bill title that proposed the establishment of the new right. The purpose clause reads as follows:

24

> FOR the purpose of adding a new article to the Maryland Declaration of Rights establishing that a victim of crime has a constitutional right to be treated with dignity, respect, and sensitivity during all phases of the criminal justice process; *establishing that a victim of crime has a constitutional right* to be informed of the rights established in this Amendment and, *under certain circumstances*, to be notified of, to attend, and *to be heard* at a criminal justice proceeding, *as these rights are implemented and certain terms are specified by law*; providing that nothing in this Amendment permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of crime to take any action to stay a criminal justice proceeding; and submitting this Amendment to the qualified voters of the State of Maryland for their adoption or rejection.

1994 Md. Laws, ch. 102 (emphasis added). As we recently explained, "the bill title and purpose *are part* of the statutory text—*not* the legislative history—even if both are used in service of ascertaining the intent of the General Assembly." *Elsberry v. Stanley Martin Cos., LLC*, 482 Md. 159, 187 (2022) (emphasis in original and emphasis added); *see also* Department of Legislative Services, *Legislative Drafting Manual*, at 53–54 (2024) (explaining that the purpose paragraph is part of the bill title that describes in constitutionally acceptable detail what the bill does). The purpose paragraph essentially tells the reader what the bill is about. Here, the most important readers were the voters of Maryland, who were being asked to ratify the Constitutional Amendment during the 1994 election. The plain text of the purpose paragraph expressly provides that the victim's "*right to be heard*" would arise "*under certain circumstances*" "*as these rights are implemented*" by the General Assembly and "*certain terms are specified by law*."

When the voters were asked to ratify Article 47, the ballot contained a similar summary, recognizing that, by voting for the amendment, the voters were instructing the General Assembly to provide victims with a "*right under certain circumstances*" "to be

25

heard" at a "criminal justice proceeding," as the General Assembly determined in its policy-making legislative function.

## CONSTITUTIONAL AMENDMENTS

### Question 1:

### *VICTIMS' RIGHTS*

> Establishes that crime victims have a right to be treated with respect and sensitivity throughout the criminal justice process; *a right under certain circumstances* to be notified of, to attend, and *to be heard* at, a criminal justice proceeding; and a right to be notified of these rights. No money claim or right to stay proceedings arises from this article.

(Emphasis added). From the Bill's purpose paragraph and the language on the ballot, a voter who casts a vote in favor of the amendment understood that a victim's "right to be heard" was not self-executing and that by casting a vote in favor of the amendment, they were entrusting their elected officials to make policy or judgment calls concerning the "certain circumstances" under which this right would be implemented.

Turning to the plain language of Article 47, I would examine the plain text and its structure using the analytical standards that this Court has adopted when considering whether provisions of a constitutional amendment establish a self-executing substantive right, or instead, require legislation to give them effect. As reflected below, Article 47, by its plain and unambiguous language, did not create a self-executing substantive victim's "right to be heard" at any "criminal proceeding."

Subsection (a) states that a victim shall "be treated by agents of the State with dignity, respect, and sensitivity during all phases of the criminal justice process." It is a broad purpose statement and clearly did not establish a self-executing substantive right.

26

This purpose statement fits within the description this Court applied in *Leser* describing when a constitutional provision does *not* create a substantive self-executing right:

> [A]lthough none of the provisions of a constitution are to be looked upon as immaterial or merely advisory, there are some which . . .are as incapable of compulsory enforcement as are directory provisions in general. The reason is that, while the purpose may be to establish rights or to impose duties, they do not in and of themselves constitute a sufficient rule by means of which such right may be protected or such duty enforced. In such cases, before the constitutional provision can be made effectual, supplemental legislation must be had; and the provision may be in its nature mandatory to the legislature to enact the needful legislation . . . . Sometimes the constitution in terms requires the Legislature to enact laws on a particular subject; and here it is obvious that the requirement has only a general force; the Legislature ought to obey it; *but the right intended is to be given is only assured when the legislation is voluntarily enacted.*

*Leser*, 129 Md. at 251 (emphasis added) (quoting *Cooley on Constitutional Limitations, supra* at 98). Subsection (a) is incapable of compulsory enforcement because "[i]t [does] not suppl[y] a sufficient rule by means of which the right given may be enjoyed and protected, or a duty imposed [that] may be enforced[.]" *Id.* at 252; *Benson*, 389 Md. at 628. Rather, it "merely indicates principles, without laying down rules by means of which those principles may be given the force of law[.]" *Benson*, 389 Md. at 628–29 (internal citations and quotations omitted); *see also Schilling*, 692 N.W.2d at 627 (explaining that a similar purpose statement in the state's victim's right statute "does not provide for an independent, enforceable claim, as it is not itself substantive" but is "instead *instructive of intent and guides implementation.*" (emphasis added) (citations omitted)).

27

Nor does the plain language and express terms of subsection (b) create a self-executing substantive victim's right to be heard.[10]  The first clause provides the scope of its application—that is, it applies to cases "originating by indictment or information filed in a circuit court."  The second clause provides a victim with the "right to be informed of the rights established in this Article[.]"  The third and fourth clauses provide a victim, "upon request and if practicable,"[11] with a right "to be notified of, to attend, and to be heard at a criminal justice proceeding, *as these rights are implemented and the terms 'crime', 'criminal justice proceeding'*, and 'victim' *are specified by law*."  (Emphasis added). Notably, terms such as "criminal justice proceeding" and the types of criminal justice proceedings are not defined in Article 47(b) but left within the policy-making branch of government.  It is clear from the express terms of Article 47(b) and purpose paragraph of the enabling legislation that the voters were placing in the General Assembly the legislative discretion to give effect to its provisions—by "implement[ing]" the right to be heard

---

[10]  In contrast to the purpose statement set forth in Article 47(a) and the implementation directive to the General Assembly in subsection (b), I would find that subsection (c) *is* self-executing.  It states: "Nothing in this Article permits any civil cause of action for monetary damages for violation of any of its provisions or authorizes a victim of crime to take any action to stay a criminal justice proceeding."  Article 47(c).  The plain language is "prohibitory and self-executing, and require[s] no act of the Legislature to make them effective[.]"  *Leser v. Lowenstein*, 129 Md. 244, 250 (1916).

[11] Black's Law Dictionary defines "practicable" as: "reasonably capable of being accomplished; feasible in a particular situation."  *Practicable*, Black's Law Dictionary (12th ed. 2024).  This Court has defined the terms "'whenever practicable' or 'as practicable,' [as being] '[] of a relative and dependent character, to be controlled more or less by the circumstances of the case, and by no means furnish[ing] a definite and fixed rule.'"  *State v. Peterson*, 315 Md. 73, 87 (1989) (quoting *Lankford v. Somerset County Com'rs,* 73 Md. 105, 113–14 (1890)).  Article 47 also specifies that victims' rights are not absolute.  They are to be implemented to the extent "practicable," *i.e.*, within reason.

28

through the enactment of statutes (as "specified by law"), including defining the very *types* of "criminal justice proceedings" in which the right would arise.

The Majority interprets Article 47(b) quite differently. Although the Majority seemingly agrees that the Article 47 "was not self-executing," *see* Maj. Slip Op. at 63, it nonetheless states that "Article 47(b) is a broad grant of the right to be heard[]" and interprets the text in a manner that eliminates any legislative discretion to determine the "certain circumstances" in which this right arises. In other words, under the Majority's interpretation, the General Assembly has no discretion under Article 47(b) to determine the *types* of "criminal justice proceedings" it believes are appropriate for a victims' right to be heard.

The Majority's interpretation of Article 47 requires that we rewrite subsection (b) in a manner that is inconsistent with the plain language of *both* the bill's purpose paragraph[12]—directing that the General Assembly determine the "*certain circumstances*"[13] in which victims would have a right to be heard at any given criminal justice proceeding— and the plain language that requires the General Assembly to "*implement*[]" the rights, and

---

[12] *See* 1994 Md. Laws, ch. 102.

[13] My interpretation is consistent with this Court's prior description of Article 47 as embodying "'the strong public policy that victims should have more rights and should be informed of the proceedings, that they should be treated fairly, *and in certain cases*, that they should be heard.'" *Hoile v. State*, 404 Md. 591, 605 (2008) (quoting *Lopez-Sanchez v. State*, 388 Md. 214, 229 (2005)), *superseded by statute on other grounds*, 2013 Md. Laws, ch. 363, § 1 (codified at CP § 11-103) (emphasis added). Our description in *Hoile* is consistent with the purpose paragraph of the bill creating the Constitutional Amendment for submission to the voters, and the language on the ballot when the voters were asked to ratify it. 1994 Md. Laws, ch. 102.

29

define the terms "'crime', '*criminal justice proceeding*' and 'victim'" as "*specified by law*." Article 47(b) (emphasis added). We do not construe the phrase "as these rights are implemented" and as "specified by law" in a manner to render them "surplusage, superfluous, meaningless or nugatory." *Koste*, 431 Md. at 26. "Implement" means "to give practical effect to and ensure of actual fulfillment by concrete measures". *See Implement*, Merriam-Webster's Dictionary, *available at* https://perma.cc/Z3LJ-WE4G. Notably, "criminal justice proceedings" is not defined in Article 47(b). Under subsection (b), that phrase is to be defined by the General Assembly through legislation. Moreover "as provided by law" means that further legislation is required to put the constitutional provision into action. *Rodrigues*, 629 P.2d at 1112. The right the voters "intended to be given is only assured when the legislation is voluntarily enacted." *Leser*, 129 Md. at 251 (quoting *Cooley, supra* at 98).

The Majority's interpretation of Article 47: (1) rewrites the plain and unambiguous text by omitting key phrases; and (2) fails to honor the voters' directive that the General Assembly determine, through the enactment of legislation, the circumstances under which a victim has a right to be heard depending upon the type of "criminal justice proceeding." In other words, by interpreting Article 47(b) as establishing limiting *conditions* on the Legislature, instead of *directives for implementation*, the Majority has transferred to itself the authority to undertake the legislative policy-making decisions concerning when a victim has a right to be heard. In so doing, it has tied the General Assembly's hands by preventing it from undertaking the very directives that the voters placed in the legislative sphere:

30

> We conclude that the General Assembly may not create a new criminal justice proceeding without affording victims the rights to notice, attendance, and to be heard at such new proceeding *unless* the General Assembly makes clear on the face of the legislation or in unambiguous legislative history that it finds it would not be practicable to provide one or more of those rights to victims with respect to the new criminal justice proceeding.

Maj. Slip Op. at 65.[14] The Majority makes all of these constitutional holdings without the benefit of any briefing on the same, including briefing from the Office of the Attorney General.

In my view, it is clear from the plain and unambiguous language of Article 47 that the framers and voters empowered the General Assembly to implement these rights by enacting legislation establishing victims' rights to notice, attendance, and to be heard, the latter of which in particular involves policy or judgment calls depending upon the particular proceeding involved. Such policy decisions inevitably require the General Assembly to balance victims' rights against those of criminal defendants. These policy decisions are

___

[14] To support its interpretation of Article 47, the Majority discusses at length how Assistant Attorney General Robert Zarnoch interpreted the legislation that would put Article 47 on the ballot and how he envisioned future implementing legislation. Maj. Slip Op. at 61–62, 66–68. AAG Zarnoch's letters actually support my interpretation that Article 47 did not establish a self-executing right to be heard, but instead, placed the authority to determine the circumstances in which there is a right to be heard in the hands of the Legislature. As the Majority notes, when asked what the legislative contours might look like with respect to a victim's right to be heard, he said "*it is likely* that the proposed amendment will be construed with an eye on the victim's rights provisions found in existing law[,]" citing to Article 27, § 761(12) (1992 Repl. Vol.)—the permissive guidelines that allowed a victim to address the court at a sentencing hearing on the request of the State's Attorney and in the discretion of the trial judge. (Emphasis added). The exchange between the General Assembly and AAG Zarnoch confirms that no one thought Article 47 enshrined a self-executing victim's right to be heard and that the language in Article 47(b) placed conditions or limitations on the General Assembly's authority to determine the types of "criminal justice proceedings" at which the right to be heard would arise.

31

made by the legislative branch, not the Court. And indeed, as I describe below, that is precisely what occurred—the General Assembly "implemented" Article 47's directive by establishing a task force to study and make recommendations to establish victims' rights and, thereafter, enacted a comprehensive Victims' Rights Act establishing those rights.

### 3. Legislative Efforts to Implement Article 47

#### a. Establishment of Victims' Rights Task Force and 1996 Legislation

In 1995, the Legislative Policy Committee of the General Assembly created the "Task Force to Examine Maryland's Crime Victims' Rights Laws in Maryland" ("Task Force"). The Task Force was co-chaired by Delegate Joseph F. Vallario, Jr., Chair of the House Judiciary Committee, and Senator Norman R. Stone, Jr., and included members of the Legislative, Executive, and Judicial branches of Maryland government, as well as victims' advocates, and members of the State's Attorney's offices, and the defense bar. The purpose of the Task Force was to recommend legislation to implement Article 47.[15]

The General Assembly implemented the Task Force's first recommendation during the 1996 legislative session by enacting new statutory "procedures for notifying certain victims of their rights during the criminal justice process[.]" 1996 Md. Laws, ch. 641 (3652–3659). This legislation established requirements for law enforcement and State's Attorneys to provide notification to the victim and information pertaining to victims' rights,

---

[15] The Task Force was in effect from 1995–2003. The members of the Task Force appointed by the Senate President and House Speaker were: Mary Ellen Barbera, Esq.; Russell P. Butler, Esq.; Keith Franz, Esq.; Gloria Goldfaden; Keith J. Gross, Esq.; Shari Heise; Denise C. McCain; Anne M. McCloskey; Joseph F. Murphy, Jr.; Patricia Pease; Carolyn A. Quattrocki, Esq.; Roberta R. Roper; Michael A. Sarbanes; Frank R. Weathersbee, Esq.; and Alan M. Wilner.

and a process under which the victim could return a victim "notification request form," thereby entitling the victim to notification of subsequent proceedings. *Id.* The General Assembly made an express determination that the new statutory notification procedures fulfilled the notice requirements of Article 47. *Id.* at 3655 (adding language to former Article 27, § 773(d)(3) stating that "[t]he filing of a notification form by a victim constitutes compliance with Article 47 of the Declaration of Rights or any other provision of the Code that requires a victim to request notification[]").[16] *Id.*

### b. The Victims' Rights Act of 1997 ("VRA")

The General Assembly implemented additional recommendations by the Task Force in 1997 with the adoption of "the Victims' Rights Act of 1997" ("VRA"), 1997 Md. Laws, ch. 312.[17] The VRA established several victims' rights in both criminal and juvenile

---

[16] In the 1996 Legislative session, the General Assembly also made non-substantive changes to victim provisions. Former §§ 760 through 763 of Article 27 were transferred to §§ 847 through 850 of Article 27. 1996 Md. Laws, ch. 585. The 1996 amendments added the title "Victims and Witnesses—Treatment and Assistance." The chapter laws explained that "the provisions of this Act are intended only to reorganize and restate the laws concerning victims and witnesses of crime in a nonsubstantive manner. Nothing in the codified provisions of this Act is intended to make any substantive change to or revive any law in the Act or any other law that is or was in effect on or prior to [October 1, 1996]." 1996 Md. Laws, ch. 585, § 17 (3393).

With respect to a victim's ability to address a sentencing judge prior to trial, the statutory provisions continued to place that ability within the sentencing judge's *discretionary authority* and only upon request by the State's Attorney. *Id.* at 3330; Art. 27 § 780(a) (1996).

[17] For the Victims' Rights Act of 1997, two identical bills were cross-filed in the General Assembly—Senate Bill 173 and House Bill 768. Both bills were passed by both the Senate and the House of Delegates and signed by the Governor. "When both cross-filed bills are signed by the Governor in succession, the first bill is superseded by the

33

proceedings.  Highlighting some of the key provisions, the VRA expanded a victim's right to receive notification of proceedings.  Upon a victim filing of a notification form, the victim became entitled to additional statutory rights, including a "*right to attend, if practicable*, any proceeding in which the defendant has the right to appear[,]"[18] and a *right*, "if practicable," to address the sentencing judge prior to the sentencing.  1997 Md. Laws, ch. 312 (2304, 2275) (emphasis added).[19]  This is the first instance in which a victim was given a "right" to address the sentencing judge.

The VRA also added a new section to Article 27 titled "Post[-]sentencing Procedures" addressing post-sentencing victims' rights, including mandatory notification by the State's Attorney of all "subsequent proceedings" [20] where the victim filed a timely

---

second bill."  *Wheeling v. Selene Finance LP*, 473 Md. 356, 405 n.2 (Getty, J., dissenting).  Here, Senate Bill 173 was signed into law first (1997 Md. Laws, ch. 311) and was superseded when House Bill 768 was signed into law (1997 Md. Laws, ch. 312).  Therefore, hereinafter I will refer only to House Bill 768 or Chapter 312.

[18] *See* 1997 Md. Laws, ch. 312 (2304).  The newly enacted Article 27, § 857 stated: "A victim who has filed a notification request form under § 770 of this Article shall have the right to attend, if practicable, any proceeding in which the defendant has the right to appear."  *Id.*

[19] Under the new victims' rights established under the VRA, the sentencing judge was required, "if practicable," to permit the victim or the victim's representative to address the judge before the imposition of a sentence or other disposition, provided that the victim had filed the above-described notification form.  1997 Md. Laws, ch. 312 (2275–76).  Where the victim did not file the statutory notification form, the victim's right to address the sentencing judge remained permissive in the judge's discretion.  *Id.*; Article 27 § 780 (1996 Repl. Vol., 1999 Supp.).

[20] "Subsequent proceedings" were defined to include: a review of sentence, a hearing on a request for sentence modification, a review of a commitment order or other

request in writing to be notified of the same. *Id.* at 2277–79. The VRA expanded the circumstances in which a victim or victim's representative had a right to file an application for leave to appeal from an order that denies or fails to consider a victim's rights.[21]

## B. *Current Victims' Rights Provisions*

As part of the code recodification process, in 2001, the provisions of Article 27 pertaining to victims' rights were recodified in a new Criminal Procedure Article. 2001 Md. Laws, ch. 10.[22] Victims' and Witnesses' rights were generally reorganized as Title 11 in that Article. Notably, for discussion purposes here, Title 11 is structured, in part, as follows: Subtitle 1 addresses general provisions and rights that are available through all

disposition in a juvenile delinquency case, an appeal to the appellate courts, or any other post-sentencing court proceedings. 1997 Md. Laws, ch. 312 (2278).

[21] Under the VRA, Article 27, § 776(c) stated:

Although not a party to a criminal proceeding, the victim of the violent crime for which the defendant is charged has the right to file an application for leave to appeal to the Court of Special Appeals from an interlocutory or final order that denies or fails to consider a right secured by the victim by § 773(b), §780, §780A or § 781 of this subtitle or Article 41, § 4-609 of the Code.

[22] As we have explained,

Code revision is a periodic process by which statutory law is re-organized and restated with the goal of making it more accessible and understandable to those who must abide by it. Changes made in code revision are presumed to make clear the existing meaning of the statutory law rather than to change its meaning. This Court has long emphasized that a change in a statute as part of a general recodification will ordinarily not be deemed to modify the law unless the change is such that the intention of the Legislature to modify the law is unmistakable.

*Smith v. Wakefield, LP*, 462 Md. 713, 726 (2019) (cleaned up).

proceedings; Subtitle 2 addresses pre-trial rights of victims; Subtitle 3 applies to trial procedures affecting victims; Subtitle 4 applies to sentencing procedures; and Subtitle 5 applies to post-sentencing procedures.[23]

### 1. Victims' Right to Notice

A victim's right to notice is set forth in CP § 11-104. The victim notification provisions trigger certain victims' rights upon a victim returning a notification form. The statute provides victim notification rights of "subsequent proceedings," after a "conviction or adjudication and sentencing or disposition of a defendant or child respondent," *see* CP § 11-503(b), which include: (1) a sentence review; "(2) a hearing on a request to have a sentence modified or vacated under the Maryland Rules; (3) in a juvenile delinquency proceeding, a review of a commitment order or other disposition under the Maryland Rules;" (4) an appeal to the Appellate Court; (5) an appeal to this Court; (6) a hearing on an adjustment, violations, or discharge of special conditions of lifetime sexual offender supervision, and "(7) any other post[-]sentencing court proceeding[,]" *id.* § 11-503(a).

### 2. Victims' Right to Attend Proceedings

A victim's right to attend proceedings is set forth in CP § 11-102(a), which states: "[i]f practicable, a victim or victim's representative who has filed a notification request form under" CP § 11-104, "has the right to attend any proceeding in which the right to

---

[23] Additional subtitles that are not germane to this case include: Subtitle 6 (Restitution and Other Payments); Subtitle 7 (Sex Offender Registration); Subtitle 8 (Criminal Injuries Compensation Board); Subtitle 9 (Victims and Witnesses—Services); Subtitle 10 (Treatment and Help); and Subtitle 11 (Victim Services Unit).

appear has been granted to a defendant." This right is contained in Subtitle 1—the provisions that apply to all proceedings.

### 3. Victims' Right to Provide a Victim Impact Statement

As it pertains to adults, CP § 11-402 requires the Division of Parole and Probation to include a victim impact statement in a presentence investigation that it completes if the defendant caused: (1) "physical, psychological, or economic injury to the victim in committing a felony[;]" or (2) "serious physical injury or death to the victim in committing a misdemeanor." CP § 11-402(a)(1)–(2). The statute sets forth the necessary contents of a victim impact statement, which includes, among other things, identifying any physical injuries suffered by the victim and the injuries' seriousness, describing "any change in the victim's personal welfare or familial relationships[]" and identifying any request from the victim to prohibit the defendant from having contact with the victim as a condition of probation or parole. *Id.* § 11-402(e)(1)–(7). The statute requires the court to "consider the victim impact statement in determining the appropriate sentence or disposition and in entering a judgment of restitution for the victim under [CP] § 11-603 of this title." *Id.* § 11-402(d).

### 4. Victims' Right to Address Court in "Sentencing or Disposition Hearing"

Finally, I turn to the limited instance in which the General Assembly has provided a victim with a *right* to address the court—that is, at a "sentencing or disposition hearing." CP § 11-403. Structurally, this provision is located in Subtitle 4—titled "Sentencing

Procedures." The General Assembly provides a specific definition of "sentencing or disposition hearing." CP § 11-403(a) states:

> In this section, "sentencing or disposition hearing" means a hearing at which the imposition of a sentence, disposition in a juvenile court proceeding, or alteration of a sentence or disposition in a juvenile court proceeding is considered.

CP § 11-403(b) states:

> In the sentencing or disposition hearing the court, if practicable, shall allow the victim or the victim's representative to address the court under oath before the imposition of a sentence or other disposition:
>
> (1) at the request of the prosecuting attorney;
> (2) at the request of the victim or the victim's representative; or
> (3) if the victim has filed a notification request form under § 11-104 of this title.

Of course, as I discuss below, the vacatur hearing that occurred in Mr. Syed's case was not a sentencing or disposition hearing under this statute and arose under an entirely separate statutory scheme.

### C.    *Recent Legislative Enactments Protecting Rights of Convicted Persons*

The statutes described above address victims' rights in certain criminal proceedings. Over the course of the past decade and a half, the General Assembly has adopted legislation designed to ensure fairness to the interests of convicted persons. In connection with the adoption of these legislative enactments, the General Assembly has balanced the interests of convicted persons and victims. As discussed below, in each instance, the General Assembly has expressly provided victims with two rights: (1) the right to notice, and (2) the right to attend. However, the General Assembly has exercised its legislative prerogative to *not* implement a victim's right to address the court.

38

### 1. Petition for Writ of Actual Innocence

In 2009, the General Assembly enacted legislation to create a new statute, codified at CP § 8-301, which authorizes a convicted person to "file a petition for writ of actual innocence in the circuit court for the county in which the conviction was imposed if the person claims that there is newly discovered evidence" that "creates a substantial or significant possibility" that the outcome in the case may have been different, and the evidence "could not have been discovered in time to move for a new trial[.]" 2009 Md. Laws, ch. 744.

Under the petition for writ of actual innocence statute, a petition may be filed at any time, and is required to contain certain information, including a description of the newly discovered evidence. CP § 8-301(b)(3). In circumstances in which the conviction resulted from a trial, in ruling on a petition, "the court may set aside the verdict, resentence, grant a new trial, or correct the sentence, as the court considers appropriate." *Id.* § 8-301(f)(1). If the conviction resulted from a plea, "when assessing the impact of the newly discovered evidence on the strength of the State's case against the petitioner at the time of the plea, the court may consider admissible evidence submitted by either party, in addition to the evidence presented as part of the factual support of the plea, that was contained in law enforcement files in existence at the time the plea was entered." *Id.* § 8-301(f)(2)(i). If the court determines that "the newly discovered evidence establishes by clear and convincing evidence the petitioner's actual innocence of the offense or offenses that are the subject of the petitioner's motion, the court may: 1. allow the petitioner to withdraw the" plea; and "2. set aside the conviction, resentence, schedule the matter for trial, or correct the sentence,

39

as the court considers appropriate." *Id.* § 8-301(f)(2)(ii). The court is required to "state the reasons for its ruling on the record." *Id.* § 8-301(f)(3).

Pertaining to victims' rights, the statute provides two rights: (1) a right to notice; and (2) a right to attend a hearing. *Id.* § 8-301(d).[24] The statute does not provide a victim with a right to be heard.

### 2. Juvenile Restoration Act ("JUVRA")

In 2021, the General Assembly enacted the Juvenile Restoration Act ("JUVRA") over the Governor's veto. 2021 Md. Laws, ch. 61, *codified* at CP §§ 6-235, 8-110. "JUVRA made three significant changes to sentencing practices in Maryland for juvenile offenders convicted as adults. Specifically, it gave a sentencing court discretion to impose a sentence less than the minimum otherwise required by law, prospectively banned sentences of life without the possibility of parole, and authorized a juvenile offender sentenced before its effective date (October 1, 2021) who has spent more than 20 years in prison to file a motion to reduce the remaining sentence." *Jedlicka v. State*, 481 Md. 178, 189 (2022).

---

[24] CP § 8-301(d) states:

> (1) Before a hearing is held on a petition filed under this section, the victim or victim's representative *shall be notified* of the hearing as provided under § 11-104 or § 11-503 of this article.
> (2) A victim or victim's representative *has a right to attend* a hearing on a petition filed under this section as provided under § 11-102 of this article.

(Emphasis added).

40

In *Jedlicka*, we summarized the statutory provisions that govern the JUVRA

sentencing modification provisions as follows:

> An eligible offender who files a motion to reduce the offender's remaining sentence is entitled to a hearing at which the offender must be present, either in person or by video. CP § 8-110(b). Notice of the hearing must be given to the victim or the victim's representative. *Id.* Both the offender and the State may introduce evidence in support of or in opposition to the motion. *Id.* Following the hearing, the court may reduce the duration of the offender's sentence if the court concludes that (1) the individual is not a danger to the public; and (2) the interests of justice will be better served by a reduced sentence. CP § 8-110(c). The statute outlines 10 factors – as well as "any other factor the court deems relevant" – that a court is to consider and address in a written decision, including: the individual's age at the time of the offense; the nature of the offense and the history and characteristics of the individual; any statement offered by or on behalf of the victim of the offense; whether the individual has demonstrated maturity, rehabilitation, and fitness to reenter society; the extent of the individual's role in the offense and whether and to what extent an adult was involved in the offense; and the diminished culpability of a juvenile as compared to an adult. CP § 8-110(d). If the offender's motion is denied or granted in part, the offender may file another motion after three years. A third and final motion may be filed after an additional three-year waiting period. CP § 8-110(f). Relief sought under JUVRA is distinct from and does not affect other terms of the sentence, such as the offender's opportunity to seek parole.

481 Md. at 189. As described above, JUVRA provides a victim with the right to notice,

and also requires that the Court consider any "statement" offered by a victim. JUVRA

does not contain any victims' right to address the court or to otherwise participate in the

proceeding. The legislative history reflects that this omission was intentional. Reviewing

the pre-filed House Bill ("HB") 409 and Senate Bill ("SB") 494, neither provided the

victim or victim's representative with the right to testify. When SB 494 came before the

Senate Judicial Proceedings Committee for first reading, the Committee adopted an

41

amendment stating that "a victim or a victim's representative *is entitled to an opportunity to attend and testify in the manner provided by Maryland Rule 4-345*."[25] (Emphasis added).

After SB 494 was amended and approved by the Senate, it crossed over to the House for consideration. In connection with the third reading, the Chair of the House Judiciary Committee offered, and the Committee adopted, an amendment that, among other things, struck the language providing that a victim was "entitled" to attend and to testify at the hearing, and replaced it with the following language: "Notice of the hearing under this subsection shall be given to the victim or the victim's representative as provided in §§ 11-104 and 11-503 of th[e CP] Article." The House adopted SB 494 as amended, and it was returned to the Senate for reconsideration. The Senate concurred with the House amendment and passed SB 494. Thus, the final version of SB 494 adopted by both chambers omitted a victim or victim's representative's right to testify at a hearing under JUVRA. *See* CP § 8-110. The proposed amendments that would have provided a victim with a right to address the court pursuant to Rule 4-345, which were then struck before adoption, reflect the General Assembly's clear intent not to implement a victim's right to address the Court in a JUVRA proceeding. *See, e.g.*, *State v. Bell*, 351 Md. 709, 723 (1998) (stating that "by declining to adopt the proposed language of the amending bill, the Legislature clearly did not intend" to adopt the result being urged).

---

[25] Rule 4-345 is the rule that implements a victim's right to address the court at a sentence modification hearing under CP § 11-403. It states, in pertinent part, that "[b]efore considering a motion [for modification of sentence] under this Rule, the court shall inquire if a victim or victim's representative is present. If one is present, the court shall allow the victim or victim's representative to be heard as allowed by law." Rule 4-345(e)(3).

42

### 3. *The Vacatur Statute*

Finally, I turn to the statute that is the subject of this appeal. In 2021, the General Assembly enacted the vacatur statute, codified at CP § 8-301.1. 2019 Md. Laws, ch. 702.

The vacatur statute provides that a court may vacate a conviction on the State's motion to vacate a judgment of conviction (or probation before judgment) on either of two grounds: (1) there is "newly discovered evidence" that "could not have been discovered by due diligence in time to move for a new trial under Maryland Rule 4-331(c)[,]" which "creates a substantial or significant probability that the result would have been different"; or (2) after the entry of the conviction or probation before judgment, the prosecutor "received new information" that "calls into question the integrity of the probation before judgment or conviction." CP § 8-301.1(a)(1)(i)–(ii).[26] In this case, the State advised that it was proceeding under the second prong.

If the State satisfies its burden of proof to show either of these grounds, *see* CP § 8-301.1(g), the court must find that "the interest of justice and fairness justifies vacating the probation before judgment or conviction." CP § 8-301.1(a)(2). The court is required to

---

[26] The Majority points out that the "legislative history of the Vacatur Statute indicates that its enactment was a response to two recent developments: the decriminalization of marijuana, and revelations concerning misconduct of the Baltimore Police Department's Gun Trace Task Force." Maj. Slip Op. at 11 (citations omitted). While the Majority accurately describes the legislative history, the plain language of the vacatur statute does not limit the circumstances in which the State may file a motion to vacate a conviction to cases involving marijuana convictions or misconduct of the Gun Trace Task Force. Indeed, the legislative history indicates that Delegate Erek Barron, one of the bill's sponsors, intended that "[j]udges should give strong deference to a prosecutor's decision and judgment to move pursuant to this new mechanism." *See* email from Del. Erek Barron to Senator Chris West (Feb. 25, 2019).

43

hold a hearing if the motion filed satisfies the requirements of the statute, unless "the court finds that the motion fails to assert grounds on which relief may be granted." *Id.* § 8-301.1(e)(2).

Like the petition for writ of actual innocence statute, *see* CP § 8-301, and JUVRA, *see* CP § 8-110, the General Assembly did not include a victim's right to address the court at a vacatur hearing. Also like these other statutes, the vacatur statute makes express reference to a victim's right to notice and to attend. It states:

> (1) Before a hearing on a motion filed under this section, the victim or victim's representative shall be notified, as provided under § 11-104 or § 11-503 of this article.

> (2) A victim or victim's representative has the right to attend a hearing on a motion filed under this section, as provided under § 11-102 of this article.

CP § 8-301.1(d). In ruling on a motion, the court may "vacate the conviction or probation before judgment and discharge the defendant" or deny the motion. *Id.* § 8-301.1(f)(1)(i)–(ii). The court shall "state the reasons for a ruling . . . on the record." *Id.* § 8-301.1(f)(2).

Like the legislative history pertaining to JUVRA described above, the legislative history of the vacatur statute also reflects that the General Assembly was made aware of the concern over a victim having a right to address the court, and intentionally elected not to implement this right at this particular type of hearing.

When the General Assembly was considering this legislation, it was specifically alerted to concerns that the victim should have the right to be heard at a vacatur hearing. At a hearing before the House Judiciary Committee, several people testified that victims should have not only the right to attend the hearing, but a right to be heard. *See Hearing*

44

*on H.B. 874 Before the H. Comm. on the Judiciary*, 2019 Leg., 439th Sess. (Feb. 26, 2019). The Baltimore County State's Attorney, Scott Shellenberger, proposed adding language to the bill to provide that the victim have "the right to be heard at the hearing."[27] Moreover, the Maryland Judiciary opposed the bill, noting that "the bill indicates that in addition to a right to notice, a victim has a right to attend a hearing but it is not clear under this legislation if the victim has a right to be heard at the hearing."[28]

Notwithstanding the concerns expressly voiced over the omission of a victim's right to be heard at a vacatur hearing, the General Assembly did not include a victim's right to address the court—just as it had elected not to provide such a right in the context of a hearing on a petition for writ of actual innocence or under JUVRA.

4. ***The General Assembly Has Not Provided a Victim's Right to Speak Under the Vacatur Statute, And Similar Newly Enacted Statutes Providing Relief to Convicted Individuals***

As reflected in the plain language of the above statutes, the General Assembly has not included a victim's right to address the court at a hearing involving: (1) a petition for writ of actual innocence; (2) a sentence modification under JUVRA; or (3) a vacatur hearing. Applying our canons of statutory construction, we must apply the statutes as written because we "provide[] judicial deference to the policy decisions that the General Assembly enacts into law." *In re S.K.*, 466 Md. at 49. We do not add language to statutes

---

[27] *See* Email from Scott Shellenberger, Baltimore County State's Attorney, to Del. Erek Barron (Feb. 25, 2019), attached as exhibit to Letter from Del. Erek Barron to Md. Gen. Assembly H. Jud. Comm., H.B. 874, 2019 Leg., 439th Sess. (Feb. 26, 2019).

[28] *See* Memorandum from Suzanne D. Pelz, Esq., Md. Jud. Conf., to Md. Gen. Assemb. H. Jud. Comm., H.B. 874, 2019 Leg. 439th Sess. (Feb. 20, 2019).

to reflect an intent not evidenced by the plain language. *Lockshin*, 412 Md. at 275. Nor may we assume the authority to read into a statute what the General Assembly "deliberately left out." *Price*, 378 Md. at 388.

The Majority acknowledges that the vacatur statute does not explicitly provide for a victim's right to address the court. To overcome this hurdle, the Majority points out that such a right exists under CP § 11-403—the victims' rights statute that provides a right to address the court at a sentencing hearing. Because a victim has a right to be heard at a sentencing hearing, and a judge's ruling at a vacatur hearing could have the *effect* of altering a sentence through the vacatur of a conviction, the Majority concludes that "surely" a victim's right to be heard must exist at a vacatur hearing. Maj. Slip Op. at 60. In essence, the Majority is adopting a new "close enough" canon of statutory interpretation. Under this new interpretive technique, if the General Assembly provides for a right under one statutory scheme, it is close enough for government work, and it *must* mean that they intended it elsewhere. This approach to statutory construction runs counter to countless recognized and oft-applied canons of statutory interpretation.

*First*, CP § 11-403—the statute granting victims the right to speak at a sentencing hearing—by its express terms does not apply to a vacatur hearing. As discussed above, it applies only at "a hearing at which the imposition of a sentence, disposition in a juvenile court proceeding, or alteration of a sentence or disposition in a juvenile court proceeding is considered." CP § 11-403(a). At a vacatur hearing, the court is not considering an "alteration of a sentence[.]" Instead, the court is considering whether certain statutory factors apply that warrant the *vacatur of a conviction*. While a consequence of successful

46

vacatur proceeding setting aside a *conviction* is that a criminal defendant is no longer subject to a sentence, that consequence does not turn it into a sentence alteration hearing. There is no language in the statute granting a victim's right to address the court at a vacatur hearing, and analogizing the proceeding to a sentencing hearing does not transform it into one.

*Second*, there is similarly *no language* in the vacatur statute—or the petition for writ of actual innocence statute or JUVRA—that provides for a victim's right to address the court. All of these statutes make an express reference to *two* victims' rights—the rights to notice and attendance—while specifically declining to implement the third right—the right to be heard. "Maryland has long accepted the doctrine of *expressio (or inclusio) unius est exclusio alterius*," meaning "the expression of one thing is the exclusion of another." *Comptroller of Treasury v. Blanton*, 390 Md. 528, 537 (2006). Under this canon, "statutory lists are often interpreted as exclusive, so that a court will draw the negative inference that no other items may be added." *Potomac Abatement, Inc. v. Sanchez*, 424 Md. 701, 712 (2012). The General Assembly has exercised its legislative prerogative under Article 47 to *not* implement this right in these particular types of proceedings, *i.e.*, under these "certain circumstances."

*Third*, it is notable that, in contrast to these statutes in which the General Assembly has deliberately omitted a victim's right to address the court, it *has* expressly provided for such a right elsewhere. For example, under the post-conviction provisions pertaining to a criminal defendant's right to have his or her sentence reviewed by a three-judge panel, the General Assembly explicitly provides for a *right* "*to address the review panel*, *as provided*

47

*by § 11-403* of this article."  CP § 8-106(a)(2) (emphasis added).  It is clear that when the

General Assembly wants to establish a right, it knows how to do so.  *Md.-Nat'l. Cap. Park*

*& Plan. Comm'n v. Anderson*, 164 Md. App. 540, 577 (2005), *aff'd*, 395 Md. 172 (2006)

(explaining that, where language is included providing for a right in one provision, but not

in a related provision, it suggests "that the absence of comparable language . . . was by

design."); *Harris v. State*, 353 Md. 596, 607–08 (1999) (explaining that where the General

Assembly intends to create a specific intent crime, it knows how to do so).

Based upon my review of the statutory schemes—including the recent trilogy of

statutes that are designed to provide relief to criminal defendants—the General Assembly

has undertaken a balancing of victims' rights and criminal defendants' liberty interests.  In

these instances, the General Assembly has elected not to implement a victim's right to

address the court, which is the General Assembly's policy-making prerogative.[29]

At bottom, the Majority is not interpreting the plain language of the vacatur statute

but is instead re-writing the statute by inserting a victim's "right to be heard" because it

---

[29] The Majority acknowledges that the General Assembly included a victim's right to notice and to attend in the vacatur statute, but not a right to be heard.  The Majority's sole response to this is that when "engaging in statutory interpretation, legislative inaction is seldom a reliable guide in discerning legislative intent."  Maj. Slip Op. at 51 (quoting *Smith v. Westminster Mgmt., LLC*, 257 Md. App. 336, 372 (2023), *aff'd*, 486 Md. 616 (2024)).  The Majority misapplies the principles of legislative inaction and also undermines numerous other cases from this Court.  *See, e.g.*, *State v. Bell*, 351 Md. 709, 723 (1998) (stating that "by declining to adopt the proposed language of the amending bill, the Legislature clearly did not intend" to adopt the result being urged).  It also violates some of our paramount canons.  To name but a few: we assume the Legislature's intent is expressed in the statutory language; we do not add language to the statute to reflect an intent not evidenced in the plain and unambiguous language of the statute; and we do not extend a statute beyond its application.

48

believes that a victim should have this right. The Majority may have good public policy reasons for wanting victims to be heard at these proceedings, but with all due respect, those policy decisions are not ours to make. "We will not invade the province of the General Assembly and rewrite the law for them, no matter how just or fair we may think such a new law or public policy would be. The formidable doctrine of separation of powers demands that the courts remain in the sphere that belongs uniquely to the judiciary—that of interpreting, but not creating, the statutory law." *Stearman v. State Farm Mut. Auto. Ins. Co.*, 381 Md. 436, 454 (2004).

Even if we had the authority to insert language, there are substantial differences between an alteration of a sentence proceeding pursuant to CP § 11-403 and a vacatur proceeding pursuant to CP § 8-301.1, such that it is entirely reasonable that the General Assembly would grant different rights to victims with respect to each of these proceedings. Under our criminal justice system, a sentencing judge has broad discretion when imposing or altering a sentence. *See Smith v. State*, 308 Md. 162, 166 (1986) (stating that a sentencing judge possesses "broad latitude to best accomplish the objectives of sentencing—punishment, deterrence and rehabilitation."); *see also Jackson v. State*, 364 Md. 192, 199 (2001) (citation omitted); *Lopez v. State*, 458 Md. 164, 175–76 (2018). For this reason, it makes sense that the General Assembly would require that the sentencing judge consider what a victim has to say before exercising this broad discretion. The vacatur statute, on the other hand, requires the court to consider very different factors based upon "newly discovered evidence that . . . creates a substantial or significant probability that the result would have been different" or the State's Attorney must have received "new

49

information after the . . . judgment of conviction that calls into question the integrity of the . . . conviction[.]"[30]  CP § 8-301.1(a)(1)(i)–(ii).  Indeed, with all of these recently enacted statutes, the General Assembly is undertaking a balancing of interests involving certain convictions and has determined that a victim does not have a right to be heard.  Under the Majority's holding, the constitutionality of these statutes, as they are written, has been called into question.  And the Majority is crossing the impermissible separation of powers line by telling the General Assembly what policy decisions they can and cannot make.

### 5.  *There Is No Victims' Right to be Heard Under Our Implementing Rules*

Finally, I note that our Rules do not provide for a victim's right to address the court at a vacatur hearing.  This Court adopted Maryland Rule 4-433 in response to the Legislature's enactment of the vacatur statute, CP § 8-301.1(a).  With respect to notice to the victim, Rule 4-333(g)(2) provides:

> Pursuant to Code, Criminal Procedure Article, § 8-301.1(d), the State's Attorney shall send written notice of the hearing to each victim or victim's representative, in accordance with Code, Criminal Procedure Article, § 11-104 or § 11-503.  The notice shall contain a brief description of the proceeding and inform the victim or the victim's representative of the date, time, and location of the hearing and the right to attend the hearing.

Rule 4-333(h) addresses the conduct of the hearing.  If the victim or victim's representative entitled to notice is not present at the hearing, "the State's Attorney shall state on the record the efforts made to contact that person and provide notice of the hearing."  Md. Rule 4-333(h)(1).  After a hearing, "[t]he court shall state its reasons for the ruling on the record."

---

[30] While the vacatur statute also includes an element on "justice and fairness[,]" that does not change the fact that the other necessary element is a legal question.  *See* CP § 8-301.1(a).

50

Md. Rule 4-333(h)(3). Rule 4-333(i) adds an additional requirement in a vacatur proceeding. It provides that, if the court enters an order vacating a judgment of conviction pursuant to CP § 8-301.1, the State's Attorney, within 30 days of the entry of the order, "shall either enter a *nolle prosequi* of the vacated count or take other appropriate action as to that count."

The Rule adopted by this Court to implement CP § 8-301.1 does not provide the victim with a right to be heard. As the Majority notes, a cross-reference appears after Rule 4-333, stating: "For the right of a victim or victim's representative to address the court during a sentencing or disposition hearing, see [CP] § 11-403." The Majority embraces this cross-reference as constituting *this Court's intent* to provide victims with a right to address the court at a vacatur hearing. I disagree with the Majority's approach here for several reasons.

*First*, the Majority ignores our own express rules of construction—"[h]eadings, subheadings, *cross-references*, committee notes, source references, and annotations *are not part of these rules*." Rule 1-201(e) (emphasis added). The Majority's holding that that the cross-reference somehow creates a substantive right to be heard ignores not only the plain language of the rules, but also our express rules of construction, thereby creating another ill-advised precedent.

*Second*, the Majority conjures an intention by members of this Court who voted on this particular rule to create a substantive victims' right to be heard where no such intention existed. This proposed rule came before this Court in November 2019 as part of the 201st Report of the Standing Committee on Rules of Practice and Procedure. I was a member of

51

this Court at that time. In reviewing the correspondence that we received from the Chair of Rules Committee, as well as the discussion by members of this Court who were in attendance when we considered this rule, nary a word was spoken about this cross-reference, or a victim having a right to address the court under the vacatur statute or our implementing rule. We did not intend this cross-reference to take on substantive meaning in violation of our own rules of construction.

*Third*, the plain text of the rule itself confirms that we did not envision that the victim would have a right to address the court. Turning to the provision of the rule that outlines what the victim's notice must include, it states:

> [t]he notice shall contain a brief description of the proceeding and inform the victim or victim's representative of the date, time, and location of the hearing and the right to attend the hearing.

Md. Rule 4-333(g)(2). The victim's notice requirements do not provide that the notice apprise the victim of a right to be heard. If members of this Court contemplated that the victim had a right to address the court, surely, we would have required that the notice provision apprise the victim of this right so that the victim could prepare to meaningfully exercise this right.

By comparison, Maryland Rule 4-345—our rule that implements the victims' rights that apply at a sentencing hearing under CP § 11-403—requires that the notice to victims advise the victims of their right to testify. Specifically, the victims' notice is required to state:

> (A) that a motion to modify or reduce a sentence has been filed; (B) that the motion has been denied without a hearing or the date, time, and location of

the hearing; and (C) if a hearing is to be held, that each victim or victim's representative *may attend and testify*.

Md. Rule 4-345(e)(2) (emphasis added). The Majority's reliance on a cross-reference to create a victim's substantive right to speak is unsupported by the plain language of the rule, our express rules of construction, the rules-making history, and other rules that this Court has implemented that expressly state that a victim has a right to be heard when the Legislature provides one.

## V

### Mr. Lee's Notice and Attendance

#### A. *Mr. Lee's Right to Attendance*

Although Mr. Lee attended the vacatur hearing via Zoom, the Majority holds that remote attendance did not satisfy his right to attend the vacatur hearing. Maj. Slip Op. at 88. I would hold that Mr. Lee's attendance via Zoom under these circumstances was sufficient to satisfy this right.

CP § 8-301.1(d)(2) provides victims with a right to "attend" a vacatur hearing. It states: "[a] victim or victim's representative has the right to attend a hearing on a motion filed under this section, as provided under § 11-102 of this article." CP § 11-102 provides that "[i]f practicable, a victim or victim's representative who has filed a notification request form under § 11-104 of this subtitle has the right to attend any proceeding in which the right to appear has been granted to a defendant." *Id.* § 11-102(a). The word "attend" is not defined by either statute.

53

In my view, the right to "attend" must be viewed in context. *Lockshin*, 412 Md. at 276 (explaining that "the plain language must be viewed within the context of the statutory scheme to which it belongs[]" (citations omitted)). Namely, when an individual does not have a right to be heard, then any conceivable importance of in-person attendance is greatly diminished.[31] As Judge Berger aptly stated in his dissent below: "there are distinct differences between remote participation and in-person participation that are not implicated when an individual has the right to attend but not participate. It is conceivable that an in-person presentation might be more compelling to a factfinder than a presentation made via electronic means. These concerns are not implicated when an individual has the right to attend but not to participate." *Lee*, 257 Md. App. at 559 (Berger, J., dissenting). I echo that sentiment.[32]

I also agree with Judge Berger that "the circuit court judge took careful steps to ensure that Mr. Lee . . . was afforded the opportunity to attend the vacatur hearing via Zoom." *Id.* Specifically, the circuit court judge postponed the hearing twice to procure Mr. Lee's attendance. First, because Mr. Lee was not present on Zoom at the hearing's commencement, the judge allowed his attorney to step out of the courtroom and call him

---

[31] Notably, Mr. Lee's counsel explained that his client had no issue with Zoom attendance because he thought that he did not have a right to be heard: "My client did not understand that he had a right to participate in the hearing beyond observing. So that was what his acquiescence[]" was to attend via Zoom.

[32] In concluding that the right to attendance requires in-person attendance, the Majority relies heavily on the fact that Mr. Lee's presentation would be more compelling if he were to make it in-person. Maj. Slip Op. at 78, 87. As explained *supra*, Mr. Lee had no right to be heard.

54

to procure his attendance.  Second, the judge permitted an approximate 51-minute recess to allow Mr. Lee to go home from work to a private place.

Due to COVID-19, Zoom is no longer a foreign technology.  Instead, it is a reliable means by which courts can conduct proceedings.  Notably, there is no allegation that Mr. Lee was unable to hear or view the proceeding, or that the technology otherwise malfunctioned.  Viewing the right to attendance in context, I would hold that it was satisfied.

### B.      Mr. Lee's Right to Notice

The vacatur statute provides victims with a right to notice of an impending vacatur hearing.  CP § 8-301.1(d)(1) (stating that before a vacatur hearing is held, a victim's representative "shall be notified, as provided under § 11-104 or § 11-503 of this article."). CP § 11-503 and Maryland Rule 4-333 outline the necessary contents of the notice.  *Id.* § 11-503(d) ("A notice sent under this section shall include the date, the time, the location, and a brief description of the subsequent proceeding."); Md. Rule 4-333(g)(2) ("The notice shall contain a brief description of the proceeding and inform the victim or victim's representative of the date, time, and location of the hearing and the right to attend the hearing.").

The Majority holds that three calendar days, and one business day notice was inadequate because it did not afford Mr. Lee, who lives in California, a reasonable opportunity to make appropriate travel accommodations to Baltimore.  I agree with the Majority that although the statute does not use the word "reasonable," the notice must nevertheless be reasonable under the circumstances.  Maj. Slip Op. at 83.  Nonetheless, I

55

would hold that the notice provided to Mr. Lee here was reasonable given that three calendar days is sufficient time to prepare for remote attendance. The reasonableness of the notice cannot be considered in a vacuum. In the context of a vacatur hearing, the right to notice is a means to an end: attendance. Critically, Mr. Lee did, in fact, attend the hearing, albeit virtually. Because the notice served its purpose, I would not hyper fixate on the technical requirements of the contents of the notice.[33] Instead, I would apply the Majority's own test—"a victim must demonstrate that the error prevented them from meaningfully exercising their rights under the law" to be entitled to relief on appeal, *see* Maj. Slip Op. at 86–87—and conclude that any technical deficiency in the contents of the notice did not prevent Mr. Lee from exercising his right to attend.

It is also worth noting that the State took care to ensure that Mr. Lee was notified of impending changes in the case. In March 2022, the State and Mr. Syed filed a joint petition for post-conviction DNA testing of the victim's clothing. The State notified Mr. Lee of this before the motion was filed, but he did not respond. On September 13, 2022, the Assistant State's Attorney in charge of investigating Mr. Syed's convictions called Mr. Lee and informed him of the State's intention to file the vacatur motion because it no longer had faith in the integrity of Mr. Syed's convictions. The Assistant State's Attorney discussed the new information the State had developed and "went through the motion a bit with" Mr. Lee. That same day, the Assistant State's Attorney emailed Mr. Lee with an

---

[33] As the Majority points out, the notice technically did not comply with every requirement set forth in Rule 4-333 because it did not: (1) inform Mr. Lee that he had a right to attend the hearing (but was instead phrased as being permissive), (2) set forth the location of the hearing, and (3) contain a brief description of the proceeding.

attached draft motion to vacate and told Mr. Lee that the State was "likely" to file it the following day. According to the Assistant State's Attorney, "when I talked to [Mr. Lee] on [September 13, 2022], not only did we talk, and I sent him a copy of the motion, I gave him my cell phone number, my e-mail, and my office number and invited him to please contact me any time by text, call, e-mail with any questions. And I even followed that up with an e-mail telling him please contact me at any time."

On September 16, 2022, immediately after the vacatur hearing was scheduled, the Assistant State's Attorney emailed Mr. Lee to notify him of the vacatur hearing scheduled for the following Monday.[34] Because Mr. Lee did not respond to this email, the Assistant State's Attorney texted Mr. Lee on September 18 to confirm that he received her email about the vacatur hearing scheduled for the following day. That same day, Mr. Lee indicated that he received the email and would be joining the hearing via Zoom. As this discussion illustrates, the State carefully ensured that Mr. Lee was apprised of what was going on in Mr. Syed's case.

To conclude, like Judge Berger, "I would hold that the notice Mr. Lee received was sufficient to comply with the requirements of CP § 8-301.1 and Md. Rule 4-333 because it

---

[34] The email, which was sent at 1:59 p.m., in pertinent part, stated:

> The court just scheduled an in-person hearing for Monday, September 19th at 2:00 P.M. (EST). It's an in-person hearing, but I asked the court for permission for you and your family to watch the proceedings virtually (if you would like). So, if you would like to watch, the link is below. Please let me know if anybody from your family will be joining the link, so I will make sure that the court lets you into the virtual courtroom.

enabled him to attend the vacatur proceeding electronically." *Lee*, 257 Md. App. at 561 (Berger, J., dissenting).

## VI

## Concerns With the Majority's Analysis

I conclude with some general concerns about the Majority's opinion in this case that are too important to leave unaddressed. In my view, the Majority's analysis implicates serious separation of powers and fairness concerns that will have a ripple effect beyond this case.

This is the second case over the course of the last twelve months in which the Majority has decided to reach constitutional issues that were not argued or briefed before this Court. Respectfully, I do not agree with this approach. *See Clark v. State*, 485 Md. 674, 765 (2023) (Gould, J., dissenting, joined by Fader, C.J., and Booth, J.) (disagreeing with the Majority's decision to "mak[e] new constitutional law without the input of the parties"). In this case, the parties' arguments all focused upon whether Mr. Lee had a right to be heard pursuant to a statute or a rule. The only briefing presented by any party on a "constitutional right" was contained in a *single paragraph* in Mr. Lee's *reply brief*,[35]

---

[35] As we have explained on numerous occasions, we ordinarily will not consider arguments raised for the first time in a reply brief because the respondent does not have a fair opportunity to respond to such arguments. *Oak Crest Vill., Inc. v. Murphy*, 379 Md. 229, 241–42 (2004) ("[A]lthough reply briefs are permitted under the Rules of appellate procedure, their function is limited to responding to points and issues raised in the appellee's brief. An appellant is required to articulate and adequately argue all issues the appellant desires the appellate court to consider in the appellant's initial brief. It is impermissible to hold back the main force of an argument to a reply brief and thereby diminish the opportunity of the appellee to respond to it."); *Fearnow v. Chesapeake &*

asserting such a right with no discussion or analysis. Of course, given that it was summarily raised in a reply brief and with no actual analysis, neither Mr. Syed nor the State was "given an opportunity to address these important issues." *Clark*, 485 Md. at 764 (Gould, J., dissenting). "[T]he Majority is making new constitutional law without the input of the parties." *Id.*

To refute this point, the Majority points out that Article 47 is "central[] to questions concerning victims' rights" and proceeds to cite to generalized references in the briefs to Article 47 as well as arguments in the amicus briefs asserting a general constitutional right. Maj. Slip Op. at 68. The Majority also points to questions raised by one member of the Court during oral arguments concerning Article 47. I will not attempt to engage in a "who said what" in the briefs. They speak for themselves.

The Majority also violates "the Court's strong and established policy . . . to decide constitutional issues only when necessary." *VNA Hospice of Md. v. Dep't of Health & Mental Hygiene*, 406 Md. 584, 604 (2008) (cleaned up); *see also Christopher v. Montgomery County Dept. of Health & Hum. Servs.*, 381 Md. 188, 217 (2004) ("[W]e adhere to the established principle that a court will not decide a constitutional issue when a case can properly be disposed of on a non-constitutional ground." (cleaned up)). "This

_____

*Potomac Tel. Co. of Md.*, 342 Md. 363, 384 (1996) ("A reply brief . . . should ordinarily be confined to responding to issues raised in the appellee's brief."); *Warsame v. State*, 338 Md. 513, 517 n.4 (1995) (declining to address arguments because they were raised for the first time in a reply brief); *State v. Jones*, 138 Md. App. 178, 230 (2001) ("The cases are legion, in Maryland and elsewhere, that an appellate court generally will not address an argument that an appellant raises for the first time in a reply brief."). Here, Mr. Syed never had a meaningful opportunity to brief the Article 47 right-to-be-heard issue because it was raised for the first time in Mr. Lee's reply brief.

Court has emphasized[]" this policy "time after time[.]"  *VNA Hospice of Md.*, 406 Md. at 604; *see also State v. Raithel*, 285 Md. 478, 484 (1979) ("*[N]othing is better settled* than the principle that courts should not decide constitutional issues unnecessarily." (emphasis added)).[36]  Because the Majority concludes that Mr. Lee had a right to be heard at the vacatur hearing pursuant to CP § 11-403(b), there is absolutely no reason to address the constitutional right at all.  *Dorsey v. State*, 356 Md. 324, 342 (1999) ("Since we shall hold that the petitioners had a statutory right to jury trials in the instant cases, we need not and shall not reach the issue of whether they were entitled to jury trials under Articles 5 and 21 of the Maryland Declaration of Rights.").

The Majority's decision to establish new constitutional rights is particularly troubling here because in doing so, the Majority is calling into question the constitutionality of several statutes enacted by the General Assembly that, by their express terms, *do not include a victim's right to speak*.  *See* CP § 8-301 (petitions for writ of actual innocence); CP § 8-110 (JUVRA); CP § 8-301.1 (vacatur).  I would think that prior to embarking on such an undertaking that will invariably cause a sea-change in the manner in which post-

---

[36] *Blake v. State*, 485 Md. 265, 305 (2023) (citing cases and explaining that "this Court will not reach [a] constitutional issue if it is unnecessary to do so" (citations and internal quotations omitted)); *Burch v. United Cable Television of Balt. Ltd. P'ship*, 391 Md. 687, 695 (2006) ("Even when a constitutional issue is . . . presented in a certiorari petition and the grant of the petition does not limit the issues, this Court will not reach the constitutional issue unless it is necessary to do so." (citing cases)); *Comm'r of Lab. & Indus. v. Fitzwater*, 280 Md. 14, 19 (1977) ("It is the *established rule* that courts do not decide constitutional issues if the case can be decided on other grounds." (emphasis added)); *State v. Lancaster*, 332 Md. 385, 403 n.13 (1993) ("this Court has *regularly adhered to* the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground" (emphasis added)).

sentencing hearings must now occur involving incarcerated individuals' liberty interests, it would be prudent to hear the Attorney General's position.

Putting aside the fairness implications, the Majority's constitutional underpinning—that the plain language of Article 47 creates a broad substantive victim's right to be heard and interprets Article 47(b) as placing conditions or limitations on the General Assembly's authority to implement this right—is in direct contravention of the express language of Article 47, in which the *voters conferred upon the General Assembly* the authority to determine the circumstances in which a victim's right to be heard would be established. These are policy decisions that are within the discretion of the General Assembly, not this Court.

What is more, in undertaking the constitutionally delegated functions of the Legislative Branch, the Majority is attempting to tie the General Assembly's hands *when it enacts future legislation*. The Majority instructs the Legislature that it may not enact future legislation that does not comport with how the Majority believes a victim's right to be heard should be implemented. *See* Maj. Slip Op. at 65 ("We conclude that the General Assembly may not create a new criminal justice proceeding without affording victims the rights to notice, attendance and to be heard at such new proceeding *unless* the General Assembly makes clear on the face of the legislation or in unambiguous legislative history that it finds it would not be practicable to provide one or more of those rights to victims with respect to the new criminal justice proceeding."). The Majority's veering into the legislative lane is significant and profound.

61

Finally, in crafting how *it* believes the victim's right to be heard should be implemented, without any authority, the Majority creates a new victim's right to be heard that transcends anything that the General Assembly has enacted to date. As discussed above, where the General Assembly has created such a right, it is a *right to address the court*. *See* CP § 11-403. It is not a right to participate in the process. The Majority describes in some length and detail how it envisions a victim should be permitted to address the court at a vacatur hearing, expounding (again, based upon policy and without any authority) that a victim's right "includes the right to address the merits of the vacatur motion after the prosecutor and the defense have made their presentations in support of the motion." Maj. Slip Op. at 71. The Majority instructs—again without any authority— that "if the victim believes the State has not met its burden of proof" under the vacatur statute, "the victim must have the right to explain why the victim believes that to be the case and to ask the court to deny the motion." *Id*. The Majority adds that "in a case like this one, where the prosecutor and defendant both seek a vacatur, the victim's attorney can help the court." Maj. Slip Op. at 72. The Majority's new hearing requirements harken back to the days of yore before victim-initiated prosecutions were constitutionally abolished. *See supra* note 2. Respectfully, if the General Assembly wishes to confer that authority upon victims or their counsel, it may do so.

For the above reasons, I respectfully dissent.

Justices Hotten and Battaglia have authorized me to state that they join in this dissent.